UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS LAUMANN, FERNANDA GARBER, ROBERT SILVER, GARRETT TRAUB, DAVID DILLON, and PETER HERMAN, representing themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL HOCKEY LEAGUE et al.,<br><br>Defendants. | 12-cv-1817 (SAS) |
| FERNANDA GARBER, MARC LERNER, DEREK RASMUSSEN, ROBERT SILVER, GARRETT TRAUB, and PETER HERMAN, representing themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OFFICE OF THE COMMISSIONER OF BASEBALL et al.,<br><br>Defendants. | 12-cv-3704 (SAS)<br><br>ECF Cases<br><br><u>Electronically Filed</u> |

### <u>MEMORANDUM OF LAW IN SUPPORT OF<br>COMCAST AND DIRECTV'S MOTION TO STAY</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND..........................................................................................................1

ARGUMENT................................................................................................................2

I. THE COURT SHOULD STAY TV PLAINTIFFS' CLAIMS AGAINST THE MVPD AND RSN DEFENDANTS..................................................................................4

    A. A Brief Stay Will Promote Judicial Economy and Preserve Resources..............4

    B. Plaintiffs Will Suffer No Harm From a Stay.........................................................5

    C. A Stay Will Serve the Public Interest in Favor of Arbitration ........................5

    D. The Arbitration Agreements Cover the Affiliated RSNs.............................6

    E. TV Plaintiffs Cannot Circumvent Arbitration By Attempting To Sue MVPDs With Which They Have No Relationship.................................................8

    F. Internet Plaintiffs' Claims Do Not Cut Against A Stay..............................10

II. TV PLAINTIFFS' CLAIMS AGAINST OTHER DEFENDANTS SHOULD ALSO BE STAYED....................................................................................................11

CONCLUSION............................................................................................................13

# **TABLE OF AUTHORITIES**

PAGE

CASES

*Alghanim v. Alghanim*, 828 F. Supp. 2d 636 (S.D.N.Y. 2011) ..................................................... 12

*American Express Co. v. Italian Colors Rest.*, No. 12-133, 133 S. Ct. 594 (U.S. Nov. 9, 2012) ("*AMEX III*") ................................................................................................................. passim

*AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) ...................................................... 5, 6

*Bischoff v. DIRECTV, Inc.*, 180 F. Supp. 2d 1097 (C.D. Cal. 2002) ............................................. 11

*Birmingham Associates Ltd. v. Abbott Labs.*, 547 F. Supp. 2d 295 (S.D.N.Y. Apr. 14, 2008) .................................................................................................. 12

*Carter v. United States*, No. 1:06-cv-225, 2007 WL 2439500 (D. Vt. Aug. 23, 2007) ................... 3

*Cent. Valley Chrysler-Jeep, Inc. v. Witherspoon*, No. CV F 04-6663 (AWI) (LJO), 2007 WL 135688 (E.D. Cal. Jan. 16, 2007) ................................................................................... 5

*Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205 (2d Cir. 2005) ..................................... 8

*Danisco A/S v. Novo Nordisk A/S*, No. 01 Civ. 10557 (LTS), 2003 WL 282391 (S.D.N.Y. Feb. 10, 2003) ............................................................................................................. 10

*Del Rio v. Credit Answers, LLC*, No. 10 CV 346-WQH-BLM, 2010 WL 3418430 (S.D. Cal. Aug. 26, 2010) .............................................................................................. 6

*Dickson v. Microsoft Corp.*, 309 F.3d 193 (4th Cir. 2002) ............................................................. 8

*Empire State Ethanol & Energy, LLC v. BBI Int'l*, No. 1:08 CV 623 (GLS/DRH), 2009 WL 1813205 (N.D.N.Y. June 25, 2009) ................................................................. 12

*Fagan v. Republic of Austria*, No. 8 Civ. 6715, 2009 WL 1423338 (S.D.N.Y. May 19, 2009) ............................................................................................................................. 2

*Fromer v. Comcast Corp.*, 3:09-cv-02076 (D. Conn. Dec. 5, 2012), ECF No. 96 ......................... 3

*Fromer v. Comcast Corp.*, No. 12-3811 (2d Cir. Dec. 7, 2012), ECF No. 41 ................................ 3

*Hanjin Shipping Co. Ltd. v. Union Pac. R.R. Co.*, 05 CIV. 8476 (SAS), 2006 WL 1096389 (S.D.N.Y. Apr. 26, 2006) ................................................................................... 6

*Harvey v. Joyce*, 199 F.3d 790 (5th Cir. 2000) ............................................................................ 12

*Hiker Indus., Inc. v. William Stuart Indus. Ltd.*, 640 F. Supp. 175 (S.D.N.Y. 1986) ................... 11

*In re American Express Merchants' Litig.*, 667 F.3d 204 (2d Cir. 2012) .................................. 2

*In re Literary Works in Elec. Databases Copyright Litig.*, No. M-21-90, 2001 WL 204212 (S.D.N.Y. Mar. 1, 2001) .................................................................................. 3,4,5

*In re Elec. Books Antitrust Litig.*, No. 12-2999 (2d Cir. Nov. 7, 2012), ECF No. 92 .............. 3

*In re Wholesale Grocery Prods. Antitrust Litig.*, 09-MD-2090 ADM/AJB, 2011 WL 9558054 (D. Minn. July 5, 2011) ................................................................................... 7

*JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004) ................................... 7

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ............................................................................. 2

*LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 421 (S.D.N.Y. 2005) ............................... 2-3

*Laumann v. National Hockey League*, --- F. Supp. 2d ---, 2012 WL 6043225, Nos. 12 Civ. 1817 & 12 Civ. 3074 (S.D.N.Y. Dec. 5, 2012) ................................................................ 8

*Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72 (2d Cir. 1998) .............................................. 5

*Sikhs for Justice v. Nath*, No. 10 Civ. 2940, 2012 WL 4328329 (S.D.N.Y. Sept. 21, 2012) .... 4

*Sutherland v. Ernest & Young LLP*, 856 F. Supp. 2d 638 (S.D.N.Y. 2012) ............................. 5

*Wing Shing Prods. (BVI) Ltd. v. Simatelex Manufactory Co.*, No. 01 Civ. 1044, 2005 WL 912184 (S.D.N.Y. Apr. 19, 2005) ................................................................................ 3, 4, 5

*WorldCrisa Corp. v. Armstrong*, 129 F.3d 71 (2d Cir. 1997) ................................................ 10

## STATUTES AND RULES

JAMS Comprehensive Arbitration Rules and Proceedings, Rule 11 (Oct. 1, 2010) ................ 7

## PRELIMINARY STATEMENT

Comcast, DIRECTV, and their affiliated RSNs ("MVPD and RSN Defendants") respectfully submit that this Court should stay TV Plaintiffs' claims pending the Supreme Court's upcoming ruling in *AMEX III*.[1] Each of the remaining TV Plaintiffs has agreed to resolve all disputes with Comcast and DIRECTV through individual arbitrations and has waived the right to pursue class relief. In *AMEX III*, the Supreme Court will determine whether this type of waiver is enforceable in federal antitrust cases. If the Supreme Court holds that it is, then the MVPD and RSN Defendants will move to compel arbitration of TV Plaintiffs' claims against them, eliminating TV Plaintiffs' class claims. Requiring the MVPD and RSN Defendants to litigate those claims now—before the Supreme Court decides the waiver issue—constitutes irreparable injury and risks wasting substantial judicial and party resources. A brief stay will avoid that potential waste, will not prejudice TV Plaintiffs, and will promote the strong federal policy favoring arbitration.[2]

## BACKGROUND

As a result of the Court's ruling on the motion to dismiss, Garrett Traub is the sole remaining Comcast subscriber in *Laumann* and *Garber*, and Robert Silver is the sole remaining DIRECTV subscriber in *Laumann*. (No DIRECTV subscriber remains in *Garber*.) Together, Messrs. Traub and Silver are the remaining TV Plaintiffs.[3]

---

[1] *American Express Co. v. Italian Colors Rest.*, No. 12-133, 133 S. Ct. 594 (U.S. Nov. 9, 2012) ("*AMEX III*").

[2] The MLB Defendants have filed a separate motion seeking a stay of all claims against all Defendants in *Garber* pending the decision in *AMEX III*. That motion seeks relief consistent with this one.

[3] On April 24, 2012 and June 26, 2012, the parties entered into stipulations in *Laumann* and *Garber* under which Comcast and DIRECTV agreed to defer any motions to compel

(cont'd)

1

Mr. Traub agreed to arbitrate any "dispute, claim, or controversy . . . regarding any aspect of [his] relationship with Comcast," which is defined broadly to include "all entities using the brand name 'Comcast,'" such as the Comcast RSNs named as defendants in *Laumann* and *Garber*. (*See* Declaration of Arthur J. Burke ("Burke Decl."), dated January 7, 2013, Ex. 1 at 12-13.) Mr. Traub also waived his right to pursue class relief.

Likewise, Mr. Silver agreed to arbitrate "any legal or equitable claim relating to this Agreement, any addendum, or your Service" with "DIRECTV"—a provision encompassing DIRECTV, LLC and its affiliated RSNs. (*See* Declaration of Louis A. Karasik ("Karasik Decl."), dated January 7, 2013, Ex. A at 6.) Mr. Silver also waived his right to pursue class relief.

On November 9, 2012, the Supreme Court granted certiorari to review the Second Circuit's holding that class action waivers like those in Messrs. Traub's and Silver's agreements are unenforceable in federal antitrust cases. *See In re American Express Merchants' Litig.*, 667 F.3d 204, 217 (2d Cir. 2012). The Supreme Court has scheduled oral argument for February 27, 2013, and almost certainly will issue a decision by June 2013. If the Court reverses the Second Circuit and holds that class action waivers like those in Messrs. Traub's and Silver's agreements are enforceable, that decision will dramatically reshape the *Laumann* and *Garber* cases.

## ARGUMENT

This Court has broad authority to stay proceedings pending an upcoming decision from a higher court (*see Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)), and that authority is "not limited to cases involving identical parties or issues." *Fagan v. Republic of Austria*, No. 8 Civ. 6715 (LTS) (JCF), 2009 WL 1423338, at *4 (S.D.N.Y. May 19, 2009); *see also LaSala v.*

---

*(cont'd from previous page)*
arbitration pending further developments in *AMEX III*. Plaintiffs agreed that Comcast and DIRECTV did not waive any rights by deferring their arbitration motions. This Court so ordered.

2

*Needham & Co., Inc.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005) (court may "enter a stay pending the outcome of proceedings which bear upon the case, even if such proceedings are not necessarily controlling of the action to be stayed"). Indeed, "it is common practice in this Circuit to postpone the final disposition of a case pending an upcoming decision in the United States Supreme Court." *Carter v. United States*, No. 1:06-cv-225, 2007 WL 2439500, at *3 (D. Vt. Aug. 23, 2007); *Wing Shing Prods. (BVI) Ltd. v. Simaltelex Manufactory Co.*, No. 01 Civ. 1044 (RJH) (HBP), 2005 WL 912184, at *2 (S.D.N.Y. Apr. 19, 2005) (courts frequently stay actions when a "higher court is close to settling an important issue of law") (quoting *In re Literary Works in Elec. Databases Copyright Litig.*, No. M-21-90, 2001 WL 204212, at *2 (S.D.N.Y. Mar. 1, 2001)).

A number of courts in this Circuit have already stayed cases pending the Supreme Court's ruling in *AMEX III*. For instance, the Second Circuit recently stayed pending *AMEX III* Comcast's appeal of a district court's denial of its motion to compel arbitration in a class action involving a federal antitrust claim. *See* Order, *Fromer v. Comcast Corp.*, No. 12-3811 (2d Cir. Dec. 7, 2012), ECF No. 41. Days earlier, the district court stayed the same case because of the strong likelihood that Comcast would prevail on appeal if the Supreme Court reverses or limits *AMEX III*. *See* Order on Motion to Stay, *Fromer v. Comcast Corp.*, 3:09-cv-02076 (D. Conn. Dec. 5, 2012), ECF No. 96. The Second Circuit also recently stayed another antitrust class action pending the outcome in *AMEX III*. *See* Order, *In re: Elec. Books Antitrust Litig.*, No. 12-2999 (2d Cir. Nov. 7, 2012), ECF No. 92.

The same result should obtain here. The Supreme Court's decision in *AMEX III* is only months away and could significantly reshape both the *Laumann* and *Garber* cases. There is no

basis for TV Plaintiffs to push forward class claims when the Supreme Court may soon make clear those claims have no place in federal court.

## I. The Court Should Stay TV Plaintiffs' Claims Against the MVPD and RSN Defendants

A temporary stay of TV Plaintiffs' claims against the MVPD and RSN Defendants will avoid potential waste of substantial judicial and party resources, will not prejudice TV Plaintiffs, and will promote the strong public policy favoring arbitration. *See Wing Shing*, 2005 WL 912184, at *1 (in deciding a stay motion, a court can consider a number of factors, including the potential prejudice to defendants, the potential prejudice to plaintiffs, judicial economy, and the public interest).

### A. A Brief Stay Will Promote Judicial Economy and Preserve Resources

Absent a brief stay, this Court and the parties could waste substantial resources litigating class claims that TV Plaintiffs have waived. If the Supreme Court reverses in *AMEX III*, then the MVPD and RSN Defendants will move to compel individual arbitration of TV Plaintiffs' claims against them, bringing an end to TV Plaintiffs' class claims against those defendants. In these circumstances, it "would be an inefficient use of time and resources of the court and the parties to proceed" before the Supreme Court rules. *Literary Works*, 2001 WL 204212, at *3; *see also Sikhs for Justice v. Nath*, No. 10 Civ. 2940, 2012 WL 4328329, at *22 (S.D.N.Y. Sept. 21, 2012) (same). The potential for enormous waste of resources[4] constitutes irreparable injury supporting

---

[4] It is difficult to estimate how much money the MVPD and RSN Defendants would spend defending TV Plaintiffs' claims from now until the Supreme Court's decision in *AMEX III*, but Plaintiffs' draft "First Request for Production of Documents" suggest that it might be substantial. Plaintiffs' draft requests, which are directed to "all defendants" rather than being tailored to at least the different types of defendants, are extraordinarily broad and lack any meaningful date restriction. For example, one request asks for "[a]ll documents, including all contracts and communications, relating to the distribution of games over television and/or the Internet." Arguably, this request implicates virtually all documents in every RSN's possession

*(cont'd)*

a stay. *See, e.g., Sutherland v. Ernest & Young LLP*, 856 F. Supp. 2d 638, 643 (S.D.N.Y. 2012) (recognizing that "failure to grant a stay may irrevocably deprive [the defendant] of at least a portion of that which it unquestionable bargained for, a proceeding designed . . . to avoid the far greater expenses and other burdens attendant on class litigation").

### B. Plaintiffs Will Suffer No Harm From a Stay

A brief stay will not prejudice TV Plaintiffs. With oral argument in *AMEX III* scheduled for February 27, 2013, the Supreme Court should issue its decision no later than June 2013 and possibly earlier. A stay lasting at most six months will not harm TV Plaintiffs, especially given that *Laumann* and *Garber* are in the early stages. *See Literary Works*, 2001 WL 204212, at *3 ("a stay of several months will cause no prejudice or hardship" to the plaintiffs); *Wing Shing*, 2005 WL 912184, at *2 ("stay of several months will cause little prejudice or hardship to" the plaintiff); *Cent. Valley Chrysler-Jeep, Inc. v. Witherspoon*, No. CV F 04-6663 (AWI) (LJO), 2007 WL 135688, at *15 (E.D. Cal. Jan. 16, 2007) ("Plaintiffs are unlikely to suffer any inequity or hardship from a six-month stay of proceedings" pending a Supreme Court decision that "may simplify the issues in this case").

### C. A Stay Will Serve the Public Interest in Favor of Arbitration

A stay will serve the public interest by promoting the "strong federal policy favoring arbitration." *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998); *see also AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1749 (2011). Courts have recognized that many of the benefits of arbitration are "lost forever" if parties have to engage in expensive and

---

*(cont'd from previous page)*
and a huge volume of documents in the possession of Comcast and DIRECTV. Disputes about these requests and subsequent ones could result in the waste of substantial judicial resources, as well as party resources.

burdensome litigation while threshold questions of arbitrability linger. *See Del Rio v. Creditanswers, LLC*, No. 10 CV 346-WQH-BLM, 2010 WL 3418430, at *4 (S.D. Cal. Aug. 26, 2010); *see also Concepcion*, 131 S. Ct. at 1749 (explaining that "the informality of arbitral proceedings is itself desirable, reducing the cost and increasing the speed of dispute resolution"). The public also has a strong interest in preserving this Court's resources. *See Del Rio*, 2010 WL 3418430, at *5 ("A stay pending the outcome of the appeal will serve the public interest by potentially preserving judicial resources and promoting the strong federal policy encouraging arbitration." (internal quotation marks omitted)).

### D.     The Arbitration Agreements Cover the Affiliated RSNs

As explained above, Mr. Traub agreed to arbitrate any "dispute, claim, or controversy" regarding his agreement with "Comcast," which is defined to include "Comcast Cable Communications, LLC., its officers, directors, employees and agents, and all entities using the brand name 'Comcast,' including your local cable company, its employees, authorized agents, and its parents, subsidiaries and affiliated companies." (Burke Decl. Ex. 1 at 12-13.) Accordingly, all of Mr. Traub's claims against Comcast and the Comcast RSN Defendants—which are both affiliates of Comcast and also use the brand name "Comcast"—are subject to arbitration.

Mr. Silver likewise entered into a broad arbitration agreement with "DIRECTV." The agreement encompasses "any legal or equitable claim relating to this Agreement . . . or your Service," which is defined as DIRECTV's "digital satellite entertainment programming and services." (Karasik Decl. Ex. A at 2, 6); *see Hanjin Shipping Co. Ltd. v. Union Pac. R.R. Co.*, 05 CIV. 8476 (SAS), 2006 WL 1096389 (S.D.N.Y. Apr. 26, 2006) (Scheindlin, J.) ("The 'paradigm of a broad [arbitration] clause' is one that submits to arbitration '[a]ny claim or controversy arising out of or relating to th[e] agreement.'"). The agreement also incorporates by reference

6

the JAMS rules for arbitration of disputes, and those rules leave for the arbitrator any disputes over the scope of the agreement or which parties are subject to arbitration. (Karasik Decl. Ex. A at 6.)[5]

Nonetheless, Plaintiffs may attempt to argue that Mr. Silver's arbitration agreement with DIRECTV does not extend to claims against DIRECTV's affiliated RSNs. But under settled law, DIRECTV's affiliated RSNs are entitled to invoke the clause against Mr. Silver because they are closely affiliated with DIRECTV, provide services under Mr. Silver's contract, and allegedly overcharged Mr. Silver for those services. In *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004), the Second Circuit compelled arbitration of claims against alleged non-signatories on similar facts. *Id.* at 178 (compelling arbitration of claims against non-signatory parent companies because of the non-signatories' close corporate relationships with the signatory subsidiaries and because the questions that the non-signatories sought "to arbitrate [were] undeniably intertwined with the charters, since . . . it [was] the fact of [the plaintiff's] entry into the charters containing allegedly inflated price terms that gives rise to the claimed injury."); *see also In re Wholesale Grocery Prods. Antitrust Litig.*, No. 09-MD-2090 ADM/AJB, 2011 WL 9558054, at *3 (D. Minn. July 5, 2011) (relying in part on *JLM Industries*, and holding non-signatories' antitrust claims alleging illegal division of markets were intertwined with arbitration agreement: "The Arbitration Plaintiffs allege individually that a non-signatory Defendant conspired with a signatory Defendant to violate antitrust laws. As a result of that conspiracy, the Arbitration Plaintiffs allege that the signatory Defendant was then able to extract supra-

---

[5] JAMS Comprehensive Arbitration Rules and Proceedings, Rule 11: "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."

competitive prices through its wholesaler-retailer relationship with Plaintiffs, the very relationship subject to arbitration.").[6]

### E. TV Plaintiffs Cannot Circumvent Arbitration By Attempting To Sue MVPDs With Which They Have No Relationship

Plaintiffs have suggested that a stay is inappropriate because Mr. Traub, a former Comcast subscriber, has non-arbitrable conspiracy claims against DIRECTV and its affiliated RSNs and because Mr. Silver, a former DIRECTV subscriber, has non-arbitrable conspiracy claims against Comcast and its affiliated RSNs. These claims, TV Plaintiffs contend, will go forward even if there is a stay of the TV Plaintiffs' arbitrable claims.

Plaintiffs are wrong as a matter of law in claiming that that they are entitled to pursue claims against an MVPD from whom they purchased nothing.[7] But even if they were correct, a

---

[6] DIRECTV submits that there is no reasonable dispute that the arbitration clause covers Mr. Silver's claims against the DIRECTV RSNs. But even if there was, under *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205 (2d Cir. 2005), the question of whether Mr. Silver's claims against the RSNs are arbitrable is ultimately for the arbitrator under the rules of the arbitration agreement. *See id.* at 209; *supra* n.5.

[7] Plaintiffs have offered no case law supporting their view. Plaintiffs cannot rely on general principles of joint-and-several liability because they have not alleged any conspiracy between Comcast and DIRECTV, and this Court has determined that Comcast and DIRECTV are *not* parties to any unlawful horizontal agreement. *Laumann v. National Hockey League*, --- F. Supp. 2d ---, 2012 WL 6043225, Nos. 12 Civ. 1817 & 12 Civ. 3074, at *9. At most, Plaintiffs' claims against MVPDs are like a purported "rimless wheel" conspiracy in which Comcast is a participant in a conspiracy involving certain RSNs and a league, and DIRECTV is separately a participant in a conspiracy involving certain RSNs and a league. *Cf. Dickson v. Microsoft Corp.*, 309 F.3d 193, 203 (4th Cir. 2002) (relying on *Kotteakos v. United States*, 328 U.S. 750 (1946) to hold that "[a] rimless wheel conspiracy is one in which various defendants enter into separate agreements with a common defendant, but where the defendants have no connection with one another, other than the common defendant's involvement in each transaction"). In that situation, there is no joint-and-several liability. *See also id.* at 211 ("[I]t is untrue that Compaq and Dell, as alleged co-conspirators of Microsoft, are responsible for all of Microsoft's unilateral acts with other OEMs who were not members of the alleged conspiracies. . . . [E]ach licensing agreement must be treated as a separate conspiracy, and only acts taken in furtherance of that alleged conspiracy are appropriately considered in determining the adverse effects of the claimed

*(cont'd)*

stay of all claims against all the MVPD and RSN Defendants is in order. TV Plaintiffs undervalue the significant trimming of claims that would result from even a limited stay. If DIRECTV and its affiliate RSNs enforce the arbitration agreement, they will face no more class claims from a putative DIRECTV-subscriber class. The same would be true if Comcast and its affiliated RSNs enforce Comcast's arbitration agreement against Mr. Traub—the Comcast entities would no longer face a putative Comcast-subscriber class. The MVPD and RSN Defendants should not have to conduct Rule 26 disclosures, defend class certification, respond to document discovery demands, or conduct other activity related to issues associated with claims by putative classes that will no longer exist if the Supreme Court reverses *AMEX III*.

In addition, even if the arbitration agreements would cover only Mr. Traub's claims against the Comcast entities and Mr. Silver's claims against the DIRECTV entities, a broader stay of each TV Plaintiff's claims against *all* Comcast and DIRECTV entities is still warranted here. Mr. Silver's claims against Comcast and its affiliated RSNs are identical to Mr. Traub's, and Mr. Traub's claims against DIRECTV and its related RSNs are identical to Mr. Silver's. Permitting some of those claims to go forward in federal court, while holding others for potential arbitrations, would almost certainly result in duplicative or overlapping proceedings or discovery and raise the specter of inconsistent rulings—both this Court and the arbitrators may decide threshold conspiracy issues for all the Comcast and DIRECTV defendants.[8]

---

*(cont'd from previous page)*
restraints on trade, not acts of one conspirator taken in furtherance of other possible, distinct conspiracies.").

[8] The MPVD and RSN Defendants cannot, of course, know at this point whether arbitrations will go forward after the arbitration agreements are enforced. In requesting a stay, Defendants do not suggest that arbitration is inevitable—it is unclear, for example, whether Mr. Silver or Mr. Traub will even seek to go forward with arbitrations. Nevertheless, the authorities
*(cont'd)*

## F.     Internet Plaintiffs' Claims Do Not Cut Against A Stay

Plaintiffs have also suggested that a stay of TV Plaintiffs' claims against all Defendants would not alleviate any of the MVPD or RSN Defendants' discovery obligations because Plaintiffs intend to issue discovery requests against all Defendants for the Internet Plaintiffs' claims. As set forth in the MLB Defendants' motion to stay, however, there are good grounds to stay the Internet Plaintiffs' claims as well.[9] Even if the Internet Plaintiffs' claims proceed, Plaintiffs are wrong to suggest that discovery will look the same on the TV and Internet sides of the cases.

Unlike TV Plaintiffs—who are indirect purchasers and whose claims involve a nebulous vertical conspiracy at various levels of the distribution chain involving the Leagues, their member teams, the RSNs, and the MVPDs—the Internet Plaintiffs are direct purchasers from the Leagues. As such, there is no need to pursue any class discovery about Comcast or DIRECTV subscribers on the Internet side because those issues are irrelevant to the Internet Plaintiffs' claims. Indeed, there is no reason for the Internet Plaintiffs to seek significant discovery from Comcast, DIRECTV, or their affiliated RSNs because the complaints do not allege that those Defendants played any role on the Internet side. In all events, any discovery that the Internet Plaintiffs seek from Comcast, DIRECTV, and their RSNs will be much narrower in scope and much less burdensome than the discovery on the TV side.

---

*(cont'd from previous page)*
recognize that a stay is appropriate in these circumstances to avoid the potential for inconsistent results across two different fora.

[9] (*See* MLB Defendants' Motion to Stay at 2 (citing *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997) and *Danisco A/S v. Novo Nordisk A/S*, No. 01 Civ. 10557 (LTS), 2003 WL 282391, at *4 (S.D.N.Y. Feb. 10, 2003)).)

II.     **TV Plaintiffs' Claims Against Other Defendants Should Also Be Stayed**

Comcast and DIRECTV additionally submit that this Court should stay TV Plaintiffs' claims against *all* Defendants. TV Plaintiffs' claims against the MVPD and RSN Defendants are ancillary to their claims against the League Defendants. Indeed, TV Plaintiffs have sued the MVPD and RSN Defendants only in an attempt to evade *Illinois Brick*'s indirect purchaser rule so that they can pursue damages claims concerning the League Defendants' policies.[10] Under these circumstances, the most efficient course is to stay all TV Plaintiffs' claims until the Supreme Court decides *AMEX III*. This will avoid piecemeal adjudication of any issues and will not prejudice any Plaintiff.

Numerous courts have stayed entire cases even where not all parties were signatories to the applicable arbitration provisions. In *Bischoff v. DIRECTV, Inc.*, 180 F. Supp. 2d 1097, 1114 (C.D. Cal. 2002), for instance, the plaintiffs' claims against DIRECTV were subject to arbitration, but their claims against DIRECTV's alleged co-conspirators were not. The court nevertheless stayed the entire case where the plaintiffs alleged "the same legal claims" against all defendants and those claims involved "identical" questions of fact. *Id.* The court reasoned that a "failure to stay the action may lead to inconsistent findings which will hinder the pursuit of judicial efficiency." *Id.*

The court reached the same conclusion in *Hiker Industries, Inc. v. William Stuart Industries Ltd.*, 640 F. Supp. 175 (S.D.N.Y. 1986). There, the plaintiff had an arbitration agreement with only one of the two defendants, but the court nevertheless stayed the entire case

---

[10] As the Court is aware, the MVPD and RSN Defendants disagree that there is any basis for conspiracy claims against them. The point here is that these conspiracy claims are the basis for TV Plaintiffs' argument that they can pursue damages against the League Defendants for the claimed horizontal conspiracy.

pending the outcome of the arbitration because the claims against both defendants involved "substantially similar" facts and issues, "making substantial duplication of effort inevitable." *Id.* at 178. For those reasons, the court concluded, "sound judicial administration dictate[d] that a complete stay [wa]s entirely justified" in the interests of "judicial economy" and "avoid[ance of] confusion and possible inconsistent results." *Id.* at 178. And in *Birmingham Associates Ltd. v. Abbott Labs.*, this Court compelled arbitration of claims against a non-signatory in part because it would "result in the preservation of judicial resources and avoid the possibility of inconsistent results." 547 F. Supp. 2d 295, 304 (S.D.N.Y. 2008).[11]

All the reasons that convinced the foregoing courts to stay the entire case— duplication of effort, possibly inconsistent results and confusion—militate in favor of staying all of TV Plaintiffs' claims against all Defendants.

If TV Plaintiffs proceed with their claims against the League Defendants, they will undoubtedly seek burdensome discovery against Comcast, DIRECTV, and their RSNs even if this Court stays their claims against those defendants. In that case, Comcast and DIRECTV would be deprived of much of the benefit of the stay to which they are entitled pending arbitration and will still be compelled to expend substantial resources. A stay of TV Plaintiffs' claims against all Defendants will preserve the arbitration rights for which Comcast bargained and promote the strong federal policy favoring arbitration.

---

[11] *See also Harvey v. Joyce*, 199 F.3d 790, 795 (5th Cir. 2000) (staying entire case because claims in the arbitration and the litigation involved the "same operative facts and [were] inherently inseparable" and proceeding with the litigation would undermine the federal policy favoring arbitration); *Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 665 (S.D.N.Y. 2011) (same); *Empire State Ethanol & Energy, LLC v. BBI Int'l*, No. 1:08 CV 623 (GLS/DRH), 2009 WL 1813205, at *2 (N.D.N.Y. June 25, 2009) (staying case against non-arbitrating defendants because claims against both the arbitrating and non-arbitrating defendants arose "out of the same alleged conspiracy").

## CONCLUSION

Comcast and DIRECTV respectfully request that the Court stay TV Plaintiffs' claims pending the Supreme Court's ruling in *AMEX III*.

Dated: January 7, 2013

Respectfully submitted,

/s/ Louis A. Karasik
Louis A. Karasik
Andrew E. Paris
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, California 90071-3004
Telephone: (213) 576-1148
Facsimile: (213) 576-1100
lou.karasik@alston.com
drew.paris@alston.com

*Attorneys for Defendants DIRECTV, LLC, DIRECTV Sports Networks, LLC, DIRECTV Sports Net Pittsburgh, LLC a/k/a Root Sports Pittsburgh, DIRECTV Sports Net Rocky Mountain, LLC a/k/a Root Sports Rocky Mountain, and DIRECTV Sports Net Northwest, LLC a/k/a Root Sports Northwest*

/s/ Arthur J. Burke
Arthur J. Burke
James W. Haldin
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
arthur.burke@davispolk.com
james.haldin@davispolk.com

*Attorneys for Defendants Comcast Corporation, Comcast SportsNet Philadelphia, L.P., Comcast SportsNet Mid-Atlantic L.P., Comcast SportsNet California, LLC, and Comcast SportsNet Chicago, LLC*