UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS LAUMANN, FERNANDA GARBER, ROBERT SILVER, and PETER HERMAN, representing themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>NATIONAL HOCKEY LEAGUE, et al.,<br><br>     Defendants | 12-cv-1817 (SAS) |
| MARC LERNER, FERNANDA GARBER, DEREK RASMUSSEN, and ROBERT SILVER, representing themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>OFFICE OF THE COMMISSIONER OF BASEBALL, et al.,<br><br>     Defendants | 12-cv-3704 (SAS) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTIONS TO STAY PENDING THE SUPMREME COURT'S
RESOLUTION OF *AMERICAN EXPRESS CO. v. ITALIAN COLORS RESTAURANT***

  Plaintiffs oppose Defendants' motions to stay these cases pending the Supreme Court's decision in *American Express Co. v. Italian Colors Restaurant*, No. 12-133 (U.S.) ("*Amex*"), because such a stay would serve no purpose other than delaying the prompt resolution of this case.

1

**BACKGROUND**

Plaintiffs allege that the defendant leagues—the National Hockey League and Major League Baseball—their member clubs, and their broadcast partners and programming distributers have engaged in conspiracies to restrain trade in video presentation of live hockey and baseball games by dividing the markets into exclusive territories, thereby immunizing themselves from competition. Defendants now seek to stay discovery because two of the six plaintiffs have entered into agreements containing arbitration clauses with two of the defendants—Comcast and Directv. They acknowledge that, as the law now stands, those arbitration clauses are unenforceable, but hope that the Supreme Court will alter the law in their favor in *Amex*.

There is no dispute that the other four plaintiffs do not have relevant arbitration clauses that Defendants could enforce. Those plaintiffs purchased Internet programming packages from the leagues, which show "out-of-market" games. They have properly alleged that all of the defendants in each case are liable as coconspirators, including the television defendants. Consequently, even if the Supreme Court overturns *Amex* and Defendants prevail on all of their arguments concerning the enforceability of the arbitration clauses, these cases will still proceed on the same core issues and against all of the defendants.

All Defendants will remain in these cases regardless of the outcome in *Amex*. The Internet programming packages sold by the leagues are specifically designed to protect both the Regional Sports Network Defendants ("RSNs") and the television distributors. By limiting broadcasts to "out-of-market" games, they ensure that viewers are required to purchase "local" game programming from an RSN through a Multichannel Video Programming Distributor ("MVPD"), such as Comcast and Directv. Defendants have artificially priced the packages to prevent competition with television and they have prevented all competition with "in-market"

broadcasts. The lack of an Internet alternative for watching local sports is widely seen as one of the primary factors preventing consumers from giving up pay-television subscriptions in a world where most other programming is available through competing sources. *See, e.g.*, Daniel Frankel, *Why Aren't More People Cutting The Cord? Regional Sports Networks*, PaidContent, Mar. 12, 2012.[1] Both Directv and Comcast operate and control RSNs whose exclusive territory is protected by these packages—and indeed, whose territory determines when a game is "in-" or "out-of-market." The television defendants thus play critical roles in the conspiracies alleged by the Internet plaintiffs.

As for the other two plaintiffs—Garrett Traub and Robert Silver—only Comcast has imposed an arbitration clause on Mr. Traub, and only Directv has imposed an arbitration clause on Mr. Silver. Those defendants contend that their affiliated RSN defendants are also entitled to enforce the arbitration clauses. That issue goes to the arbitration clauses themselves and is a dispute for another day. But neither Comcast nor Directv argues that their RSNs can assert an arbitration clause against the other MVPD's customer. And Defendants do not contend that the leagues, clubs, or other RSNs (MSG and the YES Network) have any relevant arbitration agreements with any plaintiff.

In sum, regardless of whether Comcast and Directv were to prevail in their attempts to force Mr. Silver and Mr. Traub into arbitration, the litigation in this Court would continue, involving all of the same parties and the same issues.

---

[1] http://paidcontent.org/2012/03/10/419-why-arent-more-people-cutting-the-cord-regional-sports-networks/

## ARGUMENT

As Defendants acknowledge, the decision whether to stay these cases is within the broad discretion of this Court.[2] *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). This reflects a district court's power to control its docket to promote efficiency and the interests of justice. *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97 (2d Cir. 2012). The burden of establishing the appropriateness of a stay is on the party seeking the stay. *Id.* at 97. "[A]bsent a showing of undue prejudice upon defendant or interference with his constitutional rights, there is no reason why plaintiff should be delayed in its efforts to diligently proceed to sustain its claim." *Id.* (quoting *Hicks v. City of N.Y.*, 268 F. Supp. 2d 238, 241 (E.D.N.Y. 2003)).

Because these cases will proceed—on a class basis—against all of the defendants, including Directv and Comcast, Defendants cannot possibly show "undue prejudice" in proceeding with this action according the existing schedule.[3]

**I.      The Outcome in *Amex* Will Not Affect the Core Issues in this Case.**

Because only two plaintiffs have relevant arbitration clauses, the parties will need to address the core issues in this Court no matter what. For the Internet plaintiffs, there is no dispute that a stay would do nothing but ensure delay.

---

[2] Defendants previously indicated that they intend to file an appeal of the Court's determination of this motion, should the Court deny their request for a stay. Plaintiffs are unaware of any basis on which the Court of Appeals would have jurisdiction to address the question, unless this Court were to certify the appeal under 28 U.S.C. § 1292(b) and the Second Circuit then granted a request for discretionary appeal. Federal Rule of Appellate Procedure 8(a) permits a party to seek a stay of a district court case pending an appeal, so long as the party has first sought such a stay in the district court itself, but that rule does not grant jurisdiction to the Court of Appeals. That Rule only enables the Court of Appeals to stay district court proceedings so as to facilitate the resolution of matters over which it has jurisdiction.

[3] There are cases in which the enforceability of an arbitration clause is determinative of whether the case can proceed in court at all, or whether it can proceed on a class basis. Under those circumstances, a stay may well be warranted. Consequently, it is unsurprising that certain courts in this circuit have instituted stays. But this is not that case.

Even as to the television plaintiffs, they would continue to have a right to pursue their claims in this Court against those defendants not party to the arbitration clauses. The Second Circuit has recently made clear that a non-signatory cannot seek to enforce an arbitration clause when its only relationship to the signatories is as a coconspirator. In *Ross v. American Express, Inc.*, 547 F.3d 137 (2d Cir. 2008), the court concluded that American Express could not enforce an arbitration clause entered into by the plaintiffs with Visa, Mastercard, and Diners' Club in a case in which the credit card companies were alleged to have conspired among themselves. The court held that "the further necessary circumstance of some relation between Amex and the plaintiffs sufficient to demonstrate that the plaintiffs intended to arbitrate this dispute with Amex is utterly lacking here." *Id.* at 147. Similarly here, many of the defendants have no plausible connection to the plaintiffs "to demonstrate that the plaintiffs intended to arbitrate this dispute with" them. Robert Silver, for example, purchased NHL Extra Innings through Directv. Neither Comast—a direct competitor to Directv—nor any of the non-Directv-affiliated RSN defendants, nor the clubs has *any* arguable basis for asserting that Mr. Silver intended to arbitrate with them with respect to his Directv service.

Defendants contend that the MVPD defendants are immunized from challenge from the other MVPD's customers, because the MVPDs have not conspired horizontally with themselves. As an initial matter, Defendants characterization of their participation merely as "spokes" in a rimless hub-and-spoke conspiracy is erroneous. Comcast and Directv's involvement is much more significant than that picture suggests. Not least, each actively controls the participation of their affiliated RSNs in core horizontal conspiracies in these cases. *See, e.g.*, Laumann Second Am. Compl. (Docket No. 87) at ¶¶ 26-27, 29-30, 61-74; Garber Am. Compl. (Docket No. 80) at ¶¶ 29-33, 67-78. Comcast also owns a controlling interest in the Philadelphia Flyers and NBC,

5

which broadcasts games nationally over the air and through pay television. *See* Laumann Second Am. Compl. at ¶¶ 31-32, 62. Defendants cannot contend that Directv's customers cannot seek recovery from Comcast's RSNs, and vice versa.

Moreover, even if Defendants were correct, it is not clear what practical difference it would make. Comcast and Directv would still be jointly and severally liable for their participation in agreements to restrain Internet streaming. *See* Dec. 5, 2012 Opinion and Order (*Laumann* Docket No. 83) at 28 n.97, *citing Paper Sys. Inc. v. Nippon Paper Indus. Co., Ltd.*, 281 F.3d 629, 632 (7th Cir. 2002). Thus, their participation in the schemes, as well as their RSNs' participation, would remain subject to the litigation.

In sum, therefore, no matter what happens in the Supreme Court, and no matter whether Mr. Silver and Mr. Traub are found to be subject to mandatory arbitration, four of the plaintiffs will have all of their claims against all of the defendants proceed in this Court, and Mr. Silver and Mr. Traub will each have claims against the majority of the Defendants.

## II.    A Stay Would Not Save Resources

The Supreme Court will issue its decision in *Amex* before Defendants are required to brief class certification under the existing schedule. There is no risk of certifying a class at odds with the Supreme Court's decision.

Defendants' central argument is that they will nonetheless be subject to discovery before class-certification briefing, and that discovery may be obviated by the Supreme Court's *Amex* decision. Yet Defendants have not identified what discovery they would have to produce that would be unnecessary if the claims against Directv and Comcast by Mr. Traub and Mr. Silver were sent to arbitration. The core issues would be unchanged. The legality of the schemes to divide the market would be assessed in exactly the same manner. And the RSNs' and the

distributors' involvement and participation in those schemes would be equally relevant with or without arbitration between the television plaintiffs and the MVPDs.

Even if the Court were to rule that television plaintiffs' claims were subject to arbitration, Comcast's and Directv's participation in the scheme would remain highly relevant to the claims of the Internet plaintiffs. Plaintiffs' position is that one of the key factors driving the pricing and restrictions on Internet streaming of games is to protect the interests of the television defendants, including the distributors. "Local" games are not available over the Internet in order to shield the television defendants from competition. Plaintiffs will seek discovery in support of this position whether or not the television plaintiffs remain in the case.

Moreover, at the core of every aspect of this case is the horizontal division of the markets between the RSNs. The conduct of the RSN defendants, including those that might seek to enforce the arbitration agreements of their parent MVPDs, will remain central regardless of the identity of the plaintiffs that remain following *Amex*.

Discovery of the economics of television distribution would also remain relevant. The limitations on the Internet products are nearly the same, and have been imposed for many of the same reasons as the limitations on the "out-of-market" television packages. They are also highly interrelated. Defendants carefully limit any potential competition between television and Internet programming. An analysis of the economics of the Internet products will necessarily require an assessment of the economics of television markets.

That there might be some limited areas of discovery that would be rendered unnecessary by the dismissal of some, or even all, of the television plaintiffs' claims does not come close to justifying staying these cases. If there are any such areas, Defendants can raise their concerns in the context of a request to stay the production of certain discovery.

**III.     A Stay Would Not Promote the Efficient Resolution of These Disputes**

Defendants contend that staying these cases is justified in order to avoid piecemeal adjudication and inconsistent results. Yet it is only the insistence on individual arbitrations, resulting in determinations with no preclusive effect, which would multiply these cases and prevent consistent adjudication.

These cases will resolve the legality of Defendants' exclusionary practices and, if they meet the requirements of Rule 23 and classes are certified, will resolve at least hundreds of thousands of claims. Yet Defendants contend that their resolution should be delayed because Defendants wish to avoid conflicting with two people's individual claims against certain parties, the resolution of which would be binding on no other court or tribunal, and would apply to no other potential plaintiffs.

If consistency and avoiding piecemeal adjudication were the real goal, then the answer would be to adjudicate all claims in this Court. To the extent Defendants believe that there are enforceable mandatory-arbitration clauses, Defendants are entitled to seek their enforcement, but they would not do so in order to promote the efficient and consistent adjudication of claims, but rather to prevent the possibility of broadly applicable, precedential decisions with normal preclusive effect.

## CONCLUSION

Because these cases will proceed regardless of what the Supreme Court decides in *Amex*, and regardless of whether the television defendants prevail in any potential motion to compel arbitration, Defendants cannot make a "showing of undue prejudice" that could justify delaying Plaintiffs' "efforts to diligently proceed to sustain [their] claim[s]." *Louis Vuitton*, 676 F.3d at 97. Accordingly, Plaintiffs respectfully request that the Defendants' motions be denied.

Dated: January 22, 2013                                     */s/ Edward Diver*

Edward Diver
Howard Langer
Peter Leckman
**LANGER, GROGAN & DIVER, P.C.**
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Telephone: (215) 320-5660
Facsimile: (215) 320-5703

Michael M. Buchman
**POMERANTZ GROSSMAN HUFFORD DAHLSTROM & GROSS LLP**
600 Third Avenue
New York, NY 10016
Telephone: 212-661-1100
Facsimile: (212) 661-8665

Kevin Costello
Gary Klein
**KLEIN KAVANAGH COSTELLO, LLP**
85 Merrimac Street, 4th Floor
Boston, MA 02114
Telephone: (617) 357-5500
Facsimile: (617) 357-5030

J. Douglas Richards
**COHEN, MILSTEIN, SELLERS & TOLL, PLLC**
88 Pine Street
14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745

Robert LaRocca
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street
Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
Facsimile: (215) 238-1968

*Attorneys for Plaintiffs Fernanda Garber, Marc Lerner, Derek Rasmussen, Robert Silver, and Garrett Traub*

Fred Isquith
Alex Schmidt
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653

*Attorneys for Plaintiff Peter Herman*

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that on January 22, 2013, I filed the foregoing by ECF to all counsel of record.

*/s/ Edward Diver*

Edward Diver
Howard Langer
Peter Leckman
**LANGER, GROGAN & DIVER, P.C.**
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Telephone: (215) 320-5660
Facsimile: (215) 320-5703