UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS LAUMANN, FERNANDA GARBER, ROBERT SILVER, GARRETT TRAUB, DAVID DILLON, and PETER HERMAN, representing themselves and all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>NATIONAL HOCKEY LEAGUE et al.,<br><br>　　　　　　　Defendants. | 12-cv-1817 (SAS) |
| FERNANDA GARBER, MARC LERNER, DEREK RASMUSSEN, ROBERT SILVER, GARRETT TRAUB, and PETER HERMAN, representing themselves and all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>OFFICE OF THE COMMISSIONER OF BASEBALL et al.,<br><br>　　　　　　　Defendants. | 12-cv-3704 (SAS)<br><br>ECF Cases<br><br><u>Electronically Filed</u> |

## REPLY IN SUPPORT OF COMCAST AND DIRECTV'S MOTION FOR STAY

TV Plaintiffs assert that even if this Court issued a stay, the Internet Plaintiffs' claims will go forward against all Defendants and some of TV Plaintiffs' claims may go forward against some other Defendants, and therefore this Court should not stay *any* claims against the MVPD and RSN Defendants even if *AMEX III* might eliminate those claims. Plaintiffs misapprehend

1

the requirements for a stay, disregard the public policy favoring arbitration, and paint a distorted picture of the core issues in these cases. Moreover, Plaintiffs' assertion that the MVPD and RSN Defendants play "critical roles" in vaguely described Internet conspiracies is found nowhere in the Complaints and does not support denial of a stay.

I. THE COURT SHOULD STAY TV PLAINTIFFS' CLAIMS AGAINST THE MVPD AND RSN DEFENDANTS

A. TV Plaintiffs Misstate the Applicable Legal Standard

TV Plaintiffs suggest that the MVPD and RSN Defendants are not entitled to a stay unless they can show "undue prejudice" absent a stay. (*See* Pls.' Opp. at 8 (citing *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97 (2d Cir. 2012))). But "undue prejudice" is not the applicable standard. In *Louis Vuitton*, the issue was whether the district court erred in denying a stay pending parallel criminal proceedings. Whatever may be true about stays in *that* context, the standard for a stay here involves several factors, including the potential prejudice to defendants, the potential prejudice to plaintiffs, judicial economy, and the public interest. *See Wing Shing Prods. (BVI) Ltd. v. Simatelex Manufactory Co.*, No. 01 Civ. 1044 (RJH) (HBP), 2005 WL 912184, at *1 (S.D.N.Y. Apr. 19, 2005). The MVPD and RSN Defendants have demonstrated that they will suffer substantial harm absent a stay and cited cases involving arbitration agreements making clear that a party suffers serious (often, as here, irreparable) harm if forced to litigate claims that it is entitled to arbitrate. *See, e.g., Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 643 (S.D.N.Y. 2012) (Dolinger, Mag. J.) (recognizing that failure to stay litigation pending arbitration "may irrevocably deprive [the party seeking arbitration] of at least a portion of that which it unquestionably bargained for, a proceeding designed (at least in theory if not always in practice) to avoid the far greater expenses and other burdens attendant on

class litigation (or even class-wide arbitration)"); *Del Rio v. CreditAnswers, LLC*, No. 10-cv-346-WQH-BLM, 2010 WL 3418430, at *4 (S.D. Cal. Aug. 26, 2010) (similar reasoning).

The other stay factors—the potential prejudice to the party opposing the stay and the public interest—also support a stay here. A stay of several months will not harm TV Plaintiffs, and the public interest in encouraging arbitration weighs strongly in favor of holding TV Plaintiffs' claims for those few months until the Supreme Court decides threshold questions of arbitrability in *AMEX III*. (Mot. at 4-5.) Plaintiffs ignore these factors in their Opposition.

### B. A Stay Is Justified Even if Some Claims May Survive *AMEX III*

Contrary to Plaintiffs' suggestion, a stay pending a higher-court decision does not depend on whether that decision ends the lower-court action in its entirety or even disposes of a majority of claims. It is enough that the pending higher-court proceedings will bear on the action to be stayed, even if the "issues in [the pending] proceedings are not necessarily controlling" and even if the pending decision "may not settle every question of fact and law before [the lower] court." *Sikhs for Justice v. Nath*, --- F. Supp. 2d ----, 2012 WL 4328329, at *22 (S.D.N.Y. Sept. 21, 2012) (internal quotation marks omitted). Indeed, "it is *common* practice in this Circuit to postpone the final disposition of a case pending an upcoming decision in the United States Supreme Court" (*Carter v. United States*, No. 1:06-cv-225, 2007 WL 2439500, at *3 (D. Vt. Aug. 23, 2007) (emphasis added))—which is why courts have begun staying proceedings for *AMEX III*. *See, e.g.*, Order on Motion for Stay, *Fromer v. Comcast Corp.*, No. 3:09-cv-02076 (D. Conn. Dec. 5, 2012), ECF No. 96; *see also Marshel v. AFW Fabric Corp.*, 552 F.2d 471, 471-72 (2d Cir. 1977) (instructing the district court to stay proceedings pending a Supreme Court decision that likely would decide controlling issues).

The Supreme Court's *AMEX III* decision could significantly reshape *Laumann* and *Garber*. TV Plaintiffs do not dispute that Traub's arbitration agreement covers at least his claims against both Comcast and its affiliated RSNs and that Silver's arbitration agreement covers at least his claims against both DIRECTV and its affiliated RSNs. If the Supreme Court holds that class-action waivers are enforceable in antitrust cases such as these, then the MVPD and RSN Defendants will move to compel arbitration of TV Plaintiffs' claims against them. At the very least, that would eliminate any DIRECTV subscriber class against the DIRECTV entities and any Comcast subscriber class against the Comcast entities, drastically reducing those Defendants' potential liability. (*See* Mot. at 8-10.) Courts have stayed claims for a higher-court decision when less was at stake. *See, e.g., Ortega v. J.B. Hunt Transport, Inc.*, No. 07-cv-8336, 2012 WL 6708161, at *1 (C.D. Cal. Dec. 18, 2012) (staying California wage-and-hour class action against a single trucking company pending a decision from the California Supreme Court).

Moreover, Plaintiffs offer no valid reason for the Court to decline a stay of Traub's claims against the DIRECTV entities and Silver's claims against the Comcast entities. TV Plaintiffs cite no authority to support their argument that they can sue the other's MVPD and affiliated RSNs and simply ignore *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203 (4th Cir. 2002), which undermines their position. And even if TV Plaintiffs were correct (which they are not), a stay of all their claims against the MVPD and RSN Defendants would still be appropriate.[1] Any claims that Silver might have against the Comcast entities are identical to Traub's, and any claims that Traub might have against the DIRECTV entities are identical to Silver's. Permitting some of those claims to go forward in federal court while holding others for arbitration poses the

---

[1] As Plaintiffs have been repeatedly informed, DIRECTV, LLC (the distributor) has no interest in, or control of, the DIRECTV RSN Defendants. DIRECTV, LLC and the DIRECTV RSNs are only indirectly related companies.

potential for duplicative or overlapping proceedings and discovery, as well as creating the possibility of inconsistent rulings. Concerns about similar inefficiencies led this Court in *Birmingham Associates v. Abbott Laboratories*, 547 F. Supp. 2d 295 (S.D.N.Y. 2008), to compel arbitration of claims against a non-signatory. *Id.* at 303-04. Those same inefficiencies exist in these cases. A stay will avoid that potential waste, and nothing in TV Plaintiffs' Opposition suggests otherwise.

### C. The Internet Claims and the TV Claims Will Not Involve Identical Discovery

TV Plaintiffs are wrong to assert that discovery on the Internet claims will mirror discovery on the TV claims. (*See* Pls.' Opp. at 7.) As indirect purchasers, TV Plaintiffs' claims rest on an alleged series of implausible multi-level vertical conspiracies that touch every level of the TV distribution chain and purportedly implicate the Leagues, their clubs, the RSNs, and the MVPDs. The Internet Plaintiffs, on the other hand, are direct purchasers from the Leagues. This difference is significant and will translate into equally significant differences in discovery on the TV and Internet claims. For instance, on the Internet claims, Plaintiffs will not need any class discovery about Comcast or DIRECTV subscribers because the Internet claims have nothing to do with Comcast's or DIRECTV's subscriber relationships or with how Comcast or DIRECTV distribute programming to their customers. Indeed, there is no reason for the Internet Plaintiffs to seek any significant discovery from Comcast, DIRECTV, or their affiliated RSNs because the Complaints do not allege (nor could they plausibly do so) that those Defendants played any role in creating or distributing the Leagues' Internet packages. TV Plaintiffs' argument that the Internet claims "will necessarily require an assessment of the economics of television markets" thus rings hollow. (*Id.*)

To make it appear that a stay of the TV claims will not change these proceedings, TV Plaintiffs rely upon novel theories about the MVPD and RSN Defendants' purported involvement in Internet "conspiracies." But there are *no* allegations in the Complaints supporting TV Plaintiffs' assertions that Comcast and DIRECTV are jointly and severally liable for their "participation in agreements to restrain Internet streaming" (*Id.* at 6) and that the Leagues' Internet packages are "specifically designed to protect" the MVPD and RSN Defendants from competition.[2] (*Id.* at 2.) And there can be no such allegations because Comcast, DIRECTV, and their affiliated RSNs have nothing to do with the Leagues' decisions related to selling products on the Internet. The Leagues—not the MVPDs or RSNs—determine whether and in what manner to distribute telecasts on the Internet. TV Plaintiffs' conjecture about the MVPD and RSN Defendants' purported involvement in Internet conspiracies has no basis in the Complaints, no basis in fact, and is no basis to deny a stay of the claims against the MVPD and RSN Defendants.

### D.   *AMEX III* Implicates More Than "Two People's Individual Claims"

TV Plaintiffs also obfuscate when they say that this Court should not stay class claims for arbitration agreements that cover only "two people's individual claims against certain parties." (*Id.* at 8.) If the Supreme Court holds that class-action waivers are enforceable in antitrust cases such as these, then TV Plaintiffs and the hundreds of thousands of putative class members who agreed to similar waivers are required to pursue their claims, if at all, through individual arbitration, not through class litigation.

---

[2] Of course, the MVPD and RSN Defendants cannot be liable for the Leagues' *unilateral* decisions about the Internet products that the Leagues create and sell.

### E. Denying a Stay Would Undermine the Strong Public Policy Favoring Arbitration

TV Plaintiffs incorrectly argue that "[i]f consistency and avoiding piecemeal adjudication were the real goal, then the answer would be to adjudicate all claims in this Court." (*Id.* at 8.) In addition to being wrong, that assertion reveals how readily TV Plaintiffs dismiss the public policy favoring arbitration. Defendants will be *entitled* to enforce TV Plaintiffs' arbitration clauses and attendant class-action waivers if the Supreme Court reverses in *AMEX III* and, in fact, public policy would *favor* arbitration over protracted litigation of these claims. *See, e.g., Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998). And Defendants' arbitration rights will be lost forever if Defendants continue to defend against claims that TV Plaintiffs had no right to bring in federal court in the first place. A brief stay will protect Defendants' bargained-for arbitration rights, will not harm TV Plaintiffs, and will serve the public's strong interest in encouraging arbitration. *See Del Rio*, 2010 WL 3418430, at *4.

## II. THE COURT SHOULD ALSO STAY TV PLAINTIFFS' CLAIMS AGAINST THE OTHER DEFENDANTS

TV Plaintiffs do not even attempt to respond to the MVPD and RSN Defendants' showing that courts have stayed entire cases pending arbitration even when all parties were not signatories to the arbitration agreement. (Mot. at 11-12 (citing *Hikers Indus., Inc. v. William Stuart Indus. Ltd.*, 640 F. Supp. 175 (S.D.N.Y. 1986), and *Bischoff v. DIRECTV, Inc.*, 180 F. Supp. 2d 1097 (C.D. Cal. 2002)). A broader stay makes sense here: TV Plaintiffs have sued the MVPD and RSN Defendants in an attempt to get around *Illinois Brick*'s indirect purchaser rule, and there can be no doubt that dismissal of all TV Plaintiffs' claims against the MVPD and RSN Defendants would bear on the *Illinois Brick* issues. A stay of TV Plaintiffs' claims against all Defendants is appropriate.

## III. THE RSN DEFENDANTS ARE NOT "AT THE CORE OF EVERY ASPECT OF THIS CASE"

Today, TV Plaintiffs' ever-changing theory of the case is that the "horizontal division of the markets between the RSN [Defendants]" is "at the core of every aspect of this case." (Pls.' Opp. at 7.) That assertion is flatly inconsistent with the Complaints. According to the Complaints, Plaintiffs' claims are about territorial restrictions that the *Leagues* created, that the *Leagues* impose, and that the *Leagues* control. The Complaints barely mention the RSN Defendants, and then only to note that an RSN agrees with a club to distribute programming in an exclusive territory knowing that other RSNs do the same in other territories. (*See, e.g., Laumann* Sec. Am. Compl. ¶¶ 68-70.) Those allegations do not remotely support a claim that the RSN Defendants agreed with each other to do *anything*, much less to restrain trade. Defendants will explain at summary judgment that the MVPD and RSN Defendants' vertical distribution contracts with the League Defendants—the *only* agreements to which the MVPD and RSN Defendants are parties—are insufficient to establish any unlawful horizontal agreements among those Defendants. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) (at summary judgment, a Section 1 plaintiff "must present evidence that tends to exclude the possibility that the alleged conspirators acted independently" (internal quotation marks omitted)).

## CONCLUSION

The Supreme Court's decision in *AMEX III* is only a few months away. Comcast and DIRECTV respectfully ask the Court to stay TV Plaintiffs' claims pending that decision.

Dated: January 28, 2013

/s/ Louis A. Karasik
Louis A. Karasik
Andrew E. Paris
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, California 90071-3004
Telephone: (213) 576-1148
Facsimile: (213) 576-1100
lou.karasik@alston.com
drew.paris@alston.com

Brian D. Boone
**ALSTON & BIRD LLP**
101 South Tryon Street, Suite 3900
Charlotte, North Carolina 28202
Telephone: (704) 444-1000
Facsimile: (704) 444-1111
brian.boone@alston.com

*Attorneys for Defendants DIRECTV, LLC, DIRECTV Sports Networks, LLC, DIRECTV Sports Net Pittsburgh, LLC a/k/a Root Sports Pittsburgh, DIRECTV Sports Net Rocky Mountain, LLC a/k/a Root Sports Rocky Mountain, and DIRECTV Sports Net Northwest, LLC a/k/a Root Sports Northwest*

/s/ Arthur J. Burke
Arthur J. Burke
James W. Haldin
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
arthur.burke@davispolk.com
james.haldin@davispolk.com

*Attorneys for Defendants Comcast Corporation, Comcast SportsNet Philadelphia, L.P., Comcast SportsNet Mid-Atlantic L.P., Comcast SportsNet California, LLC, and Comcast SportsNet Chicago, LLC*