# LANGER GROGAN & DIVER P.C.

HOWARD LANGER
JOHN J. GROGAN*
EDWARD A. DIVER
IRV ACKELSBERG
PETER LECKMAN†

ATTORNEYS AT LAW
1717 ARCH STREET
SUITE 4130
PHILADELPHIA, PA 19103
PHONE: 215-320-5660
FAX: 215-320-5703

GEOFFREY C. HAZARD, JR.††
OF COUNSEL

2263 CALIFORNIA STREET
SAN FRANCISCO, CA 94115
415-292-6535
ghazard@langergrogan.com

*ALSO ADMITTED IN NEW JERSEY
†ALSO ADMITTED IN CALIFORNIA
††ADMITTED IN CALIFORNIA ONLY

EDWARD A. DIVER
DIRECT DIAL (215) 320-5663
ndiver@langergrogan.com

***Via Fax (212) 805-7920***     November 22, 2013

Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street, New York, NY 10007

Re:   *Laumann, et al. v. National Hockey League, et al.*, 12-cv-1817 (SAS)
      *Garber, et al. v. Office of the Commissioner of Baseball, et al.*, 12-cv-3704 (SAS)

Plaintiffs write in response to the Court's request that the parties address Comcast's equitable estoppel argument under relevant state law. Pennsylvania law governs Mr. Silver's contract and Nevada law governs Mr. Birbiglia's. Equitable estoppel is founded on basic principles of equity and fairness under both Pennsylvania and Nevada law. *See* Pl.'s Mem. in Opp., at 9-10. In the context of arbitration, these principles mean that a party may be required to arbitrate with a nonsignatory only when that party's claims derive directly from the terms of the contract containing the arbitration clause. The Comcast defendants' estoppel argument fails because Plaintiffs Silver and Birbiglia have not relied in any fashion on their Directv customer agreements in asserting their claims against any parties, much less against Comcast.

Under both Pennsylvania and Nevada law, equitable estoppel is limited to the narrow circumstances when it would be inequitable to permit a party to assert a position that was inconsistent with his or her prior conduct. *In re Harrison Living Trust*, 112 P.3d 1058, 1061-62 (Nev. 2005) ("Equitable estoppel functions to prevent the assertion of legal rights that in equity and good conscience should not be available due to a party's conduct."); *Nesbitt v. Erie Coach Co.*, 204 A.2d 473, 476 (Pa. 1964) ("It is based upon the principle that a person is held to a representation made or a position assumed, where otherwise inequitable consequences would result ….").

This doctrine applies in the arbitration context only when a signatory to an agreement that contains an arbitration clause relies directly upon that contract to assert claims against the nonsignatory. *See* Oehmke & Brovins, 1 Commercial Arbitration §9:15 ("A plaintiff's claims must directly, not just indirectly, be based on the contract containing the arbitration clause before equitable estoppel will compel arbitration of those claims."). Fairness requires that if the plaintiffs rely on certain provisions of the contract to sustain their claims, they cannot disclaim the other portions of the same contract that require arbitration. As this Court explained, "The purpose of the doctrine of equitable estoppel is to prevent a plaintiff from, in effect, trying to have his cake and eat it too; that is, from relying on the contract when it works to his advantage

by establishing the claim, and repudiating it when it works to his disadvantage by requiring arbitration." *Denney v. Jenkens & Gilchrist*, 412 F. Supp. 2d 293, 298 (S.D.N.Y. 2005) (quotations omitted).

The Nevada Supreme Court has expressly adopted this position: "The equitable estoppel doctrine prevents a plaintiff signatory to a contract that contains an arbitration provision from avoiding the agreement to arbitrate if the plaintiff's claims rely on the contract as the basis for relief." *Ahlers v. Ryland Homes Nev., LLC*, No. 52511, 2010 WL 3276221 (Nev. Apr. 16, 2010) (unpublished); *see also Johnson v. Newmont USA Ltd.*, -- P.3d --, 2011 WL 1344206 (Nev. Apr. 7, 2011); *cf. Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 189 P.3d 656 (Nev. 2008).

While the Pennsylvania Supreme Court has not addressed equitable estoppel in this context, its traditional understanding of equitable estoppel strongly suggests that it would follow the standard rule. Other courts applying Pennsylvania law in this context have so concluded. In *Miron v. BDO Seidman, LLP*, for example, the court explained, "'The plaintiff's *actual dependence* on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the sine qua non of an appropriate situation for applying equitable estoppel.'" 342 F. Supp. 2d 324, 333 (E.D. Pa. 2004) (emphasis in original) (quoting *In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir. 2002), *rev'd on other grounds*, *PacifiCare Health Sys. v. Book*, 538 U.S. 401 (2003)); *accord Heller v. Deutsche Bank AG*, No. 04-CV-3571, 2005 WL 665052, *5 (E.D. Pa. Mar. 17, 2005). Under *Miron*'s application of Pennsylvania law, "[t]he essential question in situations such as these is whether Plaintiffs would have an independent right to recover against the non-signatory Defendants even if the contract containing the arbitration clause were void." 342 F. Supp. 2d at 333.[1]

Plaintiffs are unaware of any Pennsylvania decision in which equitable estoppel was applied in this context in the absence of the plaintiff's claims directly depending on the underlying contract. One Pennsylvania Court has taken an even narrower view, concluding, "There is no 'equitable estoppel' exception to the requirement of contractual privity to an agreement which would require this court to dismiss all class allegations in order to send this matter to arbitration." *Salkin v. Mastercard Int'l Inc.*, 77 Pa. D. & C. 4th 39, 45 (Ct. Com. Pl. Phila. 2005). Others have applied the traditional rule. *E.g.*, *Elwyn v. DeLuca*, 48 A.3d 457, 463-64 (Pa. Super. Ct. 2012) ("[T]he instant suit concerns Appellant's duties to Appellee as a Board member, and not Appellant's involvement with JJDC's obligations under the Contract.")

As discussed in Plaintiffs' opposition to Comcast's motion to compel, equitable estoppel cannot apply here because Plaintiffs do not rely on the Directv terms and conditions in any fashion in asserting their claims against Comcast. Comcast's liability turns on its participation in a conspiracy, not on anything related to the terms of the Directv contract. This is plainly

---

[1] *Accord Heller*, 2005 WL 665052 at *5 ("In as much as there is nothing ... that even remotely suggests that there is any relationship between the alleged wrongs and the non-signatory's obligations and duties in the contract and as it appears that the plaintiffs would still have an independent right to recover on their claims ... even if the ... agreement were declared invalid, we cannot find that the ... claims ... are dependent upon or intertwined with the consulting agreement .... Accordingly, estoppel under this theory is inappropriate here.").

Honorable Shira A. Scheindlin
November 22, 2013
Page 3

illustrated by Mr. Silver, who has a claim against Comcast Sportsnet Philadelphia notwithstanding the fact that he did not—and could not—receive any programming from it. This case does not turn on whether Comcast provided programming to any plaintiff; much less is this case about any particular term of the Directv contract. The terms and conditions simply have no bearing on any aspect of this case. They do not even specify the programming received or the prices paid, which are set by separate transactions. *See In re Wholesale Grocery Product Antitrust Litig.*, 707 F.3d 917, 924 (8th Cir. 2013) (refusing to find equitable estoppel where the plaintiffs' "antitrust claims were premised on paying artificially inflated prices," and "do not involve alleged violation of any terms" of the contracts that contained arbitration clauses.).

Under Pennsylvania and Nevada law, claims are "intertwined" with the contract only when the claims depend in some manner on the contract. In an attempt to evade this principle, Comcast conflates two distinct notions of relatedness. The relevant question is whether the claims against Comcast are related to the Directv *contracts*. The question is not whether the claims against Comcast are related to Directv's conduct or to the claims against it. For equitable estoppel to apply, there must be some unfairness in denying the application of the written contract's arbitration clause. Such unfairness does not exist here because the plaintiffs are not invoking those contracts in asserting their claims.

Acknowledging that standard estoppel principles would not grant them relief, the Comcast defendants have relied exclusively on a misinterpretation of the Second Circuit's decision in *Ragone v. Atlantic Video*, 595 F.3d 115 (2d Cir. 2010). *See* Pl.'s Mem. in Opp., at 12-13. In *Ragone*, the court found that the plaintiff understood that her contract necessarily covered ESPN, even though ESPN was not mentioned expressly. "[S]he understood ESPN to be, to a considerable extent, her co-employer." *Id.* at 127. Accepting the benefits of the contractually created relationship with ESPN, she was estopped from denying the arbitration clause therein. Here, there is no similar relationship that would make Directv subscribers understand that they were effectively contracting with Comcast as well. Indeed, most subscribers do not receive any programming from the Comcast Defendants, yet that fact does not prevent their claims in this case. In any event, to the extent *Ragone* can be construed to apply where plaintiffs' claims do not actually rely on the underlying contract, it has no application here because such a construction would contradict Pennsylvania and Nevada law, as Comcast implicitly acknowledges.

Ultimately, Comcast's position rests on the unsupportable position that Plaintiffs must arbitrate their claims because they have alleged that Comcast has conspired with parties with whom plaintiffs have arbitration agreements. Courts applying Pennsylvania and Nevada law have declined to apply equitable estoppel in such circumstances. *See Miron*, 342 F. Supp. 2d at 334; *Heller*, 2005 WL 665052 at *5; *Johnson*, --- P.3d ---, 2011 WL 1344206 at *1.

Sincerely,

Edward A. Diver

cc: Counsel of record via ECF