# DAVIS POLK & WARDWELL LLP

450 LEXINGTON AVENUE
NEW YORK, NY 10017
212 450 4000
FAX 212 701 5800

MENLO PARK
WASHINGTON, D.C.
SÃO PAULO
LONDON
PARIS
MADRID
TOKYO
BEIJING
HONG KONG

ARTHUR J. BURKE
212 450 4352

November 22, 2013

Re:  *Laumann v. National Hockey League*, No. 12-1817 (SAS); *Garber v. Office of the Commissioner of Baseball*, No. 12-3704 (SAS)

The Honorable Shira A. Scheindlin
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

Your Honor:

We write on behalf of the Comcast Defendants ("Comcast") in response to the Court's request for an analysis under state law of Comcast's argument that plaintiffs Vincent Birbiglia and Robert Silver must arbitrate their claims against the Comcast RSNs under principles of equitable estoppel.

The DIRECTV Customer Agreement is governed by federal law as well as "the laws of the state . . . where Service is provided to [the customer]." *See* Declaration of Valerie McCarthy, *Garber* ECF No. 159 ("McCarthy Decl.") Ex. B ¶ 10(b).  Birbiglia receives DIRECTV service at his home in Las Vegas, Nevada. *Id.* ¶ 10.  Silver received DIRECTV service at his home in Philadelphia, Pennsylvania. *Id.*  Accordingly, we address Nevada and Pennsylvania law below, mindful that "[t]he highest court of each State . . . remains the 'final arbiter of what is state law.'" *Montana v. Wyoming*, 131 S. Ct. 1765, 1773 (2011) (quoting *West v. AT&T*, 311 U.S. 223, 236 (1940)).

Nevada Law

To the extent that Nevada law addresses the issue before the Court, it supports Comcast's position that Birbiglia is estopped from avoiding arbitration. In *Ahlers v. Ryland Homes Nevada, LLC*, 2010 WL 3276211, at *2 (Nev. Apr. 16, 2010), the Nevada Supreme Court held that equitable estoppel "prevents a

plaintiff signatory to a contract that contains an arbitration provision from avoiding the agreement to arbitrate if the plaintiff's claims rely on the contract as the basis for relief." Under *Ahlers*, Birbiglia is thus estopped from avoiding arbitration because his standing to assert his antitrust claims is premised upon his contractual relationship with DIRECTV.

Plaintiffs may contend that *Ahlers* should apply only when a plaintiff asserts contract claims arising from the contract containing the arbitration provision. But nothing in *Ahlers* indicates, or even implies, that asserting a contract claim is the *sole* basis to estop a contract signatory from avoiding arbitration. Nor would such a cramped view of equitable estoppel be consistent with the inherently flexible nature of equity. *See, e.g.*, 3 William Blackstone, *Commentaries*, at \*28 ("[T]here can be no established rules and fixed precepts of equity . . . without destroying its very essence."). One need look no further than the Second Circuit's *Ragone* decision to confirm this conclusion. *See Ragone v. Atl. Video*, 595 F.3d 115 (2d Cir. 2010).[1]

Pennsylvania Law

Plaintiffs previously conceded that the Pennsylvania Supreme Court has not addressed equitable estoppel in the arbitration context. (Pls. Opp'n at 9; *see also MacDonald v. Unisys Corp.*, 2013 WL 2626929, at\*6 (E.D. Pa. June 12, 2013) ("[T]here is no controlling decision from the Supreme Court of Pennsylvania on the applicability of the doctrine of equitable estoppel to the arbitration context and there is a dearth of Pennsylvania case law on the issue.")).[2] Plaintiffs, therefore, relied upon a decision from the Eastern District of Pennsylvania stating that "[t]he plaintiff's actual dependence on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the sine qua non of an appropriate situation for applying equitable estoppel." *Miron v. BDO Seidman, LLP*, 342 F. Supp. 2d 324, 333 (E.D. Pa. 2004). Because *Miron* does not represent a binding statement of Pennsylvania

---

[1] *Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 189 P.3d 656 (Nev. 2008), is not on point. That case involved a signatory to an arbitration agreement attempting to compel arbitration against a non-signatory. *See id.* at 661. *In re Zappos.com, Inc. Customer Data Security Breach Litig.*, 893 F. Supp. 2d 1058, 1065-66 (D. Nev. 2012), also is inapposite. In *Zappos*, the court found that the arbitration agreement at issue did not apply because there was in fact "no contract pursuant to Nevada law," in part because the court determined that the arbitration agreement was "illusory and therefore unenforceable." *Id.*

[2] We are not aware of any intermediate state appellate court decisions on point. Plaintiffs have cited *Salkin v. Mastercard Int'l Inc.*, 77 Pa. D. & C. 4th 39, 45 (Pa. Com. Pl. 2005), to argue that there is "no equitable estoppel exception to the requirement of contractual privity to an agreement which would require this court to dismiss all class allegations in order to send this matter to arbitration." To the extent that *Salkin*, a trial court decision, purports to hold that Pennsylvania law does not recognize equitable estoppel in the arbitration context in any capacity, it is inconsistent with other Pennsylvania cases. *See, e.g.*, *BDO Seidman, LLP v. Kader Holdings Co., Ltd.*, 2005 WL 637450, at \*3 (Pa. Com. Pl. Mar. 11, 2005).

The Honorable Shira A.
Scheindlin                          3                    November 22, 2013

law, this Court should decline to adopt its narrow approach to equitable estoppel. *See, e.g.*, *In re Worldcom*, 546 F.3d 211, 218 n.4 (2d Cir. 2008) (noting that the Second Circuit is not bound by a federal district court's determination of state law).[3]

<u>Second Circuit Precedent Should Be Followed</u>

In the absence of controlling state authority, this Court must "carefully . . . predict how each state's highest court would resolve the uncertainty." *Maska U.S., Inc. v. Kansa Gen. Ins. Co.*, 198 F.3d 74, 78 (2d Cir. 1999) (internal quotations omitted). In doing so, the Court may "consider decisions in other jurisdictions on the same or analogous issues." *In re Thelen LLP*, 2013 WL 6037232, at *3 (2d Cir. Nov. 15, 2013).

Significantly, the Nevada Supreme Court has looked to Second Circuit authority for guidance in cases involving questions of equitable estoppel in the arbitration context. *See, e.g.*, *Truck Ins. Exch.*, 189 P.3d at 661, nn.11-12 (analyzing Second Circuit and Southern District of New York cases on arbitration and equitable estoppel). Recourse to Second Circuit precedent is particularly appropriate here, for at least two reasons. First, the Second Circuit's decision in *Ragone* is directly analogous to this case. Second, the considerations of fairness and justice that animate the doctrine of equitable estoppel transcend jurisdictional limits. This can be seen in *Ragone*, a post-*Carlisle* decision that looked to federal decisions for the applicable equitable principles—entirely consistent with *Carlisle*'s focus on "'traditional principles' of state law." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009).

*        *        *

For the reasons set forth above and in prior briefing, Comcast respectfully requests that the Court grant Comcast's motion to compel arbitration.

Respectfully submitted,

Arthur J. Burke

cc:   Plaintiffs' counsel via email

---

[3] Even if the Court credits *Miron*, Comcast notes that, like Birbiglia, Silver's standing to assert his antitrust claims depends upon his contract with DIRECTV.