# DAVIS POLK & WARDWELL LLP

450 LEXINGTON AVENUE
NEW YORK, NY 10017
212 450 4000
FAX 212 701 5800

MENLO PARK
WASHINGTON, D.C.
LONDON
PARIS
MADRID
TOKYO
BEIJING
HONG KONG

ARTHUR J. BURKE
212 450 4352
ARTHUR.BURKE@DAVISPOLK.COM

February 25, 2014

Re:   *Laumann et al. v. National Hockey League et al.*, 12-cv-1817 (SAS)
      *Garber et al. v. Office of the Commissioner of Baseball et al.*, 12-cv-3704 (SAS)

The Honorable Shira A. Scheindlin
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

Dear Judge Scheindlin:

   We write to set forth the anticipated grounds for the Comcast Defendants' motion for summary judgment in the above-referenced actions.[1]

   The Second Circuit has emphasized that summary judgment is particularly important in the antitrust context to "avoid[] wasteful trials and prevent[] lengthy litigation that may have a chilling effect on pro-competitive market forces." *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 95 (2d Cir. 1998). Those risks are particularly pronounced here given the absolute lack of evidence supporting Plaintiffs' claims. Voluminous discovery has failed to provide *any* evidentiary support for Plaintiffs' theory that the Comcast Defendants conspired with Major League Baseball ("MLB") and the National Hockey League ("NHL") and their respective clubs to divide the geographic market for live game telecasts. Indeed, the undisputed evidence is to the contrary, and the Comcast Defendants are entitled to summary judgment on all claims for four independent reasons.

   *First*, contrary to the allegations in the complaint, there is no evidence that the Comcast RSNs entered into a horizontal agreement with other RSNs to accept the territorial rules established by Leagues and offered to RSNs by the clubs on a "take it or leave it" basis. The mere fact that, at various times, individual RSNs have entered into rights agreements with MLB or NHL clubs that incorporate the Leagues' territorial rules is insufficient as a matter of law to establish a horizontal agreement among the RSNs. Such parallel conduct is fully consistent with

---

[1] "Comcast Defendants" refers to Comcast Corporation ("Comcast") and certain Comcast regional sports networks ("RSNs").

Hon. Judge Scheindlin                                   2                           February 25, 2014

independent decision-making, even where there is knowledge that similarly situated entities are making similar decisions. *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007) ("[A]t the summary judgment stage a § 1 plaintiff's offer of conspiracy evidence must *tend to rule out* the possibility that the defendants were acting independently.") (emphasis supplied). Thus, in the absence of any so-called "plus factors"—such as evidence of acts against economic self-interest or an abrupt shift from past practices—conscious parallelism does not support an inference of a horizontal agreement. *See, e.g., Apex Oil Co. v. Di Mauro*, 822 F.2d 246, 253-54 (2d Cir. 1987); *Alpha Lyracom Space Communs. v. Comsat Corp.*, 968 F. Supp. 876, 894 (S.D.N.Y. 1996).

Indeed, the undisputed facts developed in discovery *refute* any inference of conspiracy. Most significantly, the undisputed record makes clear that the Comcast RSNs had no control or influence over the Leagues' territorial rules, which pre-date the existence of the Comcast RSNs, and that the clubs only offer telecast rights to the Comcast RSNs subject to these limitations. Accordingly, Plaintiffs' horizontal conspiracy claims fail. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

*Second*, there is no evidence that the presumptively lawful vertical distribution agreements involving the Comcast Defendants have harmed competition in any way. Most fundamentally, the Comcast Defendants are mere bystanders in this case, joined as defendants solely in an attempt to cure Plaintiffs' standing deficiencies. As noted, there is no dispute that the Comcast Defendants had no influence over the League rules and have simply agreed to purchase what the Leagues and clubs have offered. Those facts cannot support a claim under Section 1. S*ee World Arrow Tourism Enter., Ltd. v. Trans World Airlines, Inc.*, 582 F. Supp. 808, 810-11 (S.D.N.Y. 1984). Moreover, nothing in these agreements prohibits out-of-market competitors from distributing content in competition with Comcast-affiliated RSNs—which is the core of Plaintiffs' complaints. In addition, there is no evidence in the record indicating that these vertical distribution agreements have resulted in higher prices or lower output. Indeed, the record demonstrates the contrary.

*Third*, even if Plaintiffs could meet their initial burden to establish anticompetitive harm, the Comcast Defendants would still be entitled to summary judgment because the exclusive, vertical distribution agreements at issue are procompetitive and beneficial to consumers. *See generally Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 54-55 (1977); *Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 245 (2d Cir. 1997). Significantly, the undisputed facts show that exclusivity incentivizes the Comcast RSNs to produce high-quality game telecasts, with numerous, high-definition cameras, popular announcers, audiovisual effects, and other expensive production elements. The undisputed facts further show that exclusivity incentivizes the Comcast RSNs to produce ancillary programming that promotes interest in both the club and the sport. Absent exclusivity, others would be able to free ride off

Hon. Judge Scheindlin						3						February 25, 2014

the Comcast RSN's production and promotional efforts, and the quality and/or quantity of game telecast productions would suffer as a result.

*Finally*, many of the named Plaintiffs lack standing or have other, insurmountable deficiencies in their claims entitling the Comcast Defendants to summary judgment.[2] To begin with, Plaintiffs Silver and Birbiglia lack standing under the indirect purchaser doctrine of *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). As the Court has previously recognized, Silver and Birgbilia are indirect purchasers with respect to Comcast Defendants. Because Silver and Birgbilia have agreed to stay their claims against DIRECTV—the only entity from which they purchased anything—their indirect claims against the Comcast Defendants are barred by *Illinois Brick*.[3] Moreover, as Plaintiffs cannot show that the Comcast Defendants had any involvement in setting the League rules at issue, Plaintiffs' invocation of any co-conspirator exception under *Illinois Brick* fails.

Plaintiffs Traub, Silver, Dillon, Lerner, and Rasmussen also all lack standing to seek injunctive relief because each testified that he has no intention of purchasing a relevant out-of-market package in the future. Plaintiffs' remaining grievances—including that they were "forced" to buy a league-wide out-of-market package when they would have preferred to buy a package that only included the games of their favorite teams—are not cognizable antitrust claims. *See, e.g., Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 16 (1984); *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1195 (9th Cir. 2012).

						Respectfully submitted,

						/s/ Arthur J. Burke
						Arthur J. Burke

cc:   All Counsel of Record (Via Email)

---

[2] Plaintiffs Dillon, Laumann, Silver, and Traub are plaintiffs in the *Laumann* (NHL) matter. Plaintiffs Birbiglia, Lerner, Rasmussen, and Traub are plaintiffs in the *Garber* (MLB) matter.

[3] DIRECTV subscribers have no claims against Comcast as an MVPD because Plaintiffs have not alleged a horizontal conspiracy among the MVPDs. *Laumann v. NHL*, 907 F. Supp. 2d 465, 487 (S.D.N.Y. 2012).

Davis Polk & Wardwell LLP