**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| FERNANDA GARBER, MARC LERNER, DEREK RASMUSSEN, ROBERT SILVER, GARRETT TRAUB, and VINCENT BIRBIGLIA, representing themselves and all others similarly situated,<br><br>                   Plaintiffs,<br><br>       v.<br><br>OFFICE OF THE COMMISSIONER OF BASEBALL, et al.,<br><br>                   Defendants | 12-cv-3704(SAS)<br><br><br><br><br>ECF Cases |

**PLAINTIFFS' REVISED RESPONSE TO MLB DEFENDANTS' LOCAL RULE 56.1**
**STATEMENT OF UNDISPUTED MATERIAL FACTS**

1.      Plaintiffs do not dispute the contentions of ¶ 1 of the MLB Defendants' 56.1 Statement.

2.      Disputed as stated. Plaintiffs do not dispute that the Major League Constitution states that the 30 Major League Clubs "agree hereby to act at all times in the best interests of Baseball."

3.      Plaintiffs do not dispute the contentions of ¶ 3 of the MLB Defendants' 56.1 Statement.

4.      Disputed as stated. The terms and phrases "this structure," "produce," "exhibit," and "entertainment product" as used in the statement are vague. Plaintiffs further object to the extent the use of the word "entertainment product" purports to correspond to any relevant product market under the antitrust laws as the statement is not supported by any admissible expert opinion testimony. Plaintiffs do not dispute that MLB clubs cooperate within the MLB league structure as set forth in the MLB Constitution to play regular season and postseason games.

5.      Plaintiffs do not dispute the contentions of ¶ 5 of the MLB Defendants' 56.1 Statement.

6.      Disputed in part and disputed as stated. The statement is vague as to what the statement means by "produce and exhibit Major League Baseball," and it is disputed inasmuch as it implies that all of the functions performed by MLB are necessary to produce the game of baseball. Declaration of Roger G. Noll ("Noll Decl.") at 67; *see also id.* at 59-68. Plaintiffs' complaint does not challenge any of the core attributes of the League nor the use of the name "Major League Baseball" to apply to games played by MLB Clubs according to MLB rules.

7.      Plaintiffs do not dispute the contentions of ¶ 7 of the MLB Defendants' 56.1 Statement.

8.      Disputed in part and disputed as stated. The phrase "highly integrated" as used in the statement is vague. Plaintiffs do not dispute that MLB clubs are members of a professional sports league. Plaintiffs do not dispute that Mr. Selig stated his beliefs as to the opinions set forth in ¶ 8, but object to characterization of those opinions as facts and any attempt to improperly introduce opinion testimony through a fact witness.

9.      Plaintiffs do not dispute the contentions of ¶ 9 of the MLB Defendants' 56.1 Statement.

10.     Disputed in part and disputed as stated. Plaintiffs do not dispute that MLB clubs benefit from certain core league functions. The reference to "licenses that have been agreed to among, or on behalf of, every MLB club" is vague and Plaintiffs dispute that all licensing agreements

among MLB clubs fall within the definition of such core league functions. *See* Noll Decl. 59-68. Plaintiffs further dispute that every MLB rule or license benefits every club.

11.     Disputed in part and disputed as stated. The term "exhibit" as used in the statement is vague. Plaintiffs do not dispute that MLB clubs benefit from certain core league functions of Major League Baseball agreed to under the Major League Constitution.

12.     Disputed in part and disputed as stated. The phrases "cumulative promotional efforts" and "local and national markets" as used in the statement are vague. To the extent "local and national markets" are references to relevant markets under antitrust laws, Plaintiffs object to any improper expert opinion testimony by a factual witness. Plaintiffs do not dispute that Mr. Selig stated his belief as to the statements in ¶ 12.

13.     Plaintiffs do not dispute the contentions of ¶ 13 of the MLB Defendants' 56.1 Statement.

14.     Disputed. Plaintiffs dispute that "2/3 of clubs 'fail' on the field every season" just because they do not reach the postseason. Plaintiffs further dispute that the citation to the record adequately supports the contention that such a structure "ensures that all clubs benefit from the exhibition of Major League Baseball." Plaintiffs do not dispute that Mr. Selig stated his beliefs as to the opinions set forth in ¶ 10, but object to characterization of those opinions as facts and any attempt to improperly introduce opinion testimony through a fact witness.

15.     Plaintiffs do not dispute the contentions of ¶ 15 of the MLB Defendants' 56.1 Statement.

16.     Disputed in part and disputed as stated. Plaintiffs do not dispute that the witness so testified. Plaintiffs dispute the statement, however, inasmuch as it implies that all of the conduct of each club and the league necessarily has the purpose or effect of growing the fan base of the league, which is not supported by the citation to the record.

17.     Disputed. The statement is vague as to the phrases "territorial structure" and "fundamental aspect." To the extent the term "territorial structure" is intended to refer to exclusive broadcast territories as currently employed by MLB, the statement is not supported by the cited source. The statement is disputed to the extent it suggests that sports leagues require exclusive territories. *See* Noll Decl. 67. It is further disputed to the extent it implies that the television territories are

justified by the existence of exclusive operating territories, which is not supported by the cited source. Plaintiffs do not dispute that Mr. Selig stated his beliefs as to the opinions set forth in ¶ 17, but object to characterization of those opinions as facts and any attempt to improperly introduce opinion testimony through a fact witness.

18.     Disputed in part and disputed as stated. The term "territorial structure" as used in the statement is vague. To the extent the statement is intended to refer to exclusive broadcast territories as currently employed by MLB, the statement is not supported by the cited source. It is disputed that MLB's on-field competition "is based on" any territorial structure. The statement is disputed to the extent it suggests sports leagues require exclusive territories. *See* Noll Decl. 67.

19.     Plaintiffs do not dispute the contentions of ¶ 19 of the MLB Defendants' 56.1 Statement.

20.     Disputed. The statement is vague as to the phrases "territorial structure." To the extent the term "territorial structure" is intended to refer to exclusive broadcast territories as currently employed by MLB, the statement is not supported by the cited source. Plaintiffs admit that some fans enjoy rivalries, but dispute that they require "MLB's territorial structure." Plaintiffs similarly admit that some fans enjoy that clubs are identified territorially with a home town, but dispute that such territorial identifications require "MLB's territorial structure." Noll Decl. 35.

21.     Plaintiffs do not dispute the contentions of ¶ 21 of the MLB Defendants' 56.1 Statement as they apply to operating territories for playing home games and locating a stadium. Plaintiffs dispute the implication that the "operating" and "home television" territories are identical, which is not supported by the cited material and is incorrect. Selig Ex. B, Art. VIII, §§ 8, 9.

22.     Plaintiffs do not dispute the contentions of ¶ 22 of the MLB Defendants' 56.1 Statement.

23.     Plaintiffs do not dispute the contentions of ¶ 23 of the MLB Defendants' 56.1 Statement.

24.     Disputed as stated and disputed in part. The terms and phrases "wide distribution" and "MLB product" as used in the statement are vague. Plaintiffs object to the extent the statement purports to offer opinion testimony through the guise of a factual witness. Plaintiffs further object to the extent the use of the word "MLB product" purports to correspond to any relevant product market under the antitrust laws. Plaintiffs do not dispute that MLB clubs are geographically

distributed throughout the United States and Canada.

25.       Plaintiffs do not dispute the contentions of ¶ 25 of the MLB Defendants' 56.1 Statement.

26.       Disputed in part and disputed as stated. Plaintiffs object that the use of the terms "strong markets," "important," and "local and national level" as vague, and further object to the extent the use of the term "market" purports to relate to any relevant market under the antitrust laws. Plaintiffs do not dispute that Mr. Selig stated his beliefs as to the opinions set forth in ¶ 26, but object to characterization of those opinions as facts and any attempt to improperly introduce opinion testimony through a fact witness.

27.       Disputed in part and disputed as stated. Plaintiffs do not dispute that Mr. Selig testified as to his belief that certain MLB clubs had developed relationships with their respective communities. Plaintiffs further respond that the single power point presentation cited refers to "Exploratory Online Research" in February and May 2008 and includes a bullet point that "Baseball is inherently local," but does not explain the basis for that statement. Tully Exh. A, at MLB0005213. Plaintiffs dispute that MLB has conducted any economic or market research on the effects of the challenged restraints.

28.       Disputed as stated. Plaintiffs do not dispute that Mr. Selig stated his beliefs as to the opinions set forth in ¶ 28, but object to characterization of those opinions as facts and any attempt to improperly introduce opinion testimony through a fact witness. To the extent that "territories" is intended to refer to broadcast territories, the assertion that they "create" regional rivalries is not supported by the cited materials.

29.       Disputed as stated. Plaintiffs do not dispute that Mr. Selig stated his belief as to the opinions set forth in ¶ 29, but object to the characterization of those opinions as facts and any attempt to introduce inadmissible opinion testimony through a fact witness.

30.       Disputed in part and disputed as stated. Plaintiffs object that the term "designated territory" as used in ¶ 30 is vague. To the extent that ¶ 30 refers only to operating territories, rather than broadcast territories, Plaintiffs do not dispute that Article VIII, Section 8 of the MLB Constitution provides that each club "shall have assigned operating territories within which they

have the right and obligation to play baseball as the home Club." Selig Ex. A, Art. VIII, § 8.

31.     Disputed as stated. Plaintiffs do not dispute that Mr. Selig stated his belief as to the opinions set forth in ¶ 31, but object to characterization of those opinions as facts and any attempt to improperly introduce opinion testimony through a fact witness. Plaintiffs further dispute that the exclusive territories incentivize local club investment. Noll Decl. 109-11.

32.     Disputed as stated. Plaintiffs do not dispute that Mr. Selig stated his belief as to the opinions set forth in ¶ 32, but object to characterization of those opinions as facts and any attempt to improperly introduce opinion testimony through a fact witness.

33.     Disputed. Plaintiffs do not dispute that Mr. Selig stated his belief as to the opinions set forth in ¶ 33, but object to characterization of those opinions as facts and any attempt to improperly introduce opinion testimony through a fact witness.

34.     Disputed in part and disputed as stated. The terms and phrases "local fans" and "virtually all" as used in the statement are vague. Plaintiffs dispute that the MLB's HTTs and video rights rules "enable" local fans to view all of a club's games. The league's rules allow for home and away telecasts, but teams would still have incentives to produce such telecasts if the territorial restraints were abolished and did so before the territories existed. *See* Noll Decl. 114; Diver Decl. Ex. 4. Plaintiffs further dispute that the HTTs as defined by MLB comprise "local" areas; for example, the Seattle Mariners are not a "local" team in Hawaii, Alaska, or Montana, which are within the Mariners' HTT.

35.     Disputed as stated. The term "competitive 'story'" is vague and confusing. Plaintiffs do not dispute that Mr. Selig so testified, but object that this is not a statement of a "material fact," and ignores that many fans are unable to follow "their" club due to MLB's territorial restraints and blackout restrictions. *See, e.g.*, Feeney Decl. ¶ 13.

36.     Disputed in part and disputed as stated. Plaintiffs do not dispute that Mr. Selig and Mr. Tully stated their beliefs as to the opinions set forth in ¶ 36, but object to characterization of those opinions as facts and any attempt to improperly introduce opinion testimony through a fact witness. Plaintiffs further object to the extent the reference to the "ability to compete with other

sports and entertainment products" purports to correspond to any relevant product market under the antitrust laws. *See* Noll Decl. 32-68.

37.     Disputed as stated. The term "national market" as used in ¶ 37 is vague and Plaintiffs object to the extent the reference to a "market" purports to correspond to any relevant market under the antitrust laws. Plaintiffs do not dispute that Mr. Selig stated his belief as to the opinions set forth in ¶ 37. Plaintiffs object, however, to the extent Mr. Selig speculates as to the knowledge and expectations of other MLB owners.

38.     Disputed as stated. The term "national market" as used in ¶ 38 is vague and Plaintiffs object to the extent the reference to a "market" purports to correspond to any relevant market under the antitrust laws. Plaintiffs do not dispute that MLB promotes Major League Baseball through national events and various promotional efforts.

39.     Disputed as stated. The terms "national market" and "international markets" as used in ¶ 39 are vague and Plaintiffs object to the extent the reference to a "market" purports to correspond to any relevant market under the antitrust laws. The phrase "league structure" as used in ¶ 39 is vague and Plaintiffs object to the extent that it implies that the centralization of intellectual property rights is a core attribute of MLB. *See* Noll Decl. 67. Plaintiffs do not dispute that under MLB's current league structure, MLB clubs have agreed to confer their rights to exploit certain intellectual property to centralized league entities.

40.     Disputed as stated. The term "actively" as used in ¶ 40 is vague. Plaintiffs do not dispute that MLB Enterprises and MLB Properties license certain MLB-associated intellectual property, including club logos and historical footage, in the United States and internationally.

41.     Disputed in part and disputed as stated. The term "national market" as used in ¶ 41 is vague and Plaintiffs object to the extent the reference to a "market" purports to correspond to any relevant market under the antitrust laws. Plaintiffs do not dispute that Mr. Selig and Mr. Tully stated their beliefs as to the opinions set forth in ¶ 41, but object to characterization of those opinions as facts and any attempt to improperly introduce opinion testimony through a fact witness. Plaintiffs further dispute the statement to the extent it implies that national network

telecasts would not occur without the challenged territories or that the challenged territories are necessary to the "promotion of the league and the sport to fans in the national market for the benefit of all clubs," neither of which is supported by the cited material. Nor do the MLB Defendants explain why they would be unable to obtain a national broadcast contract if the exclusive territories were abolished. Both MLB and NHL had national contracts before they created their exclusive HTT structures. *See, e.g.*, Diver Decl. Ex. 8 at 11; Ex. 32 at 130

42.     Disputed in part and disputed as stated. Plaintiffs do not dispute that Mr. Tully stated his belief as to the opinions set forth in ¶ 42, but object to characterization of those opinions as facts and any attempt to improperly introduce opinion testimony through a fact witness. Plaintiffs dispute the statement to the extent it implies that the challenged territories are necessary to "maintaining a strong national fan base" or that "national telecasts and other national marketing efforts" require the challenged territories, neither of which is supported by the cited material.

43.     Plaintiffs do not dispute that Mr. Selig stated his belief as to the opinions set forth in ¶ 43, but object to characterization of those opinions as facts and any attempt to improperly introduce opinion testimony through a fact witness.

44.     Plaintiffs do not dispute the contentions of ¶ 44 of the MLB Defendants' 56.1 Statement.

45.     Disputed in part and disputed as stated. Plaintiffs object that the term "supplements" as used in the statement is vague. Plaintiffs do not dispute the league offers two out-of-market packages ("OOM packages"), MLB Extra Innings and MLB.TV.

46.     Disputed in part and disputed as stated. Plaintiffs object that the phrase "virtually every" as used in the statement is vague. Plaintiffs do not dispute that MLB's OOM packages provide certain out-of-market games subject to blackout restrictions.

47.     Disputed in part and disputed as stated. Plaintiffs object that the phrase "undermining local club efforts and fan bases" as used in the statement is vague. Plaintiffs do not dispute that the league blacks out games and makes the packages sufficiently expensive to limit competition with local RSNs.

48.     Disputed. The term "national market" as used in ¶ 48 is vague and Plaintiffs object to the

extent the reference to a "market" purports to correspond to any relevant market under the antitrust laws. Plaintiffs do not dispute that Mr. Selig stated his beliefs as to the opinions set forth in ¶ 48, but object to characterization of those opinions as facts and any attempt to improperly introduce opinion testimony through a fact witness. Plaintiffs dispute any contention that market competition is "unfair" or its restraints necessary. *E.g.*, Noll Decl. 35.

49.    Disputed. Plaintiffs do not dispute that Mr. Selig stated his beliefs as to the opinions set forth in ¶ 49, but object to characterization of those opinions as facts and any attempt to improperly introduce opinion testimony through a fact witness. The MLB Defendants' Statement does not define "free riding," but the absence of territorial broadcast exclusivity would not create an incentive for an MLB club to "free ride" on MLB or any other Clubs in any relevant sense of the term. Noll Decl. 112.

50.    Disputed as stated. The term "competitive" as used in the statement is vague. Plaintiffs do not dispute that Mr. Selig stated his beliefs as to the opinions set forth in ¶ 50, but object to characterization of those opinions as facts and any attempt to improperly introduce opinion testimony through a fact witness. Moreover, the statement is disputed to the extent that it implies that restrictions in competition for television rights contribute to a team fielding a "competitive" team or otherwise contribute to "competitive balance." *See* Noll Decl. 117-18.

51.    Disputed. The term "competitive balance" as used in the statement is vague. Plaintiffs do not dispute that Mr. Selig stated his beliefs as to the opinions set forth in ¶ 51, but object to characterization of those opinions as facts and any attempt to improperly introduce opinion testimony through a fact witness. Moreover, the statement is disputed to the extent that it posits or implies that competitive balance necessarily causes an increase in demand or output. *See, e.g.*, Salil K. Mehra & T. Joel Zuercher, *Striking out "Competitive Balance" in Sports, Antitrust, and Intellectual Property*, 21 Berkeley Tech. L.J. 1499 (2006); Noll Decl. 117-20.

52.    Disputed. The term "competitive balance" as used in the statement is vague. Plaintiffs do not dispute that Mr. Selig stated his beliefs as to the opinions set forth in ¶ 52, but object to characterization of those opinions as facts and any attempt to improperly introduce opinion

testimony through a fact witness.

53.     Disputed. The terms "competitive balance" and "economically healthy" as used in the statement are vague. Plaintiffs do not dispute that Mr. Selig stated his beliefs as to the opinions set forth in ¶ 53, but object to characterization of those opinions as facts and any attempt to improperly introduce opinion testimony through a fact witness.

54.     Disputed. The term "competitive balance" as used in the statement is vague. Plaintiffs do not dispute that Mr. Selig stated his beliefs as to the opinions set forth in ¶ 54, but object to characterization of those opinions as facts and any attempt to improperly introduce opinion testimony through a fact witness. Furthermore, to the extent that the statement implies that centralized management and exploitation of intellectual property rights is necessary for or conducive to "competitive balance," the statement lacks any support in the cited sources.

55.     Disputed as stated. The terms "treated equally" and "national market" as used in the statement are vague. Plaintiffs admit that certain revenues generated by the League are divided equally among the Clubs.

56.     Disputed. The term "national market" as used in the statement is vague. Plaintiffs do not dispute that Mr. Selig stated his beliefs as to the opinions set forth in ¶ 56, but object to characterization of those opinions as facts and any attempt to improperly introduce opinion testimony through a fact witness. The cited material refers to shared revenues, but does not explain why MLB could not allow Clubs to exploit national markets while sharing revenue.

57.     Disputed. The term "competitive balance" as used in the statement is vague, as is the term "important." Plaintiffs do not dispute that Mr. Selig stated his beliefs as to the opinions set forth in ¶ 49, but object to characterization of those opinions as facts and any attempt to improperly introduce opinion testimony through a fact witness. Plaintiffs further object to this statement to the extent it relies on inadmissible hearsay about what is important to sponsors and advertisers.

58.     Disputed as stated. The term "competitive balance" as used in the statement is vague. Plaintiffs do not dispute that the State of the Game reports includes a section of data points tracked by MLB, which it categorizes as relating to "competitive balance."

59.     Disputed. The term "competitive balance" as used in the statement is vague. Additionally, "[e]conomic research provides no reason to believe that restrictions on competition for television rights contribute to competitive balance, no matter how balance is defined, and some reason to believe that these restrictions actually make competitive balance worse." Noll Decl. 117-120.

60.     Disputed as stated. The term "competitive balance" as used in the statement is vague. Plaintiffs do not dispute that "[i]n the ten most recent seasons from 2004-2013, 26 out of the 30 MLB clubs have appeared in the postseason."

61.     Plaintiffs do not dispute the contentions of ¶ 61 of the MLB Defendants' 56.1 Statement.

62.     Plaintiffs do not dispute the contentions of ¶ 62 of the MLB Defendants' 56.1 Statement.

63.     Plaintiffs do not dispute that the individual plaintiffs testified as selectively quoted in ¶ 63 of the MLB Defendants' 56.1 Statement. Plaintiffs object, however, to the extent MLB Defendants attempt to misconstrue these selective quotations as statements in support of any ultimate legal conclusions or expert opinions as to core league functions of Major League Baseball, which do not involve live video exhibition of MLB games. *See* Noll Decl. 59-68. The plaintiffs were neither qualified nor asked to interpret the Supreme Court's use of the term "the business of baseball," nor to opine on whether MLB's restraints on competition are essential if major league baseball is to be available at all.

64.     Plaintiffs do not dispute that the individual plaintiffs testified as selectively quoted in ¶ 64 of the MLB Defendants' 56.1 Statement, but object for the reasons stated in paragraph 63.

65.     Disputed in part and disputed as stated. Plaintiffs do not dispute that Mr. Tully stated his belief as to the opinions set forth in ¶ 65, but object to the extent the statement purports to offer legal conclusions. Plaintiffs object to the statement to the extent it implies that there are no less restrictive alternatives for MLB clubs to be able to license the telecast of a game other than through the territorial restrictions of MLB's current video rights structure. Noll Decl. 114.

66.     Plaintiffs do not dispute the contentions of ¶ 66 of the MLB Defendants' 56.1 Statement.

67.     Disputed. The MLB video rights structure causes some games to be unavailable to some fans that are within the HTT of a particular club, but not served by an MVPD that carries an RSN

with whom that club has contracted to offer that club's local telecasts. *E.g.*, Feeney Decl. ¶ 13.

68.     Plaintiffs do not dispute the contentions of ¶ 68 of the MLB Defendants' 56.1 Statement.

69.     Plaintiffs do not dispute the contentions of ¶ 69 of the MLB Defendants' 56.1 Statement.

70.     Disputed. Plaintiffs dispute that the current MLB video rights structure is necessary to avoid a situation in which "each and every club would have to engage in game-by-game, bilateral negotiations every season to determine live video rights." Plaintiffs further object to the extent that MLB Defendants and the declarant are offering speculation in the guise of fact, instead of admissible evidence. Plaintiffs further object to the extent the MLB Defendants suggest that clubs would not agree to permit visiting club broadcasts. Both MLB and NHL had national contracts before they created their exclusive HTT structures. See Ex. 8 at 11; Ex. 32 at 130.

71.     Disputed. Plaintiffs object to the extent that Defendants and the declarant are offering speculation in the guise of fact, instead of admissible evidence. It would be economically irrational for teams not to allow visiting clubs to broadcast the games. "Regardless of the merits of this argument about whether teams would reach reciprocal agreements about home and away broadcasts, a less restrictive alternative to the system of exclusive home territories is simply for the league to adopt the rule that a team has the right to telecast its away games." Noll Decl. 114.

72.     Plaintiffs do not dispute the contentions of ¶ 72 of the MLB Defendants' 56.1 Statement.

73.     Disputed. Plaintiffs do not dispute that Mr. Tully stated his belief as to the opinions set forth in ¶ 73, but object to characterization of those opinions as facts and any attempt to improperly introduce opinion testimony through a fact witness. Plaintiffs dispute the statement because MLB's video rights structure inhibits rather than fosters the wide distribution of live MLB game video to fans. *See* Noll Decl. 95-99.

74.     Disputed as stated and disputed in part. The statement is vague as to the phrase "virtually all." Plaintiffs do not dispute that a certain number of games are distributed via local and national telecast, but Plaintiffs dispute that all fans are able to watch as many games for as little cost as they would be able to do in the absence of MLB Defendants' unlawful restrictions. *See* Noll Decl. 95-105. Certain fans cannot watch most games of certain clubs due to the blackouts caused by the

exclusive territories. *See, e.g.*, http://mlb.mlb.com/mlb/help/faq_blackout.jsp; Feeney Decl. ¶ 13.

75.     Disputed as stated and disputed in part. The statement is vague as to the term "nearly all." The statement is also misleading as to the phrase "no extra cost" to the extent it implies that costs of watching a game on an RSN is not actually borne by consumers. Plaintiffs do not dispute that a certain number of games are distributed via local and national telecast, but Plaintiffs dispute that all fans are able to watch as many games for as little cost as they would be able to do in the absence of MLB Defendants' unlawful restrictions. *See* Noll Decl. 95-99.

76.     Disputed as stated and disputed in part. The statement is vague as to the phrase "only a handful." Plaintiffs do not dispute that a certain number of games are not telecast.

77.     Disputed as stated, for the reasons described in ¶ 45.

78.     Disputed as stated. Plaintiffs do not dispute that Mr. Tully so testified as to his belief that the OOM packages were designed for that purpose. Plaintiffs dispute, however, the extent to which OOM packages adequately serve fans. *See* Noll Decl. 16, 20, 99-104. Plaintiffs further dispute that the territorial restrictions applicable to the OOM packages necessarily allow viewing of "non-local games." *See, e.g.*, http://mlb.mlb.com/mlb/help/faq_blackout.jsp.

79.     Disputed for the reasons stated in response to ¶ 46. Plaintiffs further dispute that the territorial restrictions applicable to the OOM packages allow viewing of "non-local games." *Id*.

80.     Disputed as stated. Plaintiffs do not dispute that the current access to viewing MLB games did not exist prior to the early 1980s when the HTTs were adopted. Plaintiffs dispute, however, the implication that that adoption of HTTs is responsible for or necessary for the widespread availability of MLB telecasts, which is not supported by the record. *See* Noll Decl. 53-58.

81.     Disputed. In the "distant past" many teams did not broadcast out of market because channel space was limited and it was otherwise expensive to do so. *See* Plaintiffs' Mem. 17. Such confinements no longer exist. *Id*. Moreover, at the time MLB decided to impose strict geographic limitations on Club telecasts, clubs were "spreading out to such remote areas, that it is rapidly becoming an 'open sesame,'" according to one club chairman. Diver Decl. Ex. 37.

82.      Disputed in part and disputed as stated. In 1980, before MLB created the HTTs, MLB entered agreements with ABC and NBC that "prohibit any club from expanding its regional TV network." Tully Decl. Ex. C at MLB0484836. The HTTs were created in 1981, but were not codified into the league rules until December 1982. *See* Ex. 7 at 10-12. Plaintiffs admit that HTTs have only changed significantly when clubs were added to the league or relocated, such that they have not been updated to reflect demographic, economic, or technological changes in thirty years.

83.      Plaintiffs do not dispute that the exhibits, which are written documents that speak for themselves, so state. *See also* Plaintiffs Mem. 11-14.

84.      Disputed in part and disputed as stated. Plaintiffs do not dispute that certain areas in which no club has a home stadium have been assigned to one or more HTTs of clubs. The statement is vague as to the term "adjacent clubs." *See* Noll Decl. 14. The statement is incomplete or misleading, moreover, inasmuch as it implies that all geographic areas in which no club has a home stadium are covered by the HTTs of multiple clubs. Plaintiffs further dispute that the assignment of geographic areas to HTTs "maximize[s] the opportunity for baseball fans to receive live video of MLB games through standard cable, satellite, or telco television," which is not supported by the record. *See* Noll Decl. 95-99.

85.      Plaintiffs do not dispute the contentions of ¶ 85 of the MLB Defendants' 56.1 Statement.

86.      Disputed. Plaintiffs object to the extent that Defendants and the declarant are offering speculation in the guise of fact, instead of admissible evidence. Plaintiffs dispute that HTTs are necessary for ensuring the video exhibition of games. Noll Decl. 114; Diver Decl. Ex. 4.

87.      Disputed. The cited material does not support the contention that the 1993 dispute concerned a threat to "territorial television rights." Diver Decl., Exs, 20, 21; Tully Decl. Ex. E.

88.      Plaintiffs do not dispute the contentions of ¶ 88 of the MLB Defendants' 56.1 Statement.

89.      Plaintiffs do not dispute the contentions of ¶ 89 of the MLB Defendants' 56.1 Statement.

90.      It is undisputed that the report so states. Plaintiffs object, however, to the extent the report attempts to provide expert opinion testimony and constitutes inadmissible hearsay.

91.      It is undisputed that the report so states. Plaintiffs object, however, to the extent the report

attempts to provide expert opinion testimony and constitutes inadmissible hearsay. By way of further response, the report was not evaluating the viability of other less restrictive alternatives to exclusive home territories. *See* Noll Decl. 114.

92.      Disputed. The statement is vague as to the terms and phrases "virtually all," "make … available," "virtually every," and "methods."

93.      Plaintiffs do not dispute the contentions of ¶ 93 of the MLB Defendants' 56.1 Statement.

94.      Disputed in part and disputed as stated. The statement is vague as to the phrase "determined by MLB." Plaintiffs dispute this statement insofar as it suggests or implies unilateral action by the MLB with respect to the determination or definition of any territory a club licenses to an RSN. *See, e.g.*, DuPuy Dep. at 75:24-76:3; Ex. 10 at MLB0393441. Moreover, the RSNs have fought hard against changes to the territorial system. *See generally* DuPuy Dep. 69-70, 72-73, 81, 84-85, 105; Tully Dep. 99-100; Ex. 24.

95.      Disputed in part and disputed as stated. The statement is vague as to the term "serve," and is disputed insofar as fans are not "served" by the defendants' agreements concerning television territories that lead to consumers paying supra-competitive prices. *See, e.g.,* Noll Decl. 104-05.

96.      Disputed in part. It is undisputed that the sale of local telecast rights provides significant revenues to clubs. It is disputed that such revenue "supports a roster of healthy clubs and a competitively balanced league." *See* Noll Decl. 115-20. Further, the term "competitively balanced" as used in the statement is vague. Moreover, the statement is disputed as incomplete insofar as it omits that the primary cause of competitive imbalance is the differing values of the clubs' allocated territories. Noll Decl. 117.

97.      Plaintiffs do not dispute the contentions of ¶ 97 of the MLB Defendants' 56.1 Statement.

98.      Disputed in part and disputed as stated. Plaintiffs do not dispute the statement that on average RSNs carry 150 out of 162 games for a particular clubs in a given season. Disputed as stated. The term "story'" is vague and confusing. The statement ignores that many fans are unable to follow "their" club due to MLB's territorial restraints and blackout restrictions. *See, e.g.*, Feeney Decl. ¶ 13.

99.     Disputed. The standard practice in sports is for teams to grant reciprocal rights to televise all games involving the same two teams. Noll Decl. 114. MLB clubs granted reciprocal rights to televise games long before the HTTs were put in place. *See*, *e.g.*, Diver Decl. Ex. 4.

100.    The terms "invest" and "profitably" as used in the statement are vague. Plaintiffs otherwise dispute the statement to the extent it suggests that the HTTs are necessary for RSNs to carry MLB programming, which is not supported by the cited materials and is incorrect. *See* Noll Decl. 111-12. Plaintiffs do not dispute that an RSN's willingness to invest in club rights depends on a number of factors.

101.    Disputed. The terms "fundamental" and "exclusive" as used in this statement are vague. RSNs broadcast considerable sports programming that is not geographically exclusive, including college sports. *See, e.g.*, Diver Decl. Exs. 15, 18. Plaintiffs further dispute that RSNs would not carry games in the absence of territories that are exclusive with respect to other MLB games. Additionally, the statement is incomplete and misleading inasmuch as it omits that the reason why RSNs value exclusivity is because protection from competition makes the programming more valuable, so RSNs are willing to pay a higher price. *See* Henry Dep. 55:18-21.

102.    Disputed. No evidence supports the claim that the absence of competition creates an incentive for the RSNs or other networks to invest in quality productions. Plaintiffs object to this statement to the extent it relies on inadmissible hearsay about local programmers' decision-making. *See* Diver Decl., Exs. 15, 18. Defendants' argument that a regional monopoly is required to encourage investment rests on "the false premise that a reduction in competition increases investments in building a customer base and hence increases output." Noll Decl. 109. Lastly, there is no evidence that the quality of production for sports without territorial restraints is less than the quality of production for sports with those restraints.

103.    Plaintiffs do not dispute the contentions in ¶ 103 of the MLB Defendants' 56.1 Statement.

104.    Plaintiffs do not dispute the contentions of ¶ 97 of the MLB Defendants' 56.1 Statement.

105.    Disputed. First, RSNs spend the same amount to produce games for sports without territorial restraints as they do MLB games. *See* Exs 15, 18. Second, "[m]onopoly leads to less,

not more, output and consumer satisfaction." Noll Decl. 109.

106.    Disputed in part and disputed as stated. The term "significant expenses" as used in this statement is vague and the specific timeframe is undefined. Moreover, the statement is irrelevant because, compared to other programming, the current cost of producing live-game programming is very low, and the prices the networks are willing to pay for the rights to distribute MLB games highlight the relative insignificance of production costs. Litner Decl., ¶22. Plaintiffs admit that a higher percentage of MLB games are televised now than in the 1980s.

107.    Plaintiffs do not dispute the contentions in ¶ 107 of the MLB Defendants' 56.1 Statement.

108.    Plaintiffs do not dispute the contentions in ¶ 108 of the MLB Defendants' 56.1 Statement.

109.    Disputed as stated. The term "typically" is vague. Plaintiffs do not dispute that the majority of RSNs are carried by at least one MVPD in every community within an HTT.

110.    Plaintiffs do not dispute the contentions in ¶ 110 of the MLB Defendants' 56.1 Statement.

111.    Disputed as stated. Plaintiffs admit that certain clubs have, at various times, not obtained full cable distribution, but this is due to factors such as an MVPD's strategic control over its corporate RSNs or pricing/carriage disputes between RSNs and MVPDs. *See, e.g.*, *Comcast Corp.*, 26 F.C.C.R. 4238, 4255 * n.91 (2011). To the extent ¶ 111 is intended to imply that demand in any area would not justify full distribution of all RSNs if the associated licensing rights were not unlawfully inflated, the statement is not supported by the cited source. *See also* Noll Decl. 111-12.

112.    Plaintiffs do not dispute the contentions in ¶ 112 of the MLB Defendants' 56.1 Statement.

113.    Plaintiffs do not dispute the contentions in ¶ 113 of the MLB Defendants' 56.1 Statement. There are no independent RSNs that DirecTV carries that it does not distribute throughout the footprints for those RSNs. *See* Feeney Decl. ¶ 13.

114.    Disputed. The term "RSN's service" is not defined. MVPDs do not have exclusive rights to any RSN programming at issue here. Other MVPDs often carry the same RSN's live game content in the same territory. The contentions in ¶ 114 of the MLB Defendants' 56.1 Statement are not supported by the cited deposition transcripts, but rather only by the Tully Declaration,

16

which consists of inadmissible hearsay.

115.    Plaintiffs do not dispute the contentions in ¶ 115 of the MLB Defendants' 56.1 Statement, to the extent it refers to the HTT of the club. Both clubs' RSN programming is typically available in the rest of the country on the out-of-market packages.

116.    Disputed. Plaintiffs object to the extent that Defendants and the declarants are offering speculation in the guise of fact, instead of admissible evidence. No evidence supports the claim that the absence of competition creates an incentive for the RSNs or other networks to invest in quality productions. The MLB Defendants do not explain why an RSN would be concerned about whether its programming was distributed in one manner rather than another. In the absence of restraints, its programming would be distributed more broadly, and nothing would prevent it from capturing the benefits regardless of the method of distribution.  *See* Plaintiffs' Mem. 55-58.

117.    Disputed. Plaintiffs object to the extent that Defendants and the declarants are offering speculation in the guise of fact, instead of admissible evidence. There is no economic reason that an MVPD would not want to make all game content available as part of a subscription to the MVPD. Plaintiffs do not dispute that competing sources of MLB programming would lower the prices MVPDs would be willing to pay, but given the low cost of production and the clubs' incentives to sell their rights for little or no money, there is no reason that any such programming would cease to be produced or carried in a competitive market. *See, e.g*., Roger G. Noll, Broadcasting and Team Sports, 54 Scot. J. Pol. Econ. 400, 411 (July 2007); Noll Decl. 83.

118.    Disputed as stated. The term "non-exclusive" as used in this statement is vague. There is considerable evidence that RSNs license sports that do not have territorial exclusivity. *See, e.g*., Diver Decl. Exs. 15, 18. Furthermore, to the extent that ¶ 118 is implying that the HTTs are required or the least restrictive means for providing "own-game" exclusivity, as opposed to "other-game" exclusivity, the contention is not supported by the cited materials.

119.    Plaintiffs do not dispute that that the witnesses so testified. Plaintiffs further note that no witness stated that they would not license rights beyond the existing territory, and there is no evidence of any analysis suggesting that any RSN would not do so.

120.    Plaintiffs do not dispute that that the witnesses so testified.

121.    Plaintiffs do not dispute that that the witness so testified.

122.    Disputed. DirecTV, for example, carries more than 30 RSN services, including RSNs for at least 24 MLB Clubs, nationwide, even though it currently blacks out live MLB games on most of those channels in each market. *See, e.g.*, http://www.directv.com/sports/sports_pack. Absent the challenged restraints, RSNs would have a financial incentive to allow the games they telecast to be made available everywhere, and MVPDs would have a financial incentive to offer each RSN everywhere. *See* Noll Decl. 89-99, 109-14. By way of further response, Plaintiffs note that no Defendant has been able to identify any analysis, other than the speculative, self-serving statements provided in this litigation, supporting the contentions in ¶ 122 of the MLB Defendants' 56.1 Statement, which are not supported by citation to any evidence.

123.    Disputed. DirecTV already carries these RSNs, but must black out game programming to comply with the territorial restraints. Plaintiffs incorporate the response to ¶ 122.

124-26.        Plaintiffs do not dispute the contentions in ¶¶ 124-26 of the MLB Defendants' 56.1 Statement.

127.    Disputed as stated. The MLB Defendants do not define "standard television services." Plaintiffs do not dispute that approximately 70 million households subscribe to MLB Network as part of a pay-television package and that it telecasts approximately 150 live games each season.

128.    Disputed as stated. The MLB Defendants do not define "standard television services." Plaintiffs do not dispute that some national network telecasts are available to fans through free, over-the-air broadcast and that certain other telecasts are available only on cable, satellite, and telco television packages.

129.    Disputed in part and disputed as stated. The statement is incomplete inasmuch as it omits that the vast majority of games are not available on a national network. In addition, many games on national networks, including most games on MLB Network, are simply redistributed local broadcasts. Plaintiffs do not dispute that national networks value the limitations on competition that result from certain forms of "exclusivity."

130.    Disputed as stated. The term "independently" and the phrase "requiring MLB to maintain" are misleading as they posit independent as opposed to concerted action, and thereby ignore the role of the Television Defendants and other telecasters in connection with the anticompetitive agreements at issue in this litigation. *See* DuPuy Dep. 69-70, 72-73, 81, 84-85, 105; Tully Dep. 99-100; Ex. 24.

131.    Plaintiffs do not dispute the contentions of ¶ 131 of the MLB Defendants' 56.1 Statement.

132.    Disputed. Many sports without exclusive territorial systems obtain national contracts. *See, e.g.*, http://www.sportsmediawatch.com/2013-14-college-football-tv-schedule-regular-season-and-bowls/. Additionally, while these restraints "protect" the rights being licensed from competition, they do not "define" them.

133.    Disputed. These provisions do not "benefit MLB's fans," or "incentiviz[e] the networks 'to produce and provide high-quality entertainment to fans.'" "Monopoly leads to less, not more, output and consumer satisfaction." Noll Decl. 109.

134.    Plaintiffs do not dispute the contentions of ¶ 134 of the MLB Defendants' 56.1 Statement.

135.    Disputed in part and disputed as stated. Plaintiffs do not dispute that allowing clubs individually to license games for national telecast would affect the prices that networks would pay for their licenses from MLB. Plaintiffs dispute that allowing clubs individually to license games for national telecast would lead to the inability to license national telecasts. *See* Jones Decl. ¶ 21; Wildhack Decl. ¶ 18; Litner Decl. ¶ 32; *see also* Plaintiffs' Mem. 45-46.

136.    Disputed in part and disputed as stated. Plaintiffs object to the extent that Defendants and the declarants are offering speculation in the guise of fact, instead of admissible evidence. It is undisputed that eliminating HTTs and MLB's national/local video rights distinctions would be material to the national networks. It is disputed that such a change would cause the national networks to stop broadcasting any MLB games. *See* Noll 67, 110, 114. Plaintiffs dispute that allowing clubs individually to license games for national telecast would lead to the inability to license national telecasts. *See* Jones Decl. ¶ 21; Wildhack Decl. ¶ 18; Litner Decl. ¶ 32.

137.    Disputed. Plaintiffs object to the extent that Defendants and the declarant are offering

speculation in the guise of fact, instead of admissible evidence. The statement is disputed to the extent it presupposes that each sport is not a separate relevant market. The statement is further disputed because removing the challenged restraints would increase MLB programming. *See* Noll Decl. 89-99, 109-14.

138.    Disputed as stated. The term "treated equally" is vague. Plaintiffs admit that certain revenues generated by national network agreements are divided equally among the Clubs.

139.    Disputed in part and disputed as stated. The phrase "allow all clubs to benefit" as used in this statement is vague and misleading (and therefore disputed) and its connection to "their cooperative efforts" is unexplained. To the extent the MLB Defendants are suggesting that shared revenues improve competitive balance, disputed insofar as economists have concluded that the pooled sale of television rights by a league either has no effect on competitive balance or makes matters worse. Noll Decl. 118-19.

140.    Plaintiffs do not dispute the contentions of ¶ 140 of the MLB Defendants' 56.1 Statement.

141.    Disputed as stated. Plaintiffs do not dispute that Mr. Tully so testified as to his belief that the OOM packages were designed for this purpose. Plaintiffs dispute, however, the extent to which OOM packages adequately serve fans. *See* Noll Decl. 16, 20, 99-104.

142.    Disputed for the reasons stated in response to ¶¶ 46 and 79.

143.    Disputed in part and disputed as stated. Plaintiffs dispute that fans of the San Diego Padres can watch all Padres games on an OOM package. For example, that fan would not be able to watch a San Diego Padres game against the Boston Red Sox on an existing OOM package because Maine is in the HTT for the Boston Red Sox and that game would be blacked out. *See* http://mlb.mlb.com/mlb/subscriptions/index.jsp#blackout.

144.    Disputed as stated. Plaintiffs do not dispute that due at least in part to MLB's HTTs, prior to the OOM packages fans had no guaranteed way to watch games of non-local clubs other than those broadcast on national network television.

145-48.        Plaintiffs do not dispute the contentions of ¶¶ 145-48 of the MLB Defendants' 56.1 Statement.

149. Disputed as stated. It is undisputed that OOM packages do not allow in-market viewing. However, the statement is disputed to the extent it suggests or implies that this arrangement is procompetitive. *See, e.g.*, Diver Decl. Ex. 1.

150. Plaintiffs do not dispute the contentions of ¶ 150 of the MLB Defendants' 56.1 Statement.

151. Disputed as stated. It is implausible that RSNs would not be permitted any right to expand their licenses beyond the current territory to areas that currently are "out-of-market," as all parties would have an economic incentive to do so. *See* Noll Decl. 89-99, 109-14.

152. Disputed as stated. Plaintiffs object that the phrase "all other aspects" as used in the statement is vague and overbroad. Other aspects such as the League-wide agreement allowing telecasts by visiting clubs, own-game exclusivity, and licenses for a joint, nationwide package of all Clubs' games are conceptually and factually independent from the HTT system. MLB clubs would distribute their games more broadly and at lower prices absent the territorial restraints. *See* Noll Decl. 89-105, 109-14. By way of further response, there is no evidence of any analysis supporting the contention in ¶ 152, other than what Defendants have created for this litigation.

153. Disputed as stated. The term "treated equally" is vague. Plaintiffs admit that certain revenues generated by the OOM packages are divided equally among the Clubs.

154. Disputed as stated. The term "equal benefit" is vague. Plaintiffs admit that these revenues are divided equally among the Clubs. Plaintiffs do not dispute the other contentions of ¶ 154.

155. Disputed in part. Plaintiffs do not dispute that MLBAM delivers live telecasts of games to fans through Internet streaming. Plaintiffs dispute that it is the only "vehicle" for such purpose.

156. Plaintiffs do not dispute the contentions of ¶ 156of the MLB Defendants' 56.1 Statement.

157. Plaintiffs do not dispute the contentions of ¶ 157 of the MLB Defendants' 56.1 Statement. Plaintiffs object, however, to Mr. Bowman's attempt to testify as to the contents of a document without attempting to introduce that document into the summary judgment record. Fed. R. Evid. 1001-1004. This objection also applies to ¶¶ 158, 159, and 169.

158. Disputed as stated. While not prohibited outright, in-market streaming is only permitted under IMRA in certain circumstances. The effect of these requirements has been to prevent in-

market streaming.

159.    Disputed as stated. The statement is incomplete and misleading inasmuch as "Local Game" is not a defined term used in the cited sections of IMRA. Additionally, Plaintiffs dispute this statement to the extent that MLBAM is not currently authorized to stream MLB games produced by a club's local telecast partner into the HTT of the other club in that game.

160.    Plaintiffs do not dispute the contentions of ¶ 160 of the MLB Defendants' 56.1 Statement.

161.    Plaintiffs do not dispute the contentions of ¶ 161 of the MLB Defendants' 56.1 Statement.

162.    Disputed as stated. The phrase "nearly all" as used in the statement is vague. Disputed for the reasons stated in ¶¶ 46, 79, and 142.

163.    Plaintiffs do not dispute the contentions of ¶ 163 of the MLB Defendants' 56.1 Statement.

164.    Plaintiffs do not dispute the contentions of ¶ 164 of the MLB Defendants' 56.1 Statement.

165.    Disputed. According to the MLB.tv website, the "Regular Full Yearly Price" for MLB.TV premium is $129.99/year. *See* http://mlb.mlb.com/news/article/mlb/mlbtv-subscriptions-now-available-for-2014-season?ymd=20140203&content_id=67397778&vkey=news_mlb.

166.    Plaintiffs do not dispute the contentions of ¶ 166 of the MLB Defendants' 56.1 Statement, but they are irrelevant and misleading because it is not possible to watch all games.

167.    Plaintiffs do not dispute the contentions of ¶ 167 of the MLB Defendants' 56.1 Statement.

168.    Plaintiffs do not dispute the contentions of ¶ 168 of the MLB Defendants' 56.1 Statement.

169.    Disputed as stated. Disputed for the reasons discussed in response to ¶ 158.

170.    Disputed in part and disputed as stated. Plaintiffs object that the phrase "actively pursued" as used in the statement is vague. The statement is incomplete and misleading inasmuch as it omits the fact that MLBAM has imposed requirements on in-market streaming that have prevented clubs from participating, despite the fact that it would be economically rational for them to do so. See Plaintiffs' Mem. 72; Diver Decl., Ex. 29 at 2.

171.    Plaintiffs do not dispute the contentions of ¶ 171 of the MLB Defendants' 56.1 Statement.

172.    Plaintiffs do not dispute the contentions of ¶ 172 of the MLB Defendants' 56.1 Statement.

173.    Disputed. Many sporting events are streamed over-the-top with no requirement that a

consumer be a subscriber to the RSN on which the programming is available. *See, e.g.*, http://www.mlssoccer.com/blackout.

174.   Disputed in part. The statement is disputed to the extent that streaming technology is now widely and inexpensively available outside of MLBAM. *See, e.g.*, Noll Decl. 54-55; *Youtube opens up live streaming to all verified accounts*, CNET.com, Dec. 12, 2013, http://www.cnet.com/news/youtube-opens-up-live-streaming-to-all-verified-accounts/.

175.   The phrase "industry leader" as used in the statement is vague. Plaintiffs do not dispute that Mr. Bowman stated such in his declaration.

176.   Plaintiffs do not dispute the contentions of ¶ 176 of the MLB Defendants' 56.1 Statement.

177.   Disputed as stated. Plaintiffs object that the phrase "continually innovate and improve MLB.TV for MLB fans" is vague.

178.   Disputed as stated. Plaintiffs object that the phrase "innovation and investment of substantial resources" is vague. Plaintiffs dispute the statement inasmuch as it purports to imply that all MLBAM activities are procompetitive. MLBAM competitors, such as Neulion and Youtube, are similarly able to provide high-quality streaming live-game video.

179.   Disputed as stated. Plaintiffs object that the phrases "leverages the collective investment" and "efficiencies" are vague.

180.   Disputed in part and disputed as stated. Plaintiffs object that the phrase "achieved all that MLBAM has" is vague. Plaintiffs dispute that all fans are able to watch as many games for as little cost as they would be able to do in the absence of MLB Defendants' unlawful restrictions. *See* Noll Decl. 95-105. Plaintiffs also dispute that clubs could not make arrangements with MLBAM competitors or that they could not work with MLBAM on a non-exclusive basis. MLBAM provides streaming services to many other entities, including other sports leagues and non-sports entities, and could provide the same services to individual Clubs on a non-exclusive basis. *See, e.g.*, Bowman Dep. 40:13-22, 56:12-58:20.

181.   Disputed. Plaintiffs object to the extent that Defendants and the declarant are offering speculation in the guise of fact, instead of admissible evidence. The phrase "potentially pay" as

used in this statement is vague. Plaintiffs further object to the extent the MLB Defendants suggest that clubs would not agree to permit visiting club broadcasts. Further, "[r]egardless of the merits of this argument about whether teams would reach reciprocal agreements about home and away broadcasts, a less restrictive alternative to the system of exclusive home territories is simply for the league to adopt the rule that a team has the right to telecast its away games." Noll Decl. 114.

182.    Disputed. Plaintiffs object that the phrase "leverage the costs" is vague. Plaintiffs dispute to the extent it implies that clubs would have to make all of the same investments MLBAM has made. Individual clubs could work with other streaming services (such as Neulion or Youtube), or MLBAM could support the efforts of individual clubs. *See* ¶ 181 response.

183.    Disputed. Plaintiffs object to the extent that Defendants and the declarant are offering speculation in the guise of fact, instead of admissible evidence. The term "guarantee the same level of distribution" as used in this statement is vague. Moreover, this statement is refuted by Professor Noll who explained that the MLB Defendants' territorial restrictions "limit the distribution of game telecasts restrict the choices available to consumers and the quantity of output in live game telecasts." Noll Decl. 95; *see also id.* at 95-99.

184-86.         Plaintiffs do not dispute the contentions of ¶ 184-86 of the MLB Defendants' 56.1 Statement.

187.    Disputed in part and disputed as stated. The phrase "standard cable package" is vague. Plaintiffs admit that the number of games stated in ¶ 187 of the MLB Defendants' 56.1 Statement is correct for some fans subscribing to some cable packages; but, for example, not every fan who lives in New York City and subscribes to an MVPD can get that number of games because, for example, not all MVPDs carry the Yankees' RSN, YES Network. *See* http://www.nytimes.com/2011/04/02/sports/baseball/02sandomir.html.

188.    Disputed as stated inasmuch as the phrase "on top of all that" is vague in this context. Further disputed for the reasons stated in response to ¶ 187 and for the additional reason that not all MVPDs carry MLB Extra Innings. Further disputed because some games are not available.

189.    Disputed in part and disputed as stated. The statement is disputed as incomplete and

misleading insofar as it omits that independent improvements in technology have made it easy and inexpensive to distribute digital signals anywhere in the country. Disputed insofar as it implies that viewer choice would not be greater in the absence of the challenged restraints.

190.   Plaintiffs do not dispute the contentions of ¶ 190 of the MLB Defendants' 56.1 Statement.

191.   Plaintiffs do not dispute that each named plaintiff testified that he wants the opportunity to purchase a live video package consisting of just the games involving his individual preferred club. Plaintiffs dispute that this is the only relief Plaintiffs are seeking. *See* Second Amended Complaint, Dkt. 177, at §VIII.

192.   Plaintiffs do not dispute that each named plaintiff testified that he was damaged by paying more for the league's OOM package, which includes games of more than just his favored club. *See also* Noll Decl. 99-105. Plaintiffs dispute that this is the only relief Plaintiffs are seeking. *See* SA, at §VIII.

193.   Disputed. Professor Noll has identified a number of alternatives that MLB Defendants could adopt alongside the elimination of the HTTs, such as increased revenue sharing and other league rules concerning broadcasting rights. *See* Noll Decl. 105-120.

194.   Disputed. Professor Noll has explained why none of the MLB Defendants' proffered justifications constitute a reasonable business justification for the challenged restrictions on competition and why any putative "procompetitive virtues" can be achieved by less restrictive means. Noll Decl. 105-120. Professor Noll's unrebutted report further shows that total output would be increased if the HTTs were eliminated. *See* Noll Decl. 89-99. By way of further response, there is no evidence of any analysis suggesting that any procompetitive benefits could not be achieved if HTTs were eliminated, other than what Defendants have created for this litigation.

Dated: June 2, 2014                                    Respectfully submitted,

                                                      Michael M. Buchman
                                                      John A. Ioannou

**MOTLEY RICE, LLC**
600 Third Avenue, Suite 2101
New York, NY 10016

Edward Diver
Howard Langer
Peter Leckman
**LANGER, GROGAN & DIVER, P.C.**
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Telephone: (215) 320-5660
Facsimile: (215) 320-5703

Kevin Costello
Gary Klein
**KLEIN KAVANAGH
COSTELLO, LLP**
85 Merrimac Street, 4th Floor
Boston, MA 02114

J. Douglas Richards
**COHEN, MILSTEIN, SELLERS &
TOLL, PLLC**
88 Pine Street, 14th Floor
New York, NY 10005

Jeffrey B. Dubner
**COHEN MILSTEIN SELLERS &
TOLL, PLLC**
1100 New York Ave. NW, Suite 500
Washington, DC 20005

Robert J. LaRocca
Craig W. Hillwig
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street, Suite 2100
Philadelphia, PA 19107

Adam G. Kurtz
Marc I. Gross
**POMERANTZ, LLP**
600 Third Avenue, 20th Floor
New York, NY 10016

Joshua D. Snyder
Michael J. Boni

**BONI & ZACK, LLC**
15 St. Asaphs Road
Bala Cynwyd, PA 19004

*Attorneys for Plaintiffs*