## LANGER GROGAN & DIVER P.C.
### ATTORNEYS AT LAW

HOWARD LANGER
JOHN J. GROGAN*
EDWARD A. DIVER
IRV ACKELSBERG
PETER LECKMAN†

1717 ARCH STREET
SUITE 4130
PHILADELPHIA, PA 19103

PHONE: 215-320-5660
FAX: 215-320-5703

EDWARD A. DIVER
DIRECT DIAL (215) 320-5663
ndiver@langergrogan.com

GEOFFREY C. HAZARD, JR.††
OF COUNSEL

2263 CALIFORNIA STREET
SAN FRANCISCO, CA 94115
415-292-6535
ghazard@langergrogan.com

*ALSO ADMITTED IN NEW JERSEY
†ALSO ADMITTED IN CALIFORNIA
††ADMITTED IN CALIFORNIA ONLY

August 26, 2014

Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:   *Laumann, et al. v. National Hockey League, et al.*, 12-cv-1817 (SAS)
              *Garber, et al. v. Office of the Commissioner of Baseball, et al.*, 12-cv-3704 (SAS)

Dear Judge Scheindlin:

      We write in advance of the September 2, 2014, pre-motion hearing to outline why these cases are ideally suited for class treatment. In each action, Plaintiffs seek certification of all individuals who purchased "Out-of-Market" (OOM) television packages from DirecTV or Comcast or OOM Internet packages from the leagues. While Plaintiffs are unaware of any reason that Internet plaintiffs cannot represent television-package purchasers and vice versa, because the disputed issues are identical, separate Internet and television classes could also be certified.

      Even though market allocation is a classic—and usually *per se*—violation of the antitrust laws, defendants have openly engaged in agreements that allocate customers by dividing the market geographically. The basic purpose of the agreements is to prevent competition among the clubs and their Regional Sports Networks. The principal dispute in these cases is whether these restraints are anticompetitive, a question that will be determined entirely through common evidence. *See, e.g.*, *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001); *In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 1167, 1226-27 (N.D. Cal. 2013) (whether antitrust violation can be shown is common issue where defendants plan to argue rule of reason). Every other significant issue will similarly be resolved with evidence common to the class, including whether all defendants participated in the anticompetitive agreements, whether the agreements inflated prices and restricted market choices, and what prices would have prevailed absent the antitrust violations.

      All class members seek the same relief: an injunction ending the restrictions and attendant blackouts, and recovery of the overcharge damages sustained in purchasing the OOM packages. Because each case involves only two products—one on the Internet and one on television—which were sold at uniform prices and were subject to the same market restraints,

Honorable Shira A. Scheindlin
August 26, 2014
Page 2

determination of damages is readily resolvable on a class basis. These cases present far fewer complications than most antitrust class actions. *Compare, e.g., In re Nasdaq Market–Makers Antitrust Litig.*, 169 F.R.D. 493, 517 (S.D.N.Y. 1996) (certifying a class involving 165 NASDAQ securities during over a five-year period); *In re Electronic Books Antitrust Litigation*, No. 11-MD-2293, 2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) (certifying a class of purchasers of over a million different titles in 500 different categories from five separate publishers).

Under Federal Rule of Civil Procedure 23(a), plaintiffs must establish: numerosity, commonality, typicality, and adequacy. *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013). If the plaintiffs meet these prerequisites, the court must determine whether the class can be maintained under any of the three subdivisions of Rule 23(b). *Id.* Here, Plaintiffs seek certification under Rule 23(b)(2) and 23(b)(3).

<u>Numerosity</u>: Rule 23(a)(1) requires a finding that "the class is so numerous that joinder of all members is impracticable." Numerosity cannot be disputed because the proposed classes consist of at least hundreds of thousands of members.

<u>Commonality</u>: The commonality requirement is met if the plaintiffs' claims share "even a single common question" that is "capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 2556 (2011). Every aspect of this case is common to each class member's claim—from the existence of the schemes to defendants' participation within them to the existence and extent of the schemes' impact on output and price. These are all issues that courts have routinely found to be common questions. *See, e.g., In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2014 WL 3500655, at *9 (S.D.N.Y. July 15, 2014).

<u>Typicality</u>: The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2008) (citation omitted). Plaintiffs purchased "out-of-market" packages that are sold on a mass-market basis to consumers on standardized terms and for standardized prices. Each class member challenges the same underlying conduct under identical legal theories. There are no conflicts between the named plaintiffs and class members, and there is nothing atypical about any class representative.

<u>Adequacy</u>: As required by Federal Rule of Civil Procedure 23(a)(4), the class representatives "will fairly and adequately protect the interests of the class," because all of the class members' interests are aligned. Each class member in each case is seeking the same relief: compensation for the overcharge damages they sustained and injunctive relief against the unlawful restraints.

Plaintiffs also satisfy the Rule 23(b)(2) and 23(b)(3) requirements. *See Nasdaq,* 169 F.R.D. at 517 (holding that a class may be certified under both Rule 23(b)(2) and (b)(3) when "the requested … injunctive relief is a significant component of the overall relief which plaintiffs seek.").

Honorable Shira A. Scheindlin
August 26, 2014
Page 3

Rule 23(b)(2): Certification under Rule 23(b)(2) is appropriate because the defendants' conduct applies "generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Defendants' agreements to divide the live-hockey and live-baseball video markets into exclusive territories affect all class members. Plaintiffs seek a common declaration that the challenged practices and agreements are unlawful under the antitrust laws and seek the same injunctive relief, ending the defendants' restrictive practices and breaking up the exclusive television territories.

Rule 23(b)(3): To certify a class under Rule 23(b)(3), a plaintiff must show that: (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"Predominance is a test readily met in certain cases alleging … violations of the antitrust laws." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007). "Rule 23(b)(3) … does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof. What the rule does require is that common questions *predominate* over any questions affecting only individual class members." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013) (quotations and modifications omitted). All material issues in these cases will be resolved through common proof. The dispute over the legality of Defendants' conduct would alone satisfy the predominance requirement, "because the existence and effect of the conspiracy are the prime issues in the case and are common across the class." *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 109 (E.D.N.Y. 2012). But impact and damages are equally capable of classwide resolution. Plaintiffs seek compensation for the amount they were overcharged for the packages relative to a competitive price. The but-for price of the products at issue can be estimated through a single economic model that will confirm impact and allow damage calculations for each class member. *See Cordes*, 502 F.3d at 107-08.

Finally, Rule 23(b)(3) requires "that a class action [be] superior to other available methods for the fair and efficient adjudication of the controversy." Class treatment is necessarily superior to other forms of adjudication here because it is the only realistic way of seeking damages for these harms. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("class actions … permit the plaintiffs to pool claims which would be uneconomical to litigate individually," where small individual damages claims would ensure that "most of the plaintiffs would have no realistic day in court if a class action were not available").

Respectfully submitted,

Edward Diver

EAD/gg
cc: All counsel (via ECF)