UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FERNANDA GARBER, MARC LERNER, DEREK RASMUSSEN, ROBERT SILVER, GARRETT TRAUB, and PETER HERMAN representing themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>OFFICE OF THE COMMISSIONER OF BASEBALL et al.,<br><br>      Defendants. | 12-cv-3704 (SAS)<br><br>ECF Case<br><br><br><br>Electronically Filed |

**<u>MEMORANDUM IN SUPPORT OF MLB DEFENDANTS' MOTION TO CERTIFY FOR IMMEDIATE APPEAL PURSUANT TO 28 U.S.C. § 1292(b)</u>**

**PRELIMINARY STATEMENT**

The MLB Defendants respectfully request that the Court amend its August 4, 2014 Order (the "Order") to state that the necessary conditions for interlocutory review under 28 U.S.C. § 1292(b) have been met and to certify the amended Order for immediate appeal. As detailed below, the Order presents "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), namely:

> Whether the professional baseball exemption to the antitrust laws bars Plaintiffs' claims against Major League Baseball with respect to Major League Baseball's territorial broadcast rules and structure.

Application of the baseball exemption indisputably presents a pure question of law. Indeed, the Order addressed the exemption solely by reference to cases and legal argument. Moreover, application of the exemption plainly is a "controlling question" that, the Second Circuit has held, may go to the Court's subject matter jurisdiction. *See, e.g.*, *Flood v. Kuhn*, 443 F.2d 264, 270 (2d Cir. 1971) (affirming dismissal of case "for want of jurisdiction"), *aff'd* 407 U.S. 258 (1972).

There also clearly is at least a "substantial ground for difference of opinion" concerning the Court's interpretation of the exemption and its ruling that the exemption is inapplicable here. In its Order, the Court stated that "[t]he continued viability and scope of the baseball exemption are far from clear." Order at 24. However, the Supreme Court has confirmed the continuing viability of the exemption every time the question has been presented to it, and Congress has demonstrated "positive inaction" in the face of the Supreme Court's repeated reaffirmations of the exemption and the Supreme Court's holdings that if the exemption is to be limited, "the

remedy, if any is indicated, is for congressional, and not judicial, action." *Flood*, 407 U.S. at 283–85.[1] And both the Supreme Court and every Circuit Court to opine on the scope of the exemption have held that the exemption applies broadly to the business of baseball and is not limited to any particular facet of that business, contrary to the Court's view that the exemption is narrow in scope.[2]

MLB is not aware of any federal court, post-*Toolson*, ruling that the exemption does not apply to claims concerning league territorial rules, other than the Eastern District of Pennsylvania's oft-criticized opinion in *Piazza v. Major League Baseball*, 831 F. Supp. 420 (E.D. Pa. 1993).[3] MLB also maintains that *Toolson* affirmed the application of the exemption to claims concerning league territorial broadcast rules and that the *Henderson* case (cited in the Order) is both inapposite here and wrongly decided. At a minimum, however, the case law reveals at least a "substantial ground for difference of opinion" on this Court's interpretation of

---

[1] *See also Radovich v. Nat'l Football League*, 352 U.S. 445, 452 (1957); *Toolson v. New York Yankees, Inc.*, 346 U.S. 356, 357 (1953).

[2] *Flood*, 407 U.S. at 284–85; *Radovich*, 352 U.S. at 452; *Toolson*, 346 U.S. at 357; *Major League Baseball v. Crist*, 331 F.3d 1177, 1181 n.10 (11th Cir. 2003); *Triple-A Baseball Club Assocs. v. Ne. Baseball, Inc.*, 832 F.2d 214, 216 n.1 (1st Cir. 1987); *Charles O. Finley & Co. v. Kuhn*, 569 F.2d 527, 541 (7th Cir. 1978); *Portland Baseball Club, Inc. v. Kuhn*, 491 F.2d 1101, 1103 (9th Cir. 1974); *Salerno v. Am. League of Prof'l Baseball Clubs*, 429 F.2d 1003, 1005 (2d Cir. 1970); *Portland Baseball Club, Inc. v. Baltimore Baseball Club, Inc.*, 282 F.2d 680, 680 (9th Cir. 1960).

[3] *See, e.g.*, *Crist*, 331 F.3d at 1181 n.10; *City of San José v. Office of the Comm'r of Baseball*, No. 13-cv-02787, 2013 U.S. Dist. LEXIS 147543, **33–34 (N.D. Cal. Oct. 11, 2013); *Major League Baseball v. Butterworth*, 181 F Supp. 2d 1316, 1323–31 (N.D. Fla. 2001); *Morsani v. Major League Baseball*, 79 F. Supp. 2d 1331, 1335 n.12 (M.D. Fla. 1999); *McCoy v. Major League Baseball*, 911 F. Supp. 454, 457 (W.D. Wash. 1995); *New Orleans Pelicans Baseball v. Nat'l Ass'n of Prof'l Baseball Leagues*, No. 93-253, 1994 U.S. Dist. LEXIS 21468, *25 (E.D. La. Mar. 2, 1994); *see also Charles O. Finley*, 569 F.2d at 541 (rejecting, prior to *Piazza*, argument that exemption is limited to reserve clause). Even the court in *Piazza* recognized that, if the exemption applied to anything beyond the reserve clause (which *Piazza* declined to do), it would apply to "matters of league structure," such as territorial relocation restrictions. *Piazza*, 831 F. Supp. at 440, 441.

the exemption. To the extent Plaintiffs contend there is no on-point opinion from the Second Circuit on this exact issue, that fact only further supports Section 1292 certification. *See infra* at 12.

Interlocutory appeal is not only statutorily permissible; it is especially advisable here, to resolve whether the Court has jurisdiction over the subject matter of Plaintiffs' claims. The Second Circuit has recognized that questions of subject matter jurisdiction are particularly well suited for interlocutory appeal, as Congress intended Section 1292(b) to expedite their review. *See Reale Int'l v. Fed. Republic of Nig.*, 647 F.2d 330, 331, 331 n.4 (2d Cir. 1981) ("The House Report to H.R. 2638, the bill adding § 1292(b) to Title 28, mentions orders denying motions to dismiss for lack of subject matter jurisdiction to be proper subjects for interlocutory appeals. The Senate Report concurs. Our cases have so held." (citations omitted)). If the Second Circuit must wait until after a costly and time-consuming trial to determine that this Court does not even have jurisdiction over Plaintiffs' claims, the Court and the parties will have already incurred significant trial costs and resources, as well as the costs related to the appeal of merits issues (which, as the Court recognized at the August 20 conference, would necessarily be appealed alongside the exemption question). Certification may prevent these unnecessary expenditures.

Interlocutory appeal also is warranted in this exceptional case because what is at issue here is an exemption—a complete and total bar on claims to which it applies. The baseball exemption serves—according to the Supreme Court—as an "umbrella over baseball," protecting the industry from "the harassment that would ensue" if antitrust litigation and a trial were

permitted against baseball defendants.[4] For that "umbrella" to be fully effective, MLB is entitled to have an appellate determination that the exemption does not apply before it is required to expend the huge amount of time and resources involved in a trial of this case. This is particularly true here, where the Supreme Court has no fewer than six times upheld the continued viability of the exemption, where every appellate court to consider the exemption in myriad contexts (including the Second Circuit) has upheld it, and where the Second Circuit (in a concurring opinion) expressly concluded that the broadcasting of baseball games is the business of baseball.

Moreover, immediate appeal of the exemption question is warranted to protect the MLB Defendants and persons and entities associated with it from the burdens and costs of litigating not only this case, but any other cases that may be spurred on by the Court's Order.[5] Quick resolution of the issue by the Second Circuit may prevent additional improper litigation from which, the Supreme Court has held, MLB must be protected. *Radovich*, 352 U.S. at 450–51.

Because Section 1292 permits certification and an immediate appeal would serve the interests of judicial economy and protect the MLB Defendants, the courts, and others from the unnecessary burdens and costs of further litigation, the MLB Defendants' motion should be granted.

---

[4] *Radovich*, 352 U.S. at 450–51; *see also Crist*, 331 F.3d at 1187 (state could not issue civil investigation demands inquiring into baseball's territorial structure because exemption rendered such inquiries "baseless").

[5] In just the few short weeks since the Court issued the Order, the Order has been cited by an appellant as authority in another case challenging internal MLB rules and structure. Req. for Consideration of Supplemental Authority, *City of San José v. Office of the Comm'r of Baseball*, No. 14-15139 (9th Cir. Aug. 11, 2014), ECF No. 40 (arguing in support of reversal of trial court decision dismissing claims on the grounds that they were barred by the baseball exemption).

## ARGUMENT

A district court may certify a permissive interlocutory appeal where there is "a controlling question of law as to which there is a substantial ground for difference of opinion" and where an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). An interlocutory appeal is intended precisely for the circumstances presented by this Court's Order: the application of the baseball exemption is a controlling question of law, upon which there is at least a substantial difference of opinion, and reversal will fully resolve the claims against the MLB Defendants.

### I. APPLICATION OF THE BASEBALL EXEMPTION IS A CONTROLLING QUESTION OF LAW

The application of the exemption to this case is a controlling question of law: if the exemption applies, Plaintiffs have no claims against the MLB Defendants and, indeed, the Court has no jurisdiction over such claims.

#### A. Whether the Exemption Applies Is a Question of Law

The Order clearly treated the application of the exemption as a question of law, which the Court resolved on a motion for summary judgment, rather than deferring the issue until factual disputes could be resolved at trial. Order at 29. This treatment is consistent with other courts' application of the exemption, which has repeatedly been the basis for dismissing cases on motions to dismiss and motions for summary judgment.[6]

---

[6] *See, e.g.*, *Charles O. Finley & Co.*, 569 F.2d 527 (affirming order granting summary judgment); *New Orleans Pelicans Baseball*, 1994 U.S. Dist. LEXIS 21468, at *25 (granting summary judgment); *Salerno v. Am. League of Prof'l Baseball Clubs*, 310 F. Supp. 729, 731 (S.D.N.Y. 1969) (granting motion to dismiss), *aff'd* 429 F.2d 1003 (2d Cir. 1970); *Toolson v. New York Yankees, Inc.*, 101 F. Supp. 93 (S.D. Cal. 1951) (granting motion to dismiss), *aff'd* 200 F.2d 198 (9th Cir.) and 346 U.S. 356 (1953).

The baseball exemption not only serves as a defense to antitrust liability as a matter of law, it has been held to divest federal courts of subject matter jurisdiction over claims that would subject "the business of baseball" to "antitrust scrutiny." In *Salerno v. American League*, the Second Circuit affirmed the Southern District of New York's order that the "Court lacks jurisdiction of the subject matter" because "organized baseball does not fall within the scope of the federal anti-trust laws." *Salerno v. Am. League of Prof'l Baseball Clubs*, 310 F. Supp. 729, 731 (S.D.N.Y. 1969), *aff'd* 429 F.2d 1003 (2d Cir. 1970). Likewise, in *Flood*, the Second Circuit affirmed dismissal of the case "for want of jurisdiction," which opinion was affirmed by the Supreme Court. *Flood v. Kuhn*, 443 F.2d 264, 270 (2d Cir. 1971), *aff'd* 407 U.S. 258 (1972); *see also Toolson v. New York Yankees, Inc.*, 101 F. Supp. 93, 95 (S.D. Cal. 1951) (dismissing "for want of jurisdiction of the subject matter"), *aff'd* 200 F.2d 198 (9th Cir.) and 346 U.S. 356 (1953).

Because the exemption restricts the courts' subject matter jurisdiction, its application is a question of law. *See D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.*, No. 11-3473, 2014 U.S. App. LEXIS 11072, *9 n.2 (2d Cir. June 12, 2104) ("Whether a suit falls within federal subject matter jurisdiction is a question of law."). Even courts applying the exemption on a basis other than jurisdiction have recognized that whether the exemption applies is "a purely legal question." *See, e.g.*, *McCoy v. Major League Baseball*, 911 F. Supp. 454, 456 (W.D. Wash. 1995).[7] As a

---

[7] Contrary to what Plaintiffs argued in their pre-motion letter, the mere fact that MLB raised the exemption on summary judgment rather than on a motion to dismiss has no bearing on whether the exemption is a pure issue of law or certifiable. As noted above (*supra* note 6), multiple cases have addressed the exemption on summary judgment. Here, the MLB Defendants did not assert the exemption in their motion to dismiss both because they believed there were ample, independent grounds for dismissal on the pleadings and because it was not until discovery was completed that the MLB Defendants obtained a clearer—albeit still at times opaque—picture of what alleged restraints Plaintiffs were challenging, in order to best explain how those restraints

*(cont'd on next page)*

purely legal question, the application of the exemption qualifies for appeal under Section 1292(b).

### B. Application of the Exemption Controls the Determination of the MLB Defendants' Liability

Not only is the application of the exemption a question of law, it is a question of law that controls resolution of Plaintiffs' case against the MLB Defendants. Questions of subject matter jurisdiction are, by their very nature, controlling. *See Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 994 n.44a (2d Cir. 1975) (subject matter jurisdiction is a controlling question of law under Section 1292(b)); *Klein v. Vision Lab Telecomms., Inc.*, 399 F. Supp. 2d 528, 536 (S.D.N.Y. 2005) (same). Although a question of law need not result in dismissal of a defendant in order to be controlling, a question of law that may "result in the dismissal" of a party is a controlling question. *Castanho v. Jackson Marine, Inc.*, 484 F. Supp. 201, 203 (E.D. Tex. 1980). That is precisely the case here, where the MLB Defendants are exempt from statutory liability. Courts recognize that the decision not to apply an exemption to antitrust or other statutory liability—including when that decision is made as part of a denial of summary judgment—is properly appealable under Section 1292(b). *See, e.g.*, *Kuzinski v. Schering Corp.*, 384 Fed. Appx. 17, 18 (2d Cir. 2010) (appeal accepted by Second Circuit pursuant to § 1292(b) of denial of motion for

---

*(cont'd from previous page)*

were indisputably part of the "business of baseball," as recognized by the cases. Of course, the MLB Defendants did not waive the pertinent questions of law, such as whether this Court has subject matter jurisdiction, and properly raised them on summary judgment. *See, e.g., Fox v. Board of Trustees of the State Univ. of N.Y. at Binghamton*, 42 F.3d 135, 140 (2d Cir. 1994) ("Defects in subject matter jurisdiction cannot be waived and may be raised at any time during the proceedings."); *cf. Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) ("[T]he defense of failure to state a claim is not waivable."). And, again, the Order examined the exemption issue based solely on its interpretation of the case law and Congressional action, not on any disputed issues of fact that, for example, would be tried to a jury.

summary judgment premised on exemption to Fair Labor Standards Act); *Powell v. Nat'l Football League*, 930 F.2d 1293, 1304 (8th Cir. 1989) (reversing, on § 1292(b) appeal, district court's denial of NFL's motion for summary judgment premised on non-statutory labor exemption to antitrust laws).

Plaintiffs do not dispute that if the exemption applies to their claims, the claims against the MLB Defendants must be dismissed, terminating the action as to them.  Depending of course on the specifics of any ruling by the Second Circuit, reversal of the Order with respect to the baseball exemption may result in dismissal of the TV Defendants as well, and thus terminate the entire *Garber* action.  The exemption places "the business of baseball outside the scope of the [Sherman] Act," and no case of which the MLB Defendants are aware limits its application to only certain persons or entities.  *Radovich*, 352 U.S. at 452.  In *Moore v. National Association of Professional Baseball Leagues*, for example, the Northern District of Ohio found that the conduct challenged in that action—the minor leagues' practices governing the recruiting and selection of umpires—was exempt as part of the business of baseball and dismissed the claims as to **all** defendants, including private umpire schools that allegedly conspired with the leagues.  No. C78-351, Slip Op. at 3 (N.D. Ohio July 7, 1976) (attached as Exhibit A).  The exemption prevents antitrust scrutiny of league rules and structure.  *See, e.g., Butterworth*, 181 F Supp. 2d at 1332 ("league structure" is "exempt from antitrust scrutiny").  If MLB's territorial structure and rules governing broadcasting rights are exempt from antitrust scrutiny as part of "the business of baseball," the TV Defendants may also be entitled to dismissal of Plaintiffs' claims against them, which are premised entirely on a supposed "conspiracy" involving the MLB Defendants and the TV Defendants with respect to MLB's broadcasting structure and rules.

Whether application of the exemption to this action would result in dismissal of the MLB Defendants only or termination of the entire case, it is nonetheless a dispositive and controlling question of law, the resolution of which may greatly serve judicial economy and reduce unnecessary expenses for the parties. *See New York v. Gutierrez*, 623 F. Supp. 2d 301, 316 (S.D.N.Y. 2009) ("Because a determination by the Court of Appeals that such a right does not exist would result in dismissal of all claims against [one of several defendants in the action] and would significantly affect the conduct of the action, whether such a right of action exists qualifies as a 'controlling question of law.'"); *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) ("Although the resolution of an issue need not necessarily terminate an action in order to be 'controlling,' it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action.") (citations omitted); *Castanho*, 484 F. Supp. at 203 ("On its face, each ground of the Defendants' motion . . . involves a controlling question of law since a decision of this Court to grant relief will result in the dismissal of two or more of the Defendants from this action.").

## II.   SUBSTANTIAL GROUNDS FOR DIFFERENCES OF OPINION EXIST AS TO THE COURT'S APPLICATION OF THE EXEMPTION

There are at least substantial grounds for differences of opinion with the Court's narrow interpretation of the exemption, especially in the face of Supreme Court and unanimous Circuit Court precedent exempting "the business of baseball, not any particular facet of that business, from the federal antitrust laws," *Charles O. Finley & Co. v. Kuhn*, 569 F.2d 527, 541 (7th Cir. 1978).

As set forth in their briefs on summary judgment, the MLB Defendants submit that the Supreme Court and all Circuit Court cases consistently hold that the exemption applies broadly to "the business of baseball," not just, as the Court held in its Order, to certain aspects of that

9

business. As the Second Circuit succinctly stated in *Salerno*, "professional baseball is not subject to the antitrust laws." 429 F.2d at 1005.[8] The Court here recognized the conflict between these many cases that "preserve[d] a broader exemption for professional baseball" and the lone Eastern District of Pennsylvania decision in *Piazza*—the only post-*Toolson* federal decision (other than the Order) to decline to apply the exemption to league rules, territory, or structure. Order at 26. "[T]here is a substantial ground for difference of opinion which supports a certificate for an interlocutory appeal if a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue." 4 Am. Jur. 2d App. Review § 123 (citing *Longo v. Carlisle De Coppet & Co.*, 537 F.2d 685 (2d Cir. 1976)). Certification is therefore appropriate.

Even if, on the other hand, the Court were correct that each aspect of the business of baseball must be analyzed separately to determine whether a particular facet of the business is exempt, the Court's view that the exemption does not apply to the league's territorial broadcast structure and rules is still subject to at least a substantial difference of opinion warranting certification. Indeed, the Order reflects the Court's view that the scope of the exemption is "far from clear." Order at 24. Similarly, the Court believed that only two courts have previously addressed application of the exemption to game broadcasts, and those two courts came to opposite conclusions. Order at 26–27 (discussing *Hale v. Brooklyn Baseball Club, Inc.*, No. 1294 (N.D. Tex. 1958) and *Henderson Broadcasting Corp. v. Houston Sports Ass'n*, 541 F. Supp. 263, 265 (S.D. Tex. 1982)).

There are at least substantial grounds for disagreement with the Court's interpretation of the case law. As explained in our summary judgment papers, Judge Learned Hand wrote in 1949

---

[8] *See also supra* note 2.

that broadcasting of games is "part of the business [of baseball] itself." *Gardella v. Chandler*, 172 F.2d 402, 407-08 (2d Cir. 1949) (Hand, J., concurring). At the time, he believed that the fact that broadcasting is part of the "business of baseball" was a ground to distinguish *Federal Baseball* because the broadcasting element of the business rendered the business interstate in nature. In *Toolson*, which involved a challenge to league broadcasting rules (among other things), the Supreme Court held that the exemption established in *Federal Baseball* was not limited to intrastate commerce and, on that basis, reaffirmed the broad exemption for "the business of baseball." 346 U.S. at 357 (reaffirming *Federal Baseball* "so far as that decision determines that Congress had no intention of including the business of baseball within the scope of the federal antitrust laws.").[9] Adding to the substantial grounds for disagreement, the Court chose not to apply the ample authority recognizing that MLB's territorial structure—which, among other things, fosters fan loyalty for the "home team" by governing where games are played and broadcast—is "an integral part of the business of baseball." *Prof'l Baseball Schools and Clubs, Inc. v. Kuhn*, 693 F.2d 1085, 1086 (11th Cir. 1982); *see also, e.g.*, *New Orleans Pelicans Baseball*, 1994 U.S. Dist. LEXIS 21468, at *27 ("The defendants are in the business of baseball. Their business is a legally sanctioned monopoly. One of the central features of that monopoly is the power to decide who can play where."). In the most recent such case, the Northern District of California held that MLB's territorial rules are exempt, in part because *Toolson* affirmed application of the exemption to the league's territorial broadcast rules. *See*

---

[9] The MLB Defendants maintain, for the reasons set out in their briefs, that the Supreme Court, in affirming dismissal of **all of** the claims at issue in *Toolson* necessarily concluded that **all of** the conduct alleged to be the source of harm in that lawsuit—including the league's territorial broadcast rules—was subject to the exemption. Again, while the Court concluded otherwise in the Order, there certainly are substantial grounds for disagreement with that conclusion.

*City of San José v. Office of the Comm'r of Baseball*, 2013 U.S. Dist. LEXIS 147543, *19 n.10, *24 n.12, *33 (N.D. Cal. 2013).

Even if the Court were correct that only *Hale* and *Henderson* are directly relevant authority,[10] the divide in the case law and the absence (in the Court's view) of Second Circuit authority on point is sufficient reason for the Court to certify an interlocutory appeal now. *See Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*, 945 F. Supp. 84, 87 (S.D.N.Y. 1996) ("The requirement that 'there be substantial ground for difference of opinion' is satisfied by the circumstance that the Second Circuit has not spoken on the question presented."); *see also Klinghoffer*, 921 F.2d at 25 (Second Circuit finding substantial grounds for difference of opinion where the issues were "difficult and of first impression"); *Skylon Corp. v. Guilford Mills*, 901 F. Supp. 711, 718 (S.D.N.Y. 1995) ("Substantial ground for difference of opinion may arise where an issue is difficult and of first impression.") (citing *Klinghoffer*). Indeed, the last time a federal court chose to apply a narrow interpretation of the exemption, it recognized that the contrary authority indicated there was a substantial ground for difference of opinion and that, if the case did not have non-antitrust claims, judicial economy would weigh "heavily in favor of certification." *Piazza v. Major League Baseball*, 836 F. Supp. 269, 271–72 (E.D. Pa. 1993).

---

[10] For the reasons set out in their Motion for Summary Judgment briefs, the MLB Defendants contend that the Court erred both in assessing the exemption in a piecemeal fashion and in applying *Henderson*. Not only did *Henderson* adopt an improperly narrow interpretation of the exemption, it also dealt with an issue completely unrelated to league rules or structure—whether a club, acting in its capacity as a broadcast "network," violated antitrust laws by choosing to partner with one radio station over another. *Henderson*, 541 F. Supp. at 264, 271. Plaintiffs here do not challenge a one-off broadcasting decision by a lone club, but rather a rule governing league territorial structure. Even if *Henderson* applied, that decision separately recognized league structure as being subject to the exemption. *Id.* at 269.

### III. IMMEDIATE APPEAL WOULD MATERIALLY ADVANCE TERMINATION OF THE LITIGATION AGAINST THE MLB DEFENDANTS

As set out in Section I above, reversal of the Court's Order on the exemption would result in dismissal of the MLB Defendants and possibly termination of the entire action. Where appellate review of questions could "obviate the need for protracted and expensive litigation," certification is warranted. *Transp. Workers Union v. N.Y. City Transit Auth.*, 358 F. Supp. 2d 347, 353 (S.D.N.Y. 2005); *see also Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 7 F. Supp. 2d 294, 297 (S.D.N.Y. 1998) ("Because a reversal on this issue would likely result in dismissal of the case, the most efficient course is to seek review before the parties and the district court engage in protracted litigation.").

Such is the case here. If the exemption applies, reversal of the Order "will materially advance the ultimate determination of the controversy and 'would save the cost and delay of protracted and expensive litigation.'" *Bersch*, 519 F.2d at 994 n.44a (quoting *Bobolakis v. Compania Paenema Martima San Gerassimo*, 168 F. Supp. 236, 240 (S.D.N.Y. 1958)) (ellipses omitted) (noting lack of subject matter jurisdiction as basis for 1292(b) certification). Although the MLB Defendants will continue to incur some costs in proceeding with pre-trial phases of this action during the pendency of the appeal,[11] reversal by the Second Circuit may obviate the need for a costly and intensely time-consuming trial and, depending on the speed of the appeal, the incurrence of certain pre-trial expenses such as expert discovery.[12] Additionally, a speedy appeal

---

[11] The MLB Defendants do not intend to seek a stay of the pre-trial proceedings pending appeal, although they would not object to a stay if the Court believed it would be a more efficient way to proceed. The fact that the MLB Defendants are willing to proceed with pre-trial proceedings certainly should not **prejudice** their request for § 1292(b) certification, as Plaintiffs have suggested.

[12] Plaintiffs posited in their pre-motion response letter that, given the current posture of this case, interlocutory appeal would not save the MLB Defendants from the costs of protracted litigation

*(cont'd on next page)*

on the narrow issue of the exemption may prevent the unnecessary costs of a more extensive post-judgment appeal, in which the exemption issue would go before the Second Circuit only as part of a comprehensive (and far costlier) appeal of the judgment, no matter which side were to win at trial. And, as explained above, if the Second Circuit were to agree with the MLB Defendants that the Plaintiffs' claims fall squarely within the exemption that prohibits "antitrust scrutiny" of "the business of baseball," that ruling might also require dismissal of Plaintiffs' claims against the TV Defendants to the extent those claims would necessarily entail "antitrust scrutiny" of the exempt business.

## CONCLUSION

For all these reasons, the MLB Defendants respectfully request that the Court amend its August 4, 2014 Order under Federal Rule of Appellate Procedure 5(a)(3), to certify the Order for immediate appeal to the U.S. Court of Appeals for the Second Circuit pursuant to 28 U.S.C. § 1292(b).

Dated: August 27, 2014

Respectfully submitted,

/s/ *Bradley I. Ruskin*
Bradley I. Ruskin

---

*(cont'd from previous page)*

and, therefore, certification is improper. This argument significantly downplays the tremendous economic cost of, and expenditure of resources in connection with, trying a complex antitrust case. While it is true that, if the MLB Defendants had successfully raised the exemption at the pleading stage, they could have saved even greater litigation costs, this does not suggest that the MLB Defendants should be forced to incur the substantial costs of trial if Plaintiffs have no claim as a matter of law. Even if the only costs saved were the parties' and the Court's trial costs (or at least some of the latter if the case is tried with fewer parties), certification would nonetheless be appropriate. *See Pinter v. City of New York*, 976 F. Supp. 2d 539, 575 (S.D.N.Y. 2013) ("[P]roceeding with trial before the Second Circuit rules on this issue puts the Court at risk of expending scarce judicial resources by trying what may be unviable claims.").

        Jennifer R. Scullion
        Colin Kass
        Jordan B. Leader
        Stephen Ahron
        Joelle Milov
        **PROSKAUER ROSE LLP**
        Eleven Times Square
        New York, New York  10036-8299
        Telephone:  (212) 969-3000
        Facsimile:  (212) 969-2900
        bruskin@proskauer.com
        jscullion@proskauer.com
        ckass@proskauer.com
        jleader@proskauer.com
        sahron@proskauer.com
        jmilov@proskauer.com

        Thomas J. Ostertag
        Senior Vice President and General Counsel
        Office of the Commissioner of Baseball
        245 Park Avenue
        New York, New York  10167
        Telephone:  (212) 931-7855
        Facsimile:  (212) 949-5653
        tom.ostertag@mlb.com

        *Attorneys for Defendants Office of the Commissioner of Baseball, Major League Baseball Enterprises, Inc., MLB Advanced Media, L.P., MLB Advanced Media, Inc., Athletics Investment Group, LLC, The Baseball Club of Seattle, LLLP, Chicago Cubs Baseball Club, LLC, Chicago White Sox, Ltd., Colorado Rockies Baseball Club, Ltd., The Phillies, Pittsburgh Baseball, Inc., and San Francisco Baseball Associates LLC*