# DAVIS POLK & WARDWELL LLP

450 LEXINGTON AVENUE
NEW YORK, NY 10017
212 450 4000
FAX 212 701 5800

MENLO PARK
WASHINGTON, D.C.
SÃO PAULO
LONDON
PARIS
MADRID
TOKYO
BEIJING
HONG KONG

ARTHUR J. BURKE
212 450 4352

August 29, 2014

Re: *Laumann et al. v. National Hockey League et al.*, 12-cv-1817 (SAS);
*Garber et al. v. Office of the Commissioner of Baseball et al.*, 12-cv-3704 (SAS)

The Honorable Shira A. Scheindlin
United States District Judge
Southern District of New York
500 Pearl Street, Courtroom 15C
New York, New York 10007

Dear Judge Scheindlin:

    We represent the Comcast Defendants in the above actions and write on behalf of all Defendants in both actions in response to Plaintiffs' letter dated August 26, 2014 in support of their proposed motion for class certification.

    In their letter, Plaintiffs conspicuously avoid any meaningful discussion of controlling law, this Court's prior rulings, or critical facts. When Plaintiffs identify the evidence and theories upon which they intend to rely, Defendants will be better situated to provide an exhaustive list of reasons that certification is not appropriate in these actions. Given Plaintiffs' proffer to date, however, we are limited to providing illustrative examples of the obstacles they will face in attempting to satisfy the "stringent requirements for certification that in practice exclude most claims." *Amer. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013).

    Plaintiffs fail to acknowledge that they bear the "burden of proving compliance with all of" the prerequisites of Rule 23 "by at least a preponderance of the evidence." *Levitt v. J.P. Morgan Sec., Inc.*, 710 F.3d 454, 465 (2d Cir. 2013). These prerequisites include the strict standards of Rule 23(a) and the "even more demanding" predominance criterion of Rule 23(b)(3). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432-33 (2013). Plaintiffs' motion will require this Court to undertake a "rigorous analysis" of whether Plaintiffs have satisfied these requirements. *Id.* In doing so, this Court must make a "definitive assessment" and "resolv[e] . . . factual disputes relevant to each Rule 23 requirement." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). The Court has a "duty to take a 'close look' at whether common questions predominate over individual ones." *Behrend*, 133 S. Ct. at 1432. But Plaintiffs simply ignore *Behrend* and other controlling precedents, relying upon earlier case law that "was far more accommodating to class certification under Rule 23(b)(3)." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 255 (D.C. Cir. 2013).

Hon. Shira A. Scheindlin                              2                              August 29, 2014

Under governing precedent, Plaintiffs cannot satisfy the "stringent requirements" of Rule 23. Contrary to Plaintiffs' argument that this case is *less* complicated than most antitrust cases, the multi-tiered sports media distribution business is highly complex. Plaintiffs postulate a "but for world" ("BFW") in which 30 baseball teams and 30 hockey teams would all somehow individually obtain distribution of all their games throughout the country in competition with each other and with the League packages in their current forms. Plaintiffs have made no effort to demonstrate the plausibility of that BFW, however, and it is inconsistent with record evidence.

In any plausible BFW, there would be winners and losers among purported class members. Some fans follow a single team while others follow multiple teams or games of interest to them (*e.g.*, no-hitters). Determining whether a particular class member would be better or worse off in the BFW necessarily would entail an intensive, individualized inquiry into a host of subjects, such as his or her viewing patterns and preferences for a specific team or teams, and the impact on each team of eliminating the Leagues' rules. A fan may be harmed if his or her preferred team is disadvantaged in the BFW, depending on factors such as whether it would be able to obtain production and distribution of its games across the entire country and what it would charge. These issues would necessarily impact whether each class member would have the same viewing options in any plausible BFW and whether those options would be available at the same or different prices. The predominance of these intensely individualized liability and damages issues over common issues precludes class certification. And the presence of winners and losers among class members in the BFW also defeats the commonality required by Rule 23(a)(2). *See, e.g., Pagan v. Abbott Labs, Inc.*, 287 F.R.D. 139, 148 (E.D.N.Y. 2012) ("'Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury.'") (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).

Plaintiffs' letter is silent as to expert testimony, but if they intend to show predominance through Dr. Roger G. Noll's previously disclosed, "one size fits all" model, it is not up to the task. Among its many shortcomings, it is an overly simplistic and counter-factual depiction of a complex BFW. It fails, for example, to account for the likelihood that, absent the Leagues' rules, the relevant market actors (including viewers, the Leagues, the teams, RSNs, MVPDs, and national broadcast networks) would make different decisions as they pursue their economic incentives under radically changed circumstances. Instead, Dr. Noll implausibly "holds constant" the rest of the sports ecosystem in the BFW, and disregards real-world evidence expressly contradicting his model's assumptions. In short, Dr. Noll's model is unreliable and otherwise inadmissible,[1] and cannot satisfy Plaintiffs' burden of proving predominance. *See, e.g., Behrend*, 133 S. Ct. at 1434, 1435 & n.6; *In re Rail Freight*, 725 F.3d at 255 ("No damages model, no predominance, no class certification.").[2]

In addition, despite this Court's prior rulings, Plaintiffs completely fail *even to mention* the extensive individual proceedings that would be necessitated by the arbitration agreements between members of the purported classes and various Defendants, which provide an independent basis to deny class certification. Each Defendant that dealt directly with subscribers had an arbitration clause in its subscriber agreements during at least part of the alleged class

---

[1] To the extent Plaintiffs rely upon Dr. Noll at class certification, Defendants expect to move to exclude his testimony and model as inadmissible under FRE 702. *See Daubert v. Merrell Dow*, 509 U.S. 579 (1993).

[2] In addition, Plaintiffs' baseline assumption that all pricing is uniform is incorrect.

period. And some subscribers dealt with multiple Defendants during that period. Whether a particular subscriber's claim must be arbitrated rather than adjudicated by this Court is a threshold issue that turns on "whether there exists a valid agreement to arbitrate at all under the contract in question." (11/25/13 Order at 8.) The resulting individualized issues regarding contract formation and estoppel, among other issues, for hundreds of thousands of class members in fifty different states obviously would dwarf any common issues.[3]

Nor are the named Plaintiffs otherwise typical of the absent class members. Among other things, most of the named Plaintiffs have testified that they are fans of only a single team, and have no interest in purchasing live games not involving their favorite teams. As a result, the named Plaintiffs have no interest in the continuation of the out-of-market ("OOM") packages, which likely would not continue to exist, at least not in their current comprehensive form, in the BFW. Significant percentages of the absent class members purchased the OOM packages in order to follow more than one team and would be harmed by the disappearance, or fundamental alteration, of the OOM packages if named Plaintiffs prevail. This fundamental conflict of interest disables named Plaintiffs from adequately representing the proposed class(es). *See, e.g., Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) ("A fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class."). This failure in particular is one of many that would prevent certification under Rule 23(b)(2). Certification under Rule 23(b)(2) also would be improper because, among other reasons, former subscribers lack standing to seek injunctive or declaratory relief, and because Plaintiffs' monetary damages claims are individualized and not "merely 'incidental'" to the injunctive relief demanded. *See, e.g., Wal-Mart Stores, Inc.*, 131 S. Ct. at 2560 (where absent class members continually lose standing to seek injunctive or declaratory relief, "claims should not be certified under Rule 23(b)(2) at all")[4]; *Nationwide Life Ins. Co. v. Haddock*, 460 Fed. Appx. 26, 29 (2d Cir. 2012) ("In *Wal–Mart*, . . . the Supreme Court instructed that unless merely 'incidental' to the requested declaratory or injunctive relief, claims for individualized monetary damages preclude class certification under Rule 23(b)(2).").[5]

                                                            Sincerely,

                                                            /s/ Arthur J. Burke

                                                            Arthur J. Burke

cc:   All counsel of record via ECF

---

[3] The arbitration agreements are an obstacle to certification for a separate reason: a named plaintiff who is not subject to a particular arbitration agreement is not an adequate or typical representative of an absent class member who is subject to that agreement. *See, e.g., King v. Capital One Bank (USA), N.A.*, 2012 WL 5570624, at *14 (W.D. Va. Nov. 15, 2012) ("If Plaintiff did not sign the [agreement] containing the arbitration clause, surely she cannot represent anyone who did sign it."). Any attempt to create additional classes to address this issue would create an intractable ascertainability problem.

[4] To the extent that, as this Court's prior ruling suggests, standing turns on whether each former subscriber among the absent class members intends to purchase an OOM package in the future, it would be impossible to ascertain the members of the class by reference to objective criteria.

[5] In order to narrow the issues before the Court, Defendants are prepared not to contest the adequacy of the proffered class counsel. Defendants do not expect to challenge numerosity either.