## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FERNANDA GARBER, MARC LERNER, DEREK RASMUSSEN, ROBERT SILVER, GARRETT TRAUB, and VINCENT BIRBIGLIA, representing themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>     v.<br><br>OFFICE OF THE COMMISSIONER OF BASEBALL, et al.,<br><br>                 Defendants | 12-cv-3704(SAS)<br><br><br><br><br>ECF Case |

## PLAINTIFFS' OPPOSITION TO MLB DEFENDANTS' MOTION TO CERTIFY FOR IMMEDIATE APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................... i

TABLE OF AUTHORITIES .......................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT................................................................................................................................... 2

  I. There is No Controlling Question of Law as to which there is Substantial Ground
     for Difference of Opinion................................................................................................... 2

     A.  There is No "Substantial Ground for a Difference of Opinion" with Respect to the
        Court's Interpretation of the Exemption ........................................................................ 2

     B.  The Antitrust Exemption Is Not Jurisdictional ............................................................. 8

     C.  Disagreement with the Court's Application of an Antitrust Exemption does not
        present the type of Exceptional Circumstances that Justify Certification .................... 10

  II.  Certification Will Not Materially Advance the Ultimate Termination of the
      Litigation ......................................................................................................................... 11

  CONCLUSION ......................................................................................................................... 16

## TABLE OF AUTHORITIES

### CASES

*American Telephone & Telegraph Co. v. North American Industries of New York, Inc.*,
 783 F. Supp. 810 (S.D.N.Y. 1992) ................................................................... 10, 11

*APCC Services, Inc. v. AT & T Corp.*, 297 F. Supp. 2d 101 (D.D.C. 2003) ................................. 7

*Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) ...............................................................8

*Butterworth v. Nat'l League of Prof'l Baseball Clubs*, 644 So. 2d 1021 (Fla. 1994) .................... 3

*Camacho v. Puerto Rico Ports Authority*, 369 F.3d 570, 573 (1st Cir. 2004).............................. 2

*Charles O. Finley v. Kuhn*, 569 F.2d 527 (7th Cir. 1978) ............................................... 3

*City of San José v. Office of the Comm'r of Baseball*, No. 13–02787,
 2013 WL 5609346 (N.D. Cal. Oct. 11, 2013)............................................................. 6

*Continental Grain Co. v. The FBL–585*, 364 U.S. 19 (1960)............................................. 14

*Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978)..................................................... 1

*Daniel v. American Bd. of Emergency Med.*, 988 F. Supp. 127 (W.D.N.Y. 1997) ......................... 9

*Ferens v. John Deere Co.*, 494 U.S. 516 (1990)....................................................... 14

*Flood v. Kuhn*, 312 F. Supp. 404 (S.D.N.Y 1970) ...................................................... 4

*Flood v. Kuhn*, 316 F. Supp. 271 (S.D.N.Y. 1970) .................................................... 9

*Flood v. Kuhn*, 407 U.S. 258 (1972).................................................................. 4

*Flood v. Kuhn*, 443 F.2d 264 (2d Cir. 1971).......................................................... 8, 9

*Gardella v. Chandler*, 172 F.2d 402 (2d Cir. 1949) ................................................... 5, 6

*Goldfarb v. Virginia State Bar*, 421 U.S. 773 (1975).................................................. 4

*Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205 (1979) ................................. 4

*Hale v. Brooklyn Baseball Club, Inc.*, No. 1294 (N.D. Tex. Sept. 19, 1958)............................ 5

*Henderson Broad. Corp. v. Houston Sports Assoc.*, 541 F. Supp. 263 (S.D. Tex. 1982) .................. 4

*In re Enron Corp.*, 01-16034-SAS, 2007 WL 2780394 (S.D.N.Y. Sept. 24, 2007)......................... 2

*In re Flor*, 79 F.3d 281 (2d Cir.1996)............................................................... 10

*In re MTBE Prods. Liab. Litig.*, 399 F. Supp. 2d 320 (S.D.N.Y 2005)................................... 2

*In re Oxford Health Plans, Inc.*, 182 F.R.D. 51 (S.D.N.Y. 1998) .................................... 13

*Interconnect Planning Corp. v. Am. Tel. & Tel. Co.*, 465 F. Supp. 811 (S.D.N.Y. 1978) ........... 10

*Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 233 F. Supp. 2d 16 (D.D.C. 2002)........ 8

*King Cnty. v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 317 (S.D.N.Y. 2012)............... 14

*Litton Systems, Inc. v. Am. Tel. & Tel. Co.*, 487 F. Supp. 942 (S.D.N.Y. 1980) ................... 10

*Major League Baseball v. Butterworth*, 181 F. Supp. 2d 1316 (N.D. Fla. 2001)...................... 6

*Major League Baseball v. Crist*, 331 F.3d 1177 (11th Cir. 2003)................................ 3, 4, 6, 7

*Marnell v. United Parcel Service of Am., Inc.*, 260 F. Supp. 391 (N.D. Cal. 1966)................ 10

*Moll v. U.S. Life Title Ins. Co.*, 85-6866, 1987 WL 10026 (S.D.N.Y. Apr. 21, 1987)................ 2

*Moore v. Nat'l Assoc. of Prof'l Baseball Leagues*, No. 78-351 (N.D. Oh. July 7, 1978) ............ 4

*Morsani v. Major League Baseball*, 79 F. Supp. 2d 1331 (M.D. Fla. 1999)........................... 6

*Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139 (E.D.N.Y. 1999).. 1

*New Orleans Pelicans Baseball v. Nat'l Ass'n of Prof'l Baseball Leagues*, No. 93-253, 1994 WL

631144 (E.D. La. March 1, 1994) ................................................................................ 6

**CASES** (continued)

*Piazza v. Major League Baseball*, 831 F. Supp. 420 (E.D. Pa. 1993) ........................... 3

*Piazza v. Major League Baseball*, 836 F. Supp. 269 (E.D. Pa. 1993) ......................... 15

*Radovich v. Nat'l Football League*, 352 U.S. 445 (1957) ............................................ 4

*Rieve v. Coventry Health Care, Inc.*, 870 F. Supp. 2d 856 (C.D. Cal. 2012) ............... 10

*Ruggeri v. Boehringer Ingelheim Pharms., Inc.*, No. 3:06-cv-1985, 2009 WL 1505580 (D. Conn. May 26, 2009) ...................................................................................... 10

*Salerno v. Am. League of Prof'l Baseball Clubs*, 310 F. Supp. 729 (S.D.N.Y. 1969) ................. 9

*Toolson v. New York Yankees*, 101 F. Supp. 93 (S.D. Cal. 1951) ................................. 8

*Trans World Airlines, Inc. v. Hughes*, 214 F. Supp.106 (S.D.N.Y. 1963) .................... 10

*United States v. National Football League*, 116 F. Supp. 319 (E.D. Pa. 1953) ............ 6

*United States v. Philadelphia Nat. Bank*, 374 U.S. 321 (1963) .................................... 4

*United States v. Philip Morris USA Inc.*, No. 99-2496, 2003 WL 26051239 (D.D.C. Sept. 2, 2003) ........................................................................................................ 1

*Westwood Pharm., Inc. v. National Fuel Gas Distrib. Corp.*, 964 F.2d 85 (2d Cir. 1992) ............ 2

**STATUTES**

15 U.S.C. § 1012(b) ....................................................................................................... 4

15 U.S.C. § 1291 *et seq* ................................................................................................. 3

28 U.S.C. § 1292(b) ....................................................................................................... 1

**OTHER AUTHORITIES**

2 J. Moore *et al.*, *Moore's Federal Practice* § 12.30[1] (3d ed. 2005) ……………...8

13D Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, & Richard D. Freer, *Federal Practice & Procedure* § 3564 (3d ed. 2008) ........................................................... 8

16 Charles A. Wright & Arthur Miller, Federal Practice and Procedure § 3930 (2d ed. 1996) ................................................................................................................... 9, 13

Brief for Respondants, *Flood v. Kuhn*, 407 U.S. 258 (1972) (No. 71-32), 1972 WL 125826 ....... 5

Brief for Respondants, *Toolson v. N.Y. Yankees*, 346 U.S. 356 (No. 53-18), 1953 WL 78318 . 5, 7

Plaintiffs hereby oppose the motion made by the Office of the Commissioner of Baseball, *et al.* ("MLB" or "MLB Defendants")[1] seeking to certify this Court's Summary Judgment Order for immediate appeal under 28 U.S.C. § 1292(b). For the following reasons, the Court should deny the motion.

## PRELIMINARY STATEMENT

The MLB Defendants' motion undermines the judicial policies—efficient administration of justice and the avoidance of piecemeal litigation—that require a narrow application of § 1292(b). To succeed, MLB must convince the Court that "*exceptional circumstances* justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474-475 (1978) (emphasis added); *see also Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139, 146 (E.D.N.Y. 1999) ("A cornerstone of the federal judicial system, defining the institutional relationship of the district and appellate courts, is the final judgment rule. This principal has been a part of the federal court system since its inception, having been adopted by the Judiciary Act of 1789.").

To certify an opinion under § 1292(b), the Court must itself "be of the opinion that [its] order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The Second Circuit has urged courts "to exercise great care in making a § 1292(b) certification." *Florio v. City of New York, N.Y.*, No. 06-6473-SAS, 2008 WL 3068247 at *1 (S.D.N.Y. Aug. 5, 2008) (citing *Westwood Pharm., Inc. v.*

---

[1] On September 8, 2014, the Television Defendants requested that the Court allow them to join the motion. This request is untimely as it comes long after the pre-motion conference and the filing of the moving papers. More importantly, the Television Defendants are seeking to appeal an issue they did not raise as part of their summary judgment motion. "Section 1292(b) is not intended to be a vehicle by which parties can revive waived arguments." *United States v. Philip Morris USA Inc.*, No. 99-2496, 2003 WL 26051239 (D.D.C. Sept. 2, 2003) (declining to certify order over argument that defendants "declined to make in their original briefs"). The Television Defendants cannot now seek the protection of a defense that they have never asserted.

*National Fuel Gas Distrib. Corp.,* 964 F.2d 85, 89 (2d Cir. 1992)). The decision whether to certify lies within the district court's discretion and may be denied even if the Court finds that the moving party has met the section 1292(b) criteria. *In re MTBE Prods. Liab. Litig.*, No. 04-5424-SAS, 2008 WL 2511038, *1 (S.D.N.Y. June 18, 2008) ("*MTBE*").[2] "[I]nterlocutory appeal is 'not intended as a vehicle to provide early review of difficult rulings in hard cases.'" *In re Enron Corp.*, 01-16034-SAS, 2007 WL 2780394, at *2 (S.D.N.Y. Sept. 24, 2007) (citations omitted).

The Court ought not to delay what has otherwise been an expeditious march to trial on the basis of MLB's hope that the Second Circuit might disagree with the Court's opinion. Nor can MLB seriously insist on the importance of an early decision on an issue that they waited two years to raise. Under the circumstances, interlocutory appeal could not materially advance the resolution of the litigation. To the contrary, all that it can do is disrupt the proceedings in this court and create just the kind of inefficient, piecemeal appeals that the law disdains.

## ARGUMENT

### I. There is No Controlling Question of Law as to which there is Substantial Ground for Difference of Opinion

#### A. There is No "Substantial Ground for a Difference of Opinion" with Respect to the Court's Interpretation of the Exemption

The MLB Defendants have failed to put forth any substantial difference of opinion with respect to the core question on which they seek certification—application of baseball's antitrust exemption to their broadcasting contracts. This element is met when "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Florio*, 2008 WL 3068247 at *1. To satisfy this element, the Court must agree that there is "'substantial doubt' that [its] order was correct." *In re MTBE Prods. Liab. Litig.*, 399 F. Supp. 2d 320, 323 (S.D.N.Y 2005) (quoting *Moll v. U.S. Life Title Ins. Co.*, 85-6866, 1987 WL 10026, at *3 (S.D.N.Y. Apr. 21, 1987)).

---

[2] Due to the rigors of this standard, such appeals are appropriately "hen's-teeth rare." *Camacho v. Puerto Rico Ports Authority*, 369 F.3d 570, 573 (1st Cir. 2004).

As this Court has recognized, "[t]he continued viability and scope of the baseball exemption are far from clear." *Laumann v. Nat'l Hockey League*, Nos. 12-1817, 12-3704, 2014 WL 3900566, at *7 (S.D.N.Y. Aug. 8, 2014). But that uncertainty does not extend to application of the exemption to the business of broadcasting. The issue that courts have differed on is whether the exemption should be applied very narrowly—to cover only baseball's reserve system—or whether it should be understood to apply more broadly to some interpretation of "the business of baseball." *Id.* Compare *Piazza v. Major League Baseball*, 831 F. Supp. 420, 438 (E.D. Pa. 1993), *and Butterworth v. Nat'l League of Prof'l Baseball Clubs*, 644 So. 2d 1021 (Fla. 1994), *with Major League Baseball v. Crist*, 331 F.3d 1177 (11th Cir. 2003), *and Charles O. Finley v. Kuhn*, 569 F.2d 527, 541 (7th Cir. 1978). None of these cases provides any support for the next step in the MLB Defendants' argument—its unsupported assumption that "the business of baseball" in the sense relevant here is so expansive as to include the business of broadcasting. Yet it is precisely this assumption that the Court's summary judgment order rejects.[3] Whatever the scope of the exemption (if any), in other words, it does not encompass the broadcasting restrictions at issue here.

The history of the exemption provides wide-ranging support for this holding. "[B]ecause television broadcasting is an interstate industry by nature, it cannot fall within the exemption defined by *Federal Baseball*," and there is no basis for reading the Supreme Court's subsequent applications of *stare decisis* to expand the exemption *sub silentio*. *Laumann*, 2014 WL 3900566 at *7. Baseball itself consistently argued that broadcasting was not within the scope of the exemption, and Congress clearly understood that broadcasting was not exempt in passing the Sports Broadcasting Act of 1961 ("SBA"), 15 U.S.C. § 1291 *et seq. Id.* at *7-8. Moreover, as the Eleventh Circuit acknowledged in a case MLB relies on, "the antitrust exemption has not been

---

[3] *See Laumann*, 2014 WL 3900566 at *8 ("I therefore decline to apply the exemption to a subject that is not central to the business of baseball, and that Congress did not intend to exempt—namely baseball's contracts for television broadcasting rights.")

held to immunize the dealings between professional baseball clubs and third parties." *Crist*, 331

F.3d at 1183 (relying on fact that conduct at issue "does not involve third parties" in applying

exemption to decisions regarding league contraction).[4] Finally, any antitrust exemption is to be

construed narrowly even when it is not—as here—an illogical "aberration." *Flood v. Kuhn*, 407

U.S. 258, 282 (1972).[5] There is simply no justification for construing the exemption to apply

broadly as Defendants suggest. To do so would require *expanding* an exemption that is widely

recognized, even by the Supreme Court itself, as a mistake. *See id.* at 279 ("[W]ere we

considering the question of baseball for the first time upon a clean slate we would have no

doubts" that it was subject to the antitrust laws.) (quoting *Radovich v. Nat'l Football League*, 352

U.S. 445, 452 (1957)).

      As this Court recognized, the *only* judicial support Defendants presented for its

interpretation of the exemption is found in "one judge's comments from the bench in granting a

motion to dismiss several years before the SBA was enacted." *Laumann*, 2014 WL 3900566 at

---

[4] *Accord Henderson Broad. Corp. v. Houston Sports Assoc.*, 541 F. Supp. 263, 271 n.9 (S.D.
Tex. 1982) ("The Court is also persuaded by plaintiff's argument that an exempt baseball team,
like a labor union or agricultural cooperative which is exempted from the Sherman Act by
statute, loses its exemption when it combines with a non-exempt radio station."); *Flood v. Kuhn*,
312 F. Supp. 404, 407 n.3 (S.D.N.Y 1970) (noting that exemption had no application to certain
non-reserve-clause issues in that case "where outside business interests are the subject of the
complaint"); *see also Laumann*, 2014 WL 3900566 at *8 n.100 (collecting cases).
    Defendants once again can rely only on an unpublished district court opinion to find a case in
which the exemption was applied to dealings with third parties. *Moore v. Nat'l Assoc. of Prof'l
Baseball Leagues*, No. 78-351 (N.D. Oh. July 7, 1978). The court in that case applied the
exemption to a third party without discussion or any indication of any argument to the contrary.

[5] Thus, for example, there is a statutory exemption to the antitrust laws for "the business of
insurance." 15 U.S.C. § 1012(b). The Supreme Court has long held that this is to be construed to
apply only to insurance activities, narrowly understood. "[T]he statutory language in question
here does not exempt the business of insurance companies from the scope of the antitrust laws.
The exemption is for the 'business of insurance,' not the 'business of insurers.'" *Group Life &
Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 210-11 (1979). This rule applies with even
greater force for non-statutory exemptions. "(O)ur cases have repeatedly established that there is
a heavy presumption against implicit (antitrust) exemptions." *Goldfarb v. Virginia State Bar*, 421
U.S. 773, 787 (1975); *United States v. Philadelphia Nat. Bank*, 374 U.S. 321, 350-51 (1963).

*7 (citing *Hale v. Brooklyn Baseball Club, Inc.*, No. 1294 (N.D. Tex. Sept. 19, 1958)). The present motion identifies no others.

Defendants seek to create a basis for difference of opinion by pointing to Judge Hand's statement in a concurring opinion about his view of the significance of broadcasting to baseball's business in *Gardella v. Chandler*, 172 F.2d 402 (2d Cir. 1949). Yet Judge Hand was addressing a different question entirely—whether the inherently interstate nature of broadcasting subjected baseball generally to the Sherman Act—a position the League strongly opposed.[6] *Gardella*, 172 F.2d at 407. Judge Hand's statement that broadcasting was "part of the business itself" was not a description of the breadth of the antitrust exemption, but a statement of a reason why there should be no exemption at all. In any event, the position Judge Hand adopted was rejected by the Supreme Court in *Toolson*. The principal dispute in *Toolson*—as in *Gardella*—was whether broadcasting of baseball games, which all agreed *was* subject to the antitrust laws, had become a sufficient part of baseball's business to subject its practices generally, including the reserve clause, to the Sherman Act. *See* Pls.' Mem. Opp. S.J., Dkt. 301, at 81, 84.

Indeed, in *Toolson*, MLB spent a great deal of effort arguing that Judge Hand's opinion was erroneous, citing a number of "basic errors," including one concerning the very point MLB now relies on. It argued that "Judge Hand entirely overlooked the distinction between the character of the reporter and the character of the thing reported"—*i.e.*, the distinction between the interstate business of broadcasting and the intrastate business of baseball. Br. for Resp'ts at 52, *Toolson v. N.Y. Yankees*, 346 U.S. 356 (No. 53-18), 1953 WL 78318 (*"Toolson* Br.").[7] MLB was, of course, successful in arguing that the Court should preserve a narrow exemption.

---

[6] This Court has recognized that this issue is distinct from the question whether broadcasting is protected by the antitrust exemption. *Laumann*, 2014 WL 3900566 at *7.

[7] In his brief in *Flood v. Kuhn*, Commissioner Kuhn described *Gardella* as a "sudden departure from precedent" that was set right by the Supreme Court in *Toolson*. Br. for Resp'ts at 25, *Flood v. Kuhn*, 407 U.S. 258 (1972) (No. 71-32), 1972 WL 125826.

Judge Hand also wrote only for himself, not for the court.[8] Thus, the quoted language was never Second Circuit precedent. Whatever relevant precedential value the case had was overruled in *Toolson*, and it addressed an entirely different issue that is contrary to MLB's current position. None of this provides *any* basis—much less a substantial one—for a difference of opinion concerning the applicability of the exemption to broadcasting.[9]

MLB further attempts to create support for its position by looking to other judicial decisions that have nothing to do with broadcasting, but which MLB characterizes as involving its "territorial rules."[10] MLB's string of citations supports only the claim that there is a difference of opinion as to whether the exemption should be limited to its reserve-clause origins. It does nothing to establish any judicial discord with respect to the application of the exemption to

---

[8] The court issued three separate opinions. Judge Hand and Judge Frank agreed to reverse the district court's decision, but wrote independently. Judge Chase, the dissenting judge, contended that *Federal Baseball* controlled, as the Supreme Court ultimately decided in *Toolson*. He emphasized, however, that in that case there were no "allegations as to any monopoly to control, or any conspiracy to create one to control, the prices at which the rights to send descriptions of the games, visually or otherwise, are sold." *Gardella*, 172 F.2d at 406-07. Thus, none of the three opinions would support the claim that baseball's broadcasting restraints were themselves exempt.

[9] MLB states that it is unaware of any post-*Toolson* court finding the exemption inapplicable to territorial broadcast restraints. But in *United States v. National Football League*, 116 F. Supp. 319, 328 (E.D. Pa. 1953), the court did just that, holding that *Federal Baseball* and *Toolson* did not protect leagues' "restraint of interstate commerce in the radio and television industries." That case involved football, but it was decided before the Supreme Court rejected the application of *Toolson* to football, and the court decided the issue entirely on the basis of its holding that the exemption did not apply to territorial restraints on broadcasting. Notably, in passing the SBA, Congress was directly responding to, and largely adopted, the framework of the court in *US v. NFL*. The SBA expressly applies to baseball, an application that would be unnecessary if Congress believed baseball broadcasts were already exempt. *Laumann*, 2014 WL 3900566 at *7.

[10] *See Crist*, 331 F.3d at 1181 n.10 (league contraction); *City of San José v. Office of the Comm'r of Baseball*, No. 13–02787, 2013 WL 5609346, at *10-11 (N.D. Cal. Oct. 11, 2013) (club relocation); *Major League Baseball v. Butterworth*, 181 F. Supp. 2d 1316, 1323-31 (N.D. Fla. 2001) (same as *Crist*); *Morsani v. Major League Baseball*, 79 F. Supp. 2d 1331, 1335 n.12 (M.D. Fla. 1999) (club purchase or expansion); *New Orleans Pelicans Baseball v. Nat'l Ass'n of Prof'l Baseball Leagues*, No. 93-253, 1994 WL 631144, at *9 (E.D. La. March 1, 1994) (club purchase and relocation).

baseball's broadcasting practices, territorial or otherwise.

   As a matter of both law and fact, the clubs' operating territories and their television territories are distinct. They indisputably raise different issues under the antitrust laws for a number of reasons. Television territories, unlike playing territories, would unquestionably have involved interstate commerce under the analysis in *Federal Baseball*, and so would not be any more exempt by virtue of being "territorial." Broadcasting restraints also involve agreements with third parties and affect trade in a separate industry in a way that operating territories do not. *See Crist*, 331 F.3d at 1183 (applying exemption to contraction but recognizing it does not apply to dealings with third parties).

   That territorial restraints on broadcasting are subject to the antitrust laws and are distinct from playing territories is anything but novel. Baseball itself withdrew its territorial broadcast restraints, but not its restraints on playing location, prior to the *Toolson* decision because of antitrust concerns. *See* Pls.' Mem. Opp. S.J., Dkt. 301, at 84. In *Toolson*, it specifically argued that baseball broadcasting *was* subject to the antitrust laws, but that "the business of producing professional baseball games in various cities" was not. *Toolson* Br. at 30. Congress addressed territorial blackouts, but not playing territories, in the SBA, and expressly applied the Act to MLB. As the Court has held, this shows that Congress viewed not only broadcasting generally, but territorial restraints on broadcasting in particular, as outside of the scope of the exemption. *Laumann*, 2014 WL 3900566 at *7.

   Defendants cannot manufacture a basis for disagreement out of cases that do not involve broadcasting simply because they can be characterized as protecting the league's "territorial" authority. MLB has thus failed to show that the "challenged decision conflicts with decisions of several other courts." *APCC Services, Inc. v. AT & T Corp.*, 297 F. Supp. 2d 101, 107 (D.D.C. 2003).

   Ultimately, the basis for MLB's motion is merely a conflict between its own, current view

of the scope of its antitrust exemption and MLB's prior, contrary view that is consistent with the
Court's holding. As this Court has previously explained, "[a] mere claim that a district court's
decision was incorrect does not suffice to establish substantial ground for a difference of
opinion." *Florio*, 2008 WL 3068247 at *1 (citations omitted); *see also Judicial Watch, Inc. v.
Nat'l Energy Policy Dev. Group*, 233 F. Supp. 2d 16, 31 (D.D.C. 2002) ("[D]efendants'
conviction of the correctness of their position is insufficient to carry them over the high threshold
posed by the standard governing certification for interlocutory appeal.").

### B.    The Antitrust Exemption Is Not Jurisdictional

MLB overreaches in its attempt to characterize the antitrust exemption as "jurisdictional"
in order to support its claim that it is a pure matter of law.

In *Toolson v. New York Yankees*, 101 F. Supp. 93 (S.D. Cal. 1951), the court dismissed a
challenge to the reserve clause under *Federal Baseball* "for want of jurisdiction of the subject
matter." *Toolson*, 101 F. Supp. at 95. Because the court resolved a plausible claim on the merits,
however, it would have been more accurate to describe it simply as dismissing for failure to state
a claim upon which relief could be granted. "On the subject-matter jurisdiction/ingredient-of-
claim-for-relief dichotomy, this Court and others have been less than meticulous. 'Subject matter
jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need
and ability to prove the defendant bound by the federal law asserted as the predicate for relief—a
merits-related determination.'" *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006) (quoting 2 J.
Moore, *et al.*, *Moore's Federal Practice* § 12.30[1], p. 12–36.1 (3d ed. 2005)).[11]

MLB seeks to bolster its characterization by stating that "application of the exemption" is
a question that "the Second Circuit has held[] may go to the Court's subject matter jurisdiction."

---

[11] "[I]f the plaintiff raises a substantial federal question, the court has jurisdiction over the case
and its decision must go to the merits of the dispute. Jurisdiction is not lost because the court
ultimately concludes that the federal claim is without merit." 13D Charles Alan Wright, Arthur
R. Miller, Edward H. Cooper, & Richard D. Freer, *Federal Practice & Procedure* § 3564 (3d ed.
2008) ("Wright & Miller").

MLB Defs.' Mem. Supp. Mot. Certify., Dkt. 328 ("MLB Mem.") at 1 (citing *Flood v. Kuhn*, 443 F.2d 264, 270 (2d Cir. 1971). This is not true. MLB's citation is to a statement in the *concurring opinion* of the Second Circuit's *Flood* decision that does nothing more than recount the procedural history of *Toolson*, not *Flood. See Flood*, 443 F.2d at 270 (Moore, J., concurring). Far from dismissing on the basis of jurisdiction, the district court in *Flood* held an "extensive trial" on the application of the exemption, 443 F.2d at 265, and made no mention of subject matter jurisdiction in its application of the exemption to the reserve clause allegations. *Flood v. Kuhn*, 316 F. Supp. 271, 276-80 (S.D.N.Y. 1970).[12]

In any event, for present purposes, this issue is semantic, not substantive. There is no special status for jurisdictional issues as such in this context. *See, e.g., Daniel v. Am. Bd. of Emergency Med.*, 988 F. Supp. 127, 144-45 (W.D.N.Y. 1997) (denying certification where Defendant sought review of personal jurisdiction and venue rulings in complex antitrust action). Rather, certification may be supported "[i]f proceedings that threaten to endure for several years depend on an initial question of jurisdiction, limitations, or the like." 16 Wright & Miller § 3930. Whether an issue is properly described as jurisdictional or not has no real relevance to this analysis—and it has none at all where, as here, it is raised after years of discovery and motion practice.

In any event, Plaintiffs agree that the Court properly decided the exemption issue at the summary judgment stage, and that MLB's defense was, accordingly, appropriately dismissed as a matter of law. As the full trial held in the *Flood* case shows, however, the exemption is not necessarily capable of resolution in that manner in all cases.

It is conceivable that the court of appeals could rule in Defendants' favor in a manner that rendered factual matters irrelevant. It might, in other words, find the issue to be a question of

---

[12] MLB similarly misstates the opinion in *Salerno v. Am. League of Prof'l Baseball Clubs*, 310 F. Supp. 729, 731 (S.D.N.Y. 1969), where the court dismissed the antitrust claims because "this complaint fails to state a claim against defendant upon which relief can be granted." It separately found that it lacked jurisdiction over the remaining state-law claims due to lack of diversity. *Id.*

pure law. But it is also possible that the court could render a decision that required a remand for factual determinations.

Indeed, MLB itself has insisted that it was necessary to wait for the completion of discovery to assert the exemption in order to help it to "best explain how those restraints were indisputably part of the 'business of baseball.'" MLB Mem. at 6 n.7. Notably, it defends its decision to wait for the completion of discovery on strategic grounds as well, arguing that it properly moved to dismiss on independent grounds that it now asserts the Court lacked the jurisdiction to consider. In any event, as discussed below, the potential to be determinative of MLB's liability (if the court of appeals were to reverse and if the court of appeals were to hold that it protects MLB regardless of the resolution of any disputed issues of fact) has no efficiency benefit to the litigation as a whole, given the current stage of the litigation and the fact that no other defendants have asserted the defense.

**C.    Disagreement with the Court's Application of an Antitrust Exemption does not present the type of Exceptional Circumstances that Justify Certification**

The Second Circuit has repeatedly cautioned that "use of this certification procedure should be strictly limited because only exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *In re Flor*, 79 F.3d 281, 284 (2d Cir.1996) (citations and internal quotations omitted). Exceptional circumstances are absent here, and the fact that the disputed matter involves a claimed antitrust exemption provides none. Courts have regularly refused to certify interlocutory review in circumstances where a party was denied application of antitrust exemption.[13] For example, in

---

[13] *See, e.g., Rieve v. Coventry Health Care, Inc.*, 870 F. Supp. 2d 856, 880 (C.D. Cal. 2012); *Ruggeri v. Boehringer Ingelheim Pharms., Inc.*, No. 3:06-cv-1985, 2009 WL 1505580 at *3 (D. Conn. May 26, 2009); *Litton Systems, Inc. v. Am. Tel. & Tel. Co.*, 487 F. Supp. 942, 960 (S.D.N.Y. 1980); *Interconnect Planning Corp. v. Am. Tel. & Tel. Co.*, 465 F. Supp. 811, 814 (S.D.N.Y. 1978); *Marnell v. United Parcel Service of Am., Inc.*, 260 F. Supp. 391, 414 (N.D. Cal. 1966); *Trans World Airlines, Inc. v. Hughes*, 214 F. Supp.106, 112 (S.D.N.Y. 1963).

10

*American Telephone & Telegraph Co. v. North American Industries of New York, Inc.*, 783 F. Supp. 810 (S.D.N.Y. 1992) ("*AT&T*"), Judge Mukasey denied certification under Section 1292(b) in a case implicating the "state action" exemption from antitrust liability. The *AT&T* court acknowledged that the scope of this defense was unsettled both in the Second Circuit and in at the Supreme Court. *AT&T*, 781 F. Supp. at 814. Nevertheless, the Court held that certification was inappropriate. "[T]hat disagreement does not seem to my eye to include any support for [the defendant]'s extreme view of that defense." *Id.* Even where the Defendant was able to show that no courts had rejected its view of the exemption, "that does not mean that a difference of opinion about it is 'substantial' as opposed to merely metaphysical." *Id.* Likewise, the Court here rejected MLB's extreme position concerning the breadth of its exemption, properly choosing instead to focus on the specific facts before it. This is far from the type of "exceptional circumstance" that justifies override of the basic principal of appellate review following final judgment.

## II.   Certification Will Not Materially Advance the Ultimate Termination of the Litigation

Perhaps the strongest ground on which to reject MLB's motion is the disruptive effect that an immediate appeal would have in this litigation, already more than two years old, which is moving efficiently toward trial. "Courts place particular weight on the last of these factors: whether immediate appeal will materially advance the ultimate termination of the litigation." *MTBE*, 2008 WL 2511038, at *1.

MLB's plea to avoid the costs of "protracted litigation" based on the strength of their belief in the exemption argument rings hollow. MLB's decision not to assert the exemption as a basis for dismissing the complaint two years ago cannot be reconciled with its position that the exemption is a jurisdictional, pure question of law. If its position were correct, then it could not

be, as the League now argues, that it was not in a position to address the issue "until discovery was completed." MLB Mem. at 6 n.7.

Any suggestion that the League did not understand Plaintiffs' claims or the potential applicability of the exemption is beyond the limits of plausibility. Not only did the complaint clearly lay out Plaintiffs' challenge to the defendants' system of territorial broadcast restraints, it specifically stated Plaintiffs' position that "[a]greements with third parties to restrain competition in the television and internet industry are well outside the narrow exemption to the antitrust laws recognized in *Flood v. Kuhn*, 407 U.S. 258 (1972)." Compl., Dkt. 1 at 5. Baseball's decision not to assert the exemption at that time was consistent with Plaintiffs' assertion—also contained in the original complaint—that "baseball itself has long understood that broadcasting does not fall within the exemption, as has Congress." *Id.* Defendants' motion to dismiss the complaint leaves no question that MLB understood that this case challenged its territorial broadcast practices under the antitrust laws. *See, e.g.*, Mem. Supp. Defs.' Mot. Dismiss, Dkt. 66 at 13 (describing the agreements Plaintiffs challenge). Whatever its reasons, MLB made a conscious decision not to move to dismiss the complaint on the grounds that it now professes to be of such paramount importance as to justify departure from basic principles of appellate review.

Whatever potential to advance the resolution of the litigation that might have existed by interlocutory appeal at the outset of the litigation has now been lost. Plaintiffs do not assert that MLB's right to argue exemption was waived by its failure to do so in moving to dismiss. Plaintiffs do assert, however, that this decision undermines MLB's request that the Court save it from the time and costs of litigation.

There can be no doubt that certification would delay trial.[14] MLB has professed that it

---

[14] On average, an appeal in the Second Circuit currently takes over ten months to resolve, and many appeals, of course, take much longer. *See* "U.S. Court of Appeals - Judicial Caseload Profile" at 7-8 (http://www.uscourts.gov/uscourts/Statistics/FederalCourtManagementStatistics/2014/ appeals-fcms-profiles-march-2014). A 1292(b) appeal requires an additional, initial period of motion practice for the appeals court to determine whether it will grant discretionary review. A petition for *certiorari* to the Supreme Court is a very real possibility in this case as well, which

will not seek a delay of pretrial proceedings if an appeal is certified. *See* MLB Mem. 13 n.11.
But MLB would seek to delay trial. Such a delay—in circumstances where Plaintiffs and other
Defendants would be ready for trial—alone warrants denial of a request for certification. *See*
*MTBE*, 2008 WL 2511038, *1. "An immediate appeal is considered to advance the ultimate
termination of the litigation if that 'appeal promises to advance the time for trial or to shorten the
time required for trial.'" *In re Oxford Health Plans, Inc.*, 182 F.R.D. 51, 53 (S.D.N.Y. 1998)
(quoting 16 Charles A. Wright & Arthur Miller, Federal Practice and Procedure § 3930 (2d ed.
l996)). MLB's proposal would do neither.

No other defendants have asserted this defense, and thus these cases would proceed to
trial regardless of the success of the appeal. These defendants would be in no position to claim
the protection of a defense that they have never asserted, regardless of what ruling resulted from
the court of appeals. Any such trial would also necessarily involve assessment of MLB's
practices, and testimony by MLB's witnesses, whether or not the MLB parties were defendants.
Consequently, no measurable efficiency would be gained from resolving this issue before trial
rather than after.

The Television Defendants' belated attempt to join in MLB's motion for certification of
the issue for interlocutory appeal does not change this because they may not use a request for
1292(b) certification to seek the protection of a defense that they have never asserted. *See supra*,
note 1. Moreover, there is no reason to think that they could invoke the exemption. As discussed,
the overwhelming weight of authority supports the proposition that MLB itself cannot claim any
protection when it engages in restraints involving third parties. *See supra*, pp. 3-4 & note 4. Were
the Second Circuit to reject that authority, it would have to take the additional step of permitting
those third parties to invoke the protection of a dubious exemption in an entirely new way. This
is all the more unlikely in this case, because the direct target of the restraints is the television

---

would make the delay considerably longer, regardless of whether the Court granted a petition.

programming that the Television Defendants themselves create and sell, in order to increase the value of that programming. *See, e.g.*, *Laumann*, 2014 WL 3900566 at *14.

Moreover, even if the Court were to accept Defendants' speculation that an appellate ruling in its favor "might also require dismissal of Plaintiffs' claims against the TV Defendants," MLB Mem. 14, this does not account for the *Laumann* action, which will include Comcast and DirecTV regardless (in addition, of course, to the NHL Defendants). As we have seen, the core issues and defenses (other than the exemption) of both the leagues and TV Defendants are the same in both cases. This Court adjudged the *Laumann* and *Garber* matters to be related because of large swaths of overlapping factual and legal issues. *See* Order, Dkt. 6. The course of the litigation has only confirmed this conclusion. Proceeding to trial in *Laumann* long before *Garber* not only betrays the parallel tracks on which these cases have thus far been prosecuted, it also presents a direct threat to the value of judicial economy. As the Supreme Court has stated in the context of analyzing the statute governing change of venue, "[w]e have made quite clear that '[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.'" *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) *quoting Continental Grain Co. v. The FBL–585*, 364 U.S. 19 (1960). So it is here, where MLB's quest for interlocutory appeal threatens to take two closely related cases, involving many of the same defendants, and either splinter them into separate tracks or permit a single group of defendants to resolve its unique defense while the other parties in both cases are made to wait. This is precisely the piecemeal litigation the law disdains. *See King Cnty. v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 317, 320 (S.D.N.Y. 2012) (finding that where trial on the balance of issues would proceed during appeal, "the standard set forth in section 1292(b) has not been met, and there is no reason to depart from this circuit's 'general aversion' to the piecemeal litigation that results when certification is granted") (citations omitted).

MLB inexplicably cites the *Piazza* court's Section 1292(b) decision favorably in its moving papers. *See* MLB Mem. 12. In fact, the *Piazza* court declined to certify its exemption ruling for interlocutory review, despite there being a much stronger basis for certification than is present here. Because the *Piazza* court held that the exemption applied only to the reserve clause, it found that there was a substantial basis for difference of opinion. *Piazza v. Major League Baseball*, 836 F. Supp. 269, 271 (E.D. Pa. 1993). Moreover, because baseball argued the exemption at the outset of the case, unlike here, certification in *Piazza* would have avoided "the risk of some ultimately unnecessary discovery and part of a trial." *Id.* at 273. Nevertheless, the court held that avoiding unnecessary delay and multiple appeals outweighed those benefits:

> [A]voiding piecemeal appeals will permit the Court of Appeals to have the entire controversy presented to it at one time, on a full record from which it can make a final determination of the issues in the case. This is especially true where there is overlap among the causes of action. As a matter of policy, breaking the action into parts to be reviewed individually is inefficient and unnecessary. Instead of promoting efficiency and certainty, which are the goals of § 1292(b), interlocutory appeal in this case would create the potential for chaotic litigation, with many likely results that would complicate rather than simplify, and compound costs and time. When the risk of some ultimately unnecessary discovery and part of a trial is balanced against the risk of substantial delay and multiple trials with multiple appeals, I cannot rule that certification may materially advance the ultimate termination of the litigation.

836 F. Supp. at 272-73 (citations, quotations and alterations omitted).

Here, where certification would lack the benefits cited in *Piazza*, the calculus is far clearer. Regardless of how a 1292(b) appeal would be resolved, the result would be a delayed trial, followed—almost certainly—by more appeals on multiple issues. And all of this in a case in which the issue was first raised after the completion of fact discovery. Far from presenting exceptional circumstances, MLB's proposal would create inefficiency at both the trial and appellate stages, exemplifying why the law views interlocutory appeals with such aversion.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the MLB Defendants'
motion to certify for immediate interlocutory appeal be denied.


Dated: September 10, 2014                    Respectfully submitted,


                                             */s/ Edward Diver*
                                             Edward Diver
                                             Howard Langer
                                             Peter Leckman
                                             **LANGER, GROGAN & DIVER, P.C.**
                                             1717 Arch Street, Suite 4130
                                             Philadelphia, PA 19103
                                             Telephone: (215) 320-5660
                                             Facsimile: (215) 320-5703

                                             Kevin Costello
                                             Gary Klein
                                             **KLEIN KAVANAGH
                                             COSTELLO, LLP**
                                             85 Merrimac Street, 4th Floor
                                             Boston, MA 02114
                                             Telephone: (617) 357-5500
                                             Facsimile: (617) 357-5030

                                             Michael M. Buchman
                                             John A. Ioannou
                                             **MOTLEY RICE, LLC**
                                             600 Third Avenue, Suite 2101
                                             New York, NY 10016
                                             Telephone: (212) 577-0040
                                             Facsimile: (212) 577-0054

                                             J. Douglas Richards
                                             Jeffrey Dubner
                                             **COHEN, MILSTEIN, SELLERS &
                                             TOLL, PLLC**
                                             88 Pine Street, 14th Floor
                                             New York, NY 10005
                                             Telephone: (212) 838-7797
                                             Facsimile: (212) 838-7745

Robert J. LaRocca
Craig W. Hillwig
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
Facsimile: (215) 238-1968

Marc I. Gross
Adam G. Kurtz
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212)-661-1100
Facsimile: (212) 661-8665

Joshua D. Snyder
Michael J. Boni
**BONI & ZACK, LLC**
15 St. Asaphs Road
Bala Cynwyd, PA 19004
Telephone: (610) 822-0200
Facsimile: (610) 822-0206

*Attorneys for Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2014, I caused the above document to be electronically filed with the Clerk of the Court for the United States District Court for the Southern District of New York by using the CM/ECF system.  I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>/s/ Edward Diver</u>
Edward Diver