## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
212-735-2583
DIRECT FAX
917-777-2583
EMAIL ADDRESS
JAMES.KEYTE@SKADDEN.COM

FIRM/AFFILIATE OFFICES
—
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
—
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

October 21, 2014

The Honorable Shira A. Scheindlin
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re: *Laumann et al. v. National Hockey League et al.*, 12-cv-1817 (SAS); *Garber et al. v. Office of the Commissioner of Baseball et al.*, 12-cv-3704 (SAS)

Dear Judge Scheindlin:

      We write on behalf of all Defendants in both actions to inform the Court that Defendants in both cases intend to file a common *Daubert* motion to exclude the class-related opinions of Dr. Roger Noll in support of Plaintiffs' motion for class certification.[1] Certainly, in light of the Court's September 4, 2014 Order, we understand the close scrutiny our motion will receive. But even under the most liberal standards, Dr. Noll's analysis does not pass muster because he assumes his hypothesis – the existence of a particular but-for world ("BFW") distribution system that is not present anywhere in the television industry today – and offers an inappropriate and irrelevant methodology to support his opinion that all class members would benefit from the elimination of the league's exclusive territorial broadcast rules, i.e., the Home Television Territories ("HTTs"). The issue for Plaintiffs reduces to this: they claim to show antitrust impact because the BFW purportedly will include a "bundle" of all games offered by the leagues that is priced lower than the out-of-market ("OOM") packages sold today, so that all class members have suffered an injury measured by the difference in price between the BFW "bundles" and the existing OOM packages. But Plaintiffs fail to identify any accepted economic methodology under *Daubert* to make that showing.

      Dr. Noll's analysis rests on the assumption that, in the BFW, teams will compete with one another and with the league for sale of game telecasts, with teams and RSNs providing their content to the leagues for free so that the leagues can compete at zero additional cost through

---

[1] Defendants' motion would not challenge Dr. Noll's qualifications.

The Honorable Shira A. Scheindlin
October 21, 2014
Page 2

their league-wide "bundles." Dr. Noll's model is flatly at odds with the academic literature on which he purports to base his model.

Dr. Noll's report asserts that his analysis is just a "variation" of a model in an article by Crawford and Yurukoglu ("C&Y"), which analyzed the impact of unbundling cable networks that are available through MVPD bundled services. The C&Y methodology was designed to assess the consumer-welfare effects of the forced unbundling of television channels, which necessarily would reset relationships among participants at different levels in the vertical distribution chain of the broadcast industry as they transition to a la carte offerings. The C&Y paper found that unbundling actually harmed consumers after measuring two "countervailing forces." The first considered the consumer benefit of having greater choice. The second – "more important" – effect involved measuring what would happen as the content providers (analogous to at least the teams and RSNs in these cases) renegotiated their rights with the distributors (the leagues and MVPDs in these cases). To analyze this second effect, C&Y constructed a supply-side bargaining model, ensuring that they analyzed the profit maximizing decisions of each market participant with the new industry structure. The model showed that unbundling would lead to higher input costs and ultimately higher consumer prices.

Dr. Noll has now admitted that he did not "apply" the C&Y model (or any variation thereof) at all on the supply side to analyze how different market participants – teams, the leagues, RSNs, and MVPDs – would reassess their business models and bargain in the BFW. This is despite admitting that if the exclusive rights were removed, there would be complex and intensive negotiations among all actors in the supply chain, each of which would have to reassess its current business model and, at a minimum, renegotiate its contractual relationships. (Noll Dep. 10/16/14 (Rough) Tr. 334-36.) For example, Dr. Noll conceded that extensive bargaining would need to take place in the BFW because the exclusive distribution rights granted to RSNs "in-market" in the HTTs were the quid pro quo for RSNs to provide their feeds to the leagues for "free" for inclusion in the league's "out-of-market" packages. (*Id.* at 54-55.)

At his deposition, however, Dr. Noll admitted that he did not address a wide variety of inevitable bargaining circumstances that would arise in the BFW and that he did not apply a bargaining model at all. (Noll Dep. 10/17/14 (Rough) Tr. 9–11.) Had he done so, he would have had to analyze, for example, the possibility (likelihood) that some teams and/or RSNs would withhold their content from the leagues rather than provide it to a competing league bundle, let alone for free. Indeed, at his deposition, Dr. Noll took the position that the YES Network, for example, could conclude that it was not in its individual interest to contribute its broadcasts of Yankees games to a league bundle. Ignoring this, Dr. Noll assumes that the teams and RSNs (as content providers) would nonetheless give the league their live sports content – for free – so it can be broadcast simultaneously in a league bundle in direct competition with their broadcasts. That has never happened in the history of television, sports, or televised sports. In essence, Dr. Noll applies half of the C&Y model – the half that benefits Plaintiffs – while ignoring the other half – the half that undermines Plaintiffs' entire theory of common impact. That is not a reliable method and does not withstand *Daubert*.

The Honorable Shira A. Scheindlin
October 21, 2014
Page 3

Though these defects are self-evident, Dr. Noll's failure to employ any form of bargaining model – or even to ask what would be in each economic participant's unilateral self-interest – renders his supply-side "analysis" devoid of economic science, as Defendants' expert, Dr. Pakes,[2] will attest. Moreover, Dr. Pakes will also explain that the "Bertrand" model applied by Dr. Noll is not a scientifically acceptable substitute for a bargaining model (and would not meet any of the *Daubert* factors). Bertrand involves a single set of established prices rather than the *negotiated* prices (and other terms) that would be part of the bargaining in the BFW here (at multiple levels of the supply chain). Dr. Pakes will explain why use of a Bertrand simulation in place of the C&Y bargaining model to "predict" outcomes in a vertical supply chain is a fundamental methodological error. Further, Dr. Noll admitted that he has never used Bertrand as the sole basis to assess impact and damages; nor did he identify an academic basis to do so. In other words, Dr. Noll has admitted that his methodology is novel and has never been peer reviewed for use in assessing common impact for purposes of class certification.

Finally, the generally accepted method for establishing impact and damages in an antitrust case is to employ a control group methodology, such as a "before and after" or a "benchmark group" model. In fact, Dr. Noll himself admits that, in every prior antitrust case where he was asked to assess impact and damages, he has employed a control group methodology; not so here. Dr. Noll's conclusory assertion that no control group is available here does not justify his failure to utilize the bargaining model from the C&Y paper, especially considering that relevant comparisons – sports and non-sports telecasting without territorial restrictions – look nothing like what Dr. Noll assumes. College football, for example, does not include simultaneous broadcasts of *the same game* by two schools and a conference-wide package. And MVPDs do not sell competing bundled and unbundled versions of the same programming, much less compete against themselves by pricing some of their offerings in competition with other offerings.

In sum, Dr. Noll is offering this Court a model that completely ignores the supply-side of the BFW in a way that overtly creates "injury" and damages, none of which is economic science. While this may make the model a good damages-generating machine, it is precisely what should not be available to Plaintiffs in seeking class certification.

Respectfully submitted,

James A. Keyte

cc: All counsel of record (by email)

---

[2] Dr. Pakes is the Thomas Professor of Economics at Harvard University. He pioneered structural industrial organization modeling using a general methods of moment technique, as recognized by Dr. Noll in his Supplemental Declaration (at p. 24 n. 23). Dr. Pakes teaches graduate economists how to construct structural models, including Ali Yurukoglu, whom he advised on his doctoral dissertation. Dr. Yurugoklu adapted his dissertation into the C&Y article discussed above that Dr. Noll uses for his analysis.