# LANGER GROGAN & DIVER P.C.
### ATTORNEYS AT LAW

HOWARD LANGER
JOHN J. GROGAN*
EDWARD A. DIVER
IRV ACKELSBERG
PETER LECKMAN†

PETER E. LECKMAN
DIRECT DIAL (215) 320-0876
pleckman@langergrogan.com

1717 ARCH STREET
SUITE 4130
PHILADELPHIA, PA 19103

PHONE: 215-320-5660
FAX: 215-320-5703

GEOFFREY C. HAZARD, JR.††
OF COUNSEL

2263 CALIFORNIA STREET
SAN FRANCISCO, CA 94115
415-292-6535
ghazard@langergrogan.com

*ALSO ADMITTED IN NEW JERSEY
†ALSO ADMITTED IN CALIFORNIA
††ADMITTED IN CALIFORNIA ONLY

January 26, 2015

Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

     Re:   *Laumann, et al. v. National Hockey League, et al.*, 12-cv-1817 (SAS)
               <u>*Garber, et al. v. Office of the Commissioner of Baseball, et al.*,12-cv-3704 (SAS)</u>

Dear Judge Scheindlin:

     Plaintiffs submit this letter to address two questions: (1) Did Defendants identify Messrs. Krolik, Biard, and Jack as witnesses likely to have discoverable information that Defendants may use to support their claims or defenses, as required by Federal Rule of Civil Procedure 26(1)(A)(i)? (2) If not, was Defendants' failure to do so "substantially justified or . . . harmless" under Rule 37(c)(1)? The answer to both questions is "no."

     Rule 26(1)(A)(i) requires parties to provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment . . . ." Based on Ms. Wilkinson's January 21, 2015 letter, Defendants do not deny that they failed to disclose Krolik and Biard. Instead, Defendants argue that the onus was on Plaintiffs to seek discovery from "third-party" Fox and that they cannot be surprised that "a witness from [Fox] . . . has relevant information." *Id.* Wilkinson Ltr. 2 n.1.

     Krolik and Biard are "third party" witnesses only in the most technical sense. They are apparently employed by Fox, but both represent themselves as responsible for YES's operations.[1] When Defendants made their initial disclosures, Fox had a 49% share in Defendant YES, and it has since become YES's majority owner. YES/Yankees identified four individuals in

---

[1] Biard Decl. ¶ 1 ("[I]t has been my responsibility to oversee distribution and marketing strategy for … the Yankees Entertainment and Sports Network ('YES')."); Krolik Decl. ¶ 1 ("[I]t has been my responsibility to manage … Yankees Entertainment and Sports Network ('YES')."); *see also, e.g.*, Biard Decl. ¶¶ 6-7 (opining as to what YES might do in the but-for world).

its initial disclosures[2] and acknowledged that, if it wanted to rely on additional witnesses, it would "supplement [its] disclosures as [YES] bec[a]me aware of additional individuals" or could use information "from witnesses not identified [by YES] but who are identified in other parties' Rule 26(a) initial disclosures." Ex. A. at 3. It did not do so.[3]

But even leaving aside the witnesses' party status, Defendants' argument turns Rule 26 on its head. Initial disclosures exist so that parties can develop their own evidence and prepare to rebut their adversaries' evidence—without having to throw darts at the vast realm of possible witnesses and information their adversaries might use. Plaintiffs did not plan to use evidence from Fox in their affirmative case, and—based on Defendants' disclosures—had no reason to expect that Defendants did.[4] Rule 26 exists to eliminate this exact guessing game.

As to Jack, Ms. Wilkinson's January 21 letter tells only half the story. DirecTV included Jack on a list of 16 document custodians. But before the custodian list, DirecTV submitted initial disclosures without Jack; after the custodian list, DirecTV submitted supplemental disclosures, *again* omitting Jack. DirecTV identified 14 individuals possessing information that DirecTV "may use to support its claims or defenses"—none of whom was Jack.[5] All told, Defendants identified at least 45 Rule 26(1)(a)(i) witnesses (most of whom they have not used thus far). Plaintiffs thus had to determine which of 45 individuals to depose to prepare for Defendants' arguments. Defendants' current argument is apparently that Plaintiffs should have gone even beyond those 45 and deposed everybody identified as a custodian by every Defendant, whether or not Defendants indicated that that they might use them. This is a recipe for grossly overbroad and unnecessarily expensive discovery.

Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."[6] District courts are to consider "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the

---

[2] Plaintiffs deposed three of the four individuals listed on the YES/Yankees disclosures.

[3] Moreover, Rule 26(1)(a)(i) makes no distinction between party and non-party witnesses.

[4] Defendants' point that "MLB Defendants did disclose in their Initial Disclosures that individuals associated with . . . 'non-defendant networks . . . ' may have relevant information," Wilkinson Ltr. 3 n.1, illustrates the problem with their argument. MLB adverted broadly to "individuals currently or formerly affiliated with the other Defendants in this action, as well as the named Plaintiffs and individuals currently or formerly affiliated with the non-defendant MLB member clubs, the non-defendant networks and distributors . . . and other sports and entertainment producers and providers." Ex. B at 5. This comprises literally countless corporate entities and thousands of individuals. It is unreasonable, unfair, and inefficient to require Plaintiffs to grasp blindly through this indefinite mass.

[5] *See* Ex. C at 1-4.

[6] It provides alternative or additional sanctions such as payment of consequent expenses. Plaintiffs do not seek any such alternative sanctions.

Honorable Shira A. Scheindlin
January 26, 2015
Page 3

precluded witnesses; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Preuss v. Kolmar Labs.*, 970 F. Supp. 2d 171, 175 (S.D.N.Y. 2013). Although Defendants argue that sanctions "should only be applied . . . where a party's conduct represents flagrant bad faith," Wilkinson Ltr. 2-3 n.1, bad faith "is not *required* in order to exclude evidence pursuant to Rule 37." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006).

As to Krolik and Biard, all four factors weigh in favor of a finding that the failure to disclose was neither substantially justified nor harmless. *First*, Defendants still have provided no explanation for their failure to comply with Rule 26(a). *Second*, the testimony is largely duplicative of several other Defendant executives' testimony and thus is of minimal importance to Defendants' case. *Third*, Plaintiffs would be prejudiced by the presentation of witnesses from and about whom they have had no discovery.[7] *Fourth*, these motions have been pending for months and a continuance to reopen document discovery and depositions would exacerbate the already lengthy schedule.

Defendants appear to challenge only the third factor, arguing that Plaintiffs knew Fox would have relevant information. This falls far short of showing that the failure to disclose was harmless. Some decisions omit sanctions because "Plaintiffs were well aware of [the witnesses'] identities and the scope of their knowledge," *Preuss*, 970 F. Supp. 2d at 177 (collecting cases), but Plaintiffs here had no reason to know of Krolik or Biard *specifically*, rather than Fox generally. *Compare, e.g.*, *id.* (affiants "participated in the decision to lay off or terminate Plaintiffs" and "were brought up several times in depositions"); *LaVigna v. State Farm Mut. Auto. Ins. Co.*, 736 F. Supp. 2d 504, 511 (N.D.N.Y. 2010) (affiant supervised plaintiff).[8]

Jack's declaration should also be stricken. Although Plaintiffs received Jack's custodial documents, Plaintiffs did not know Defendants intended to rely upon his testimony. Up until Defendants submitted his declaration, their position—both before and after labelling him a custodian—was that they did *not* intend rely upon his testimony.[9] Plaintiffs respectfully request that the Court strike all three declarations.

> Respectfully,
> */s/ Peter Leckman*
> Peter Leckman

cc: All counsel (via ECF).

---

[7] Their testimony does not comport with the economic reality of sports broadcasting, *see* Plfs' Class Cert. Reply 19-21 and SJ Opp'n 20-22, but Plaintiffs are less able to cross-examine them without access to their relevant documents.

[8] Discovery gave no sign that either would be relevant. Roughly 500,000 documents were produced; only 352 include Krolik's name, almost exclusively in long "cc" lists or incidental references in spreadsheets. Biard has even less presence, appearing in just 164 documents.

[9] In any event, Defendants offered Jack's declaration to support a meritless legal argument. *See* Class Cert. Reply at 21-22 & n.34.