# LANGER GROGAN & DIVER P.C.
### ATTORNEYS AT LAW

HOWARD LANGER
JOHN J. GROGAN*
EDWARD A. DIVER
IRV ACKELSBERG
PETER LECKMAN†

———

HOWARD LANGER
DIRECT DIAL (215) 320-5661
hlanger@langergrogan.com

1717 ARCH STREET
SUITE 4130
PHILADELPHIA, PA 19103

PHONE: 215-320-5660
FAX: 215-320-5703

GEOFFREY C. HAZARD, JR.††
OF COUNSEL

2263 CALIFORNIA STREET
SAN FRANCISCO, CA 94115
415-292-6535
ghazard@langergrogan.com

*ALSO ADMITTED IN NEW JERSEY
†ALSO ADMITTED IN CALIFORNIA
††ADMITTED IN CALIFORNIA ONLY

November 13, 2015

Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    <u>Garber, et al. v. Office of the Commissioner of Baseball, et al.,12-cv-3704 (SAS)</u>

Dear Judge Scheindlin,

    We write in response to the defendants' pre-motion letter of November 11, 2015, seeking to exclude the expert testimony of Professor Einer Elhauge. Defendants contend that Professor Elhauge's report is improperly duplicative and that he relies on Professor Noll's opinions in forming his own. Both claims are incorrect. Professor Elhauge was retained as a rebuttal witness. He independently analyzes the methods and approaches of the defendants' two newly named experts, Professors Kevin Murphy and Kenneth Elzinga, in their attempts to meet the defendants' burden of justifying their territorial restraints under the Rule of Reason.[1] By contrast, Professor Noll's rebuttal report responds to the new experts' criticisms of his own analysis.

    As an initial matter, there is no place for the defendants' claim that Professor Elhauge is unqualified to testify about antitrust economics. In rejecting similar efforts to exclude him as an expert economist, three different courts have described him as an "antitrust titan." *See Castro v. Sanofi Pasteur Inc.,* 2015 WL 5770381, at *5 (D.N.J. Sept. 30, 2015) (calling Prof. Elhauge "a preeminent antitrust scholar" who is "eminently qualified" to testify on antitrust economics and has "been described as a 'highly qualified antitrust titan.'") (quoting *Natchitoches Parish Hosp. Service Dist. v. Tyco Intern., Ltd.*, 247 F.R.D. 253, 273 (D. Mass. 2008)); *In re Mushroom Direct Purchaser Antitrust Litigation*, 2015 WL 5767415 at *4 (E.D. Pa. July 29, 2015) (same). As the Court noted in *Mushroom Direct Purchaser Antitrust Litig*: "He is the author of numerous books and articles located at the intersection of antitrust law and economics and one of those works has been cited by the Supreme Court. *See Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 194 n.5 (2010), citing E. Elhauge & D. Geradin, Global Antitrust Law and Economics (2007)." 2015 WL 5767415 at *4. He has testified as an expert witness on antitrust economics in dozens of cases, and has been qualified as an expert by all eleven courts to rule on that question.[2]

---

[1] Plaintiffs are more than willing to provide the Court with Professor Elhauge's report so that it can confirm it is an independent rebuttal of the defendants' experts' opinions.

[2] *Castro*, 2015 WL 5770381; *Mushroom Direct Purchaser Antitrust Litig.*, 2015 WL 5767415; *It's My Party, Inc., v. Live Nation, Inc.*, 88 F. Supp. 3d 475, 485 (D. Md 2015); *Retractable Tech.,*

Hon. Shira A. Scheindlin                                                                                                          2

      Professor Elhauge is also a preeminent authority on the economics of bundling, a core issue in this case. He has written extensively on the subject, and is the author of the volume in the leading antitrust treatise that addresses bundled products. *See* 10 Phillip E. Areeda, Herbert Hovenkamp, & Einer R. Elhauge, *Antitrust Law* (1996). He is more than qualified to challenge the defendants' experts' economic methods in assessing the restraints in this case, which perhaps explains the defendants' eagerness to preclude his testimony.

      Defendants first disclosed the identities and opinions of their two new experts on August 24, 2015, less than three months ago. (Defendants apparently no longer intend to call *any* of their three prior experts.) Their new expert reports were the first to address the defendants' burden of justifying the territorial market allocations at the heart of this case. That the plaintiffs would retain an expert to rebut these justifications was not a surprise. Plaintiffs disclosed their intention to retain a rebuttal expert at the September 30, 2015, Conference (Tr. 48-49). And they relied on this shared understanding when they took the Court's suggestion not to depose Professor Murphy, believing Professor Elhauge's rebuttal was sufficient to respond to his analysis.

      Plaintiffs' submission of two responsive reports is appropriate. As a purely rebuttal witness, Professor Elhauge "was asked to review the reports of Professors Murphy and Elzinga to assess the economic soundness of their claims on efficiencies, market definition, market power, and consumer effects." Elhauge Report ¶ 4. In contrast, Professor Noll was asked to determine whether anything in the reports would cause him "to alter the analysis and conclusions in [his] prior declarations." Noll Report, at 2. Professor Elhauge of course refers to Professor Noll's earlier reports, but only to point out where defendants' experts misapplied their analytical methods to issues that were in the record or ignored relevant facts altogether. Nor did Professor Elhauge rely on Professor Noll's opinions in forming his own. In support of their claim that he did, the defendants cite to four footnotes scattered throughout Professor Elhauge's 36-page, single-spaced report. Each note merely points out facts also used in Professor Noll's report that support Professor Elhauge's critique.[3] None of these notes (or any of the other citations in the defendant's letter) constitutes the basis for Professor Elhauge's critiques of Professor Murphy

---

*Inc. v. Becton Dickinson & Co.*, No. 08-cv-16 (E.D. Tex. Sept 2, 2013); *Natchitoches*, 247 F.R.D. at 273; *In re Se. Milk Antitrust Litig.*, No. 08-md-1000 (E.D. Tenn. Dec. 8, 2010); *Masimo Corp. v. Tyco,* No. 02-cv-4770 (C.D. Cal. May 28, 2004); *Applied Med. Res. Corp. v. Ethicon*, No. 03-cv-1329 ); *Amgen v. F. Hoffman-La Roche,* No. 05-cv-12237 (D. Mass. Jan 3, 2008); *Savant Sys. v. Creston Electronics*, No. 1:10-cv-11622 (D. Mass. Sept. 24, 2014); *Hynix Antitrust Cases*, No. JCCP 4607, at 82 (Cal. Sup. Ct., S.F., Sept 9, 2010).

[3] Professor Elhauge's Note 36 cites to economic studies undermining the defendants' experts' analyses (and supporting Professor Elhauge's critique). Note 42 points out that their argument that the broadcast territories are necessary to promote local attendance ignores that the broadcast territories are broader than the catchment area for attendance and cites to Noll for a factual description of the geographic scope of the territories. Note 62 rebuts the claim that prices could be above marginal costs because of fixed costs by pointing out that Professor Noll's cost measure included fixed costs. And Note 65 makes the point that the defendants' experts ignored the small seasonal overlap when claiming other sports were substitutes to baseball, citing to Professor Noll's factual description of the respective sports' seasons.

Hon. Shira A. Scheindlin                                                                                                              3

and Elzinga's analyses. Professor Elhauge does not opine on the strength of Professor Noll's analyses or claim that those analyses are correct.[4]

When viewed at a high level, there is necessarily some overlap in the issues addressed in the reports, just as there is in the reports of the defendants' new experts.[5] But the existence of this overlap does not mean that the experts' trial testimony cannot be limited to prevent cumulative evidence. Professor Noll is the plaintiffs' affirmative expert. His testimony will focus on his own analysis and conclusions. Professor Elhauge is to testify solely in rebuttal. The purpose of his testimony is to assess the economic soundness of the methods employed by Professors Murphy and Elzinga in assessing market definition, market power, and consumer effects. This is a standard use of rebuttal expert testimony.[6]

Plaintiffs have no intention of introducing duplicative testimony at trial, just as they expect that the defendants will refrain using their experts in a duplicative fashion.[7] Plaintiffs also do not expect Professor Elhauge's testimony to lengthen the trial. If either party attempts to introduce cumulative testimony, the Court can exclude or discount it. *See, e.g.*, Dkt. 419, Order, March 15, 2015 at 2 (limiting Professor Ordover to non-duplicative testimony). But there is no reason to doubt that the parties can divide the expert testimony among their experts in an appropriate fashion. Both can testify at trial in a non-cumulative manner, and having two different perspectives can only aid the Court in evaluating the issues. *See, e.g.*, *Banks v. United States*, 93 Fed. Cl. 41, 51 (Fed. Cl. 2010) (noting that two experts addressing overlapping issues "may come to that evidence with a different perspective that is potentially helpful to the court").

---

[4] A review of the four main sections of Professor Elhauge's report confirms that he is responding to the defendants' experts, not assessing—or relying on—Professor Noll's opinions:

  I. Professor Murphy is Wrong That Ending the Challenged Restraint Would Inefficiently Destroy or Infringe Property Rights
  II. The Other Efficiency Arguments of Professors Murphy and Elzinga Are Also Unfounded
  III. Professor Murphy's Market Definition and Market Power Arguments are Economically Unsound
  IV. Professors Murphy and Elzinga Do Not Disprove Consumer Harm or Show Any Procompetitive Effects

[5] For example, Professors Elzinga and Murphy proffered nearly indistinguishable opinions regarding Professor Noll's showing of harm and the defendants' theorized procompetitive benefits. *Compare, e.g.*, Elzinga Report at 45-47 *with* Murphy Report ¶¶ 145-147 (both hypothesizing that MVPDs might not carry individual teams' feeds); Elzinga Report at 39-41 *with* Murphy Report ¶¶ 132-37 (both arguing that reduced choice does not in and of itself harm consumer welfare). Indeed, both reports repeat much of the analysis of yet a *third* expert, Professor Ordover.

[6] *See, e.g.*, *Gutierrez v. Johnson & Johnson*, No. 01-5302, ECF No. 220-1 (D.N.J. July 18, 2006) (Daniel McFadden submitting rebuttal on behalf of defendant, reviewing defendant's previous expert report to "comment on whether this report comports with the standards for scientific experts with respect to qualification, reliability, and relevance to the question before the Court").

[7] Having now used five different, overlapping experts, the defendants are in no place to complain that the plaintiffs have identified a second economic expert. Nor can they plausibly suggest that since Dr. Noll has submitted four reports, the plaintiffs cannot submit a separate rebuttal report, when the defendants have now submitted *nine* separate expert reports from five experts.

Hon. Shira A. Scheindlin                                                                                                    4

                                        Respectfully,

                                        Howard Langer

cc:  All counsel via ECF