**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FERNANDA GARBER, et al., representing themselves and all others similarly situated,<br><br>                                        Plaintiffs,<br><br>        v.<br><br>OFFICE OF THE COMMISSIONER OF BASEBALL, et al.,<br><br>                                        Defendants. | **JOINT PRETRIAL ORDER**<br>**12 Civ. 3704 (SAS)** |

**Scheindlin, District Judge:**

        Having conferred among themselves and with the Court pursuant to Rule 16 of the Federal Rules of Civil Procedure, the parties adopt the following statements, directions and agreements as the Pretrial Order:

1.      **Trial Counsel**

        Plaintiffs' trial counsel will be as follows:

        Howard Langer
        Edward Diver
        Peter Leckman
        Langer, Grogan & Diver, P.C.
        1717 Arch Street, Suite 4130
        Philadelphia, PA 19103
        Telephone: (215) 320-5660

        Joshua D. Snyder
        Boni & Zack, LLC
        15 St. Asaphs Road
        Bala Cynwyd, PA 19004
        Telephone: (610) 822-0200

        Jeffrey B. Dubner
        Cohen Milstein Sellers & Toll PLLC
        1100 New York Ave. NW, Suite 500
        Washington, DC 20005
        Telephone: (202) 408-4600

Robert J. LaRocca
Kohn, Swift & Graf, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700


Defendants' trial counsel will be as follows:


Beth A. Wilkinson
Alexandra M. Walsh
Paul, Weiss, Rifkind, Wharton & Garrison LLP
2001 K Street, N.W.
Washington, DC 20006
Telephone:  (202) 223-7300

Daniel J. Toal
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000

*Attorneys for Office of the Commissioner of Baseball, Major League Baseball Enterprises Inc., MLB Advanced Media L.P., MLB Advanced Media, Inc., Athletics Investment Group, LLC, the Baseball Club of Seattle, L.P., Chicago Cubs Baseball Club, LLC, Chicago White Sox, Ltd., Colorado Rockies Baseball Club, Ltd., The Phillies, L.P., Pittsburgh Baseball, Inc., and San Francisco Baseball Associates, L.P.*


Michael P. Carroll
Arthur J. Burke
David B. Toscano
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000

*Attorneys for Comcast Corp., Comcast SportsNet California, LLC, Comcast SportsNet Chicago, LLC, Comcast SportsNet Philadelphia, L.P.*

Joseph Serino, Jr.
John C. Vazquez
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800

Melissa D. Ingalls
Tammy A. Tsoumas
Kirkland & Ellis LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400

*Attorneys for DIRECTV, LLC, DIRECTV Sports Networks, LLC, DIRECTV Sports Net Pittsburgh, LLC (a/k/a ROOT Sports Pittsburgh), DIRECTV Sports Net Rocky Mountain, LLC (a/k/a ROOT Sports Rocky Mountain), and DIRECTV Sports Net Northwest, LLC (a/k/a ROOT Sports Northwest)*

Jonathan D. Schiller
Alan B. Vickery
Christopher Duffy
Boies, Schiller & Flexner LLP
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-2300

*Attorneys for New York Yankees Partnership*

John Schmidtlein
William Vigen
Joelle Perry
Williams & Connolly LLP
725 Twelfth St., N.W.
Washington, DC 20005
Telephone: (202) 434-5000

*Attorneys for Yankees Entertainment and Sports Network, LLC*

2.      **Nature of Action and Jurisdiction/Venue**

There exists a dispute concerning jurisdiction.

Plaintiffs' Jurisdictional Statement

Plaintiffs bring claims pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, for

violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1-2. This Court has subject

matter jurisdiction over that claim pursuant to 28 U.S.C. §§ 1331 and 1337.  Venue is proper

pursuant to 28 U.S.C. § 1391 and 15 U.S.C. § 22.

Plaintiffs disagree with Defendants' contention that Major League Baseball's limited

exemption from the antitrust laws removes the case from the Court's jurisdiction. The Court has

previously held that that exemption does not apply to the broadcasting restrictions Plaintiffs

challenge. *See Laumann v. NHL*, 56 F. Supp. 3d 280, 297 (S.D.N.Y. 2014) ("I therefore decline

to apply the exemption to a subject that is not central to the business of baseball, and that

Congress did not intend to exempt — namely baseball's contracts for television broadcasting

rights.").  The Court has also held that the "scope of the baseball exemption is not a jurisdictional

issue." Opinion and Order, *Garber v. Office of the Commissioner of Baseball*, ECF No. 342, at 9

(Sept. 22, 2014).

The basis for the Television Defendants' separate claim that the Court lacks subject

matter jurisdiction is unclear.  To the extent necessary, Plaintiffs will address this argument in

response to Defendants' pretrial brief.

Defendants' Jurisdictional Statement

Defendants contend that the Court lacks subject matter jurisdiction because the baseball

exemption to the antitrust laws applies to Plaintiffs' claims. *See, e.g.*, *Flood* v. *Kuhn*, 443 F.2d

264, 270 (2d Cir. 1971), *aff'd*, 407 U.S. 258 (1972); *Salerno* v. *Am. League of Prof'l Baseball*

*Clubs*, 310 F. Supp. 729, 731 (S.D.N.Y. 1969), *aff'd*, 429 F.2d 1003 (2d Cir. 1970); *Prof'l*

*Baseball Schools & Clubs, Inc.* v. *Kuhn*, 693 F.2d 1085, 1085 (11th Cir. 1982); *MLB* v.

*Butterworth*, 181 F. Supp. 2d 1316, 1331 (N.D. Fla. 2001), *aff'd on other grounds* 331 F.3d 1177

(11th Cir. 2003).

The Television Defendants[1] assert that the Court lacks subject matter jurisdiction over the

claims against them because the Court can grant no injunctive relief against the Television

Defendants that would redress Plaintiffs' alleged injury. *See Reaves v. U.S. Dep't of Justice*, 355

F. Supp. 2d 510, 515 (D.D.C. 2005) (three-judge court) (*per curiam*); *see also Spencer v. Kemna*,

523 U.S. 1, 7 (1998) (redressability requirement "subsists through all stages of federal judicial

proceedings").

3.      **Jury/Non-Jury**

Because Plaintiffs are pursuing only injunctive relief, this will be a non-jury trial.

4.      **Amendments/Dismissals**

Plaintiffs seek to dismiss their individual damages claims with prejudice pursuant to Rule

41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, and Defendants stipulate to dismissal on

those terms.

5.      **Undisputed Facts**

Stipulated and undisputed facts are listed at **Attachment A**.

---

[1] The Television Defendants are DIRECTV, LLC, DIRECTV Sports Networks, LLC, DIRECTV Sports Net Pittsburgh, LLC (a/k/a ROOT Sports Pittsburgh), DIRECTV Sports Net Rocky Mountain, LLC (a/k/a ROOT Sports Rocky Mountain), and DIRECTV Sports Net Northwest, LLC (a/k/a ROOT Sports Northwest) (collectively, the "DIRECTV Defendants"), Comcast Corporation, Comcast SportsNet Philadelphia, LLC, Comcast SportsNet California, LLC, Comcast SportsNet Chicago, LLC (collectively, the "Comcast Defendants") and Yankees Entertainment and Sports Networks ("YES").

6.    **Contentions of the Parties**

Plaintiffs' Contentions

It is undisputed that the 30 teams playing Major League Baseball and their broadcast partners have agreed that none of them will authorize distribution of live telecasts of their games on the Internet or outside their designated "home television territory." Plaintiffs contend that this violates Sections One and Two of the Sherman Act, 15 U.S.C. §§ 1 & 2.

First, the Defendants' agreement constitutes a horizontal market allocation, which harms competition by reducing output and raising prices. As explained in Plaintiffs' Pre-Trial Memorandum of Law and Proposed Findings of Fact and Conclusions of Law, Defendants have not met their heavy burden of showing that this purposeful suppression of competition has any legitimate procompetitive benefits—and even if they had, any such legitimate procompetitive benefits could be achieved through less restrictive alternatives. Accordingly, this agreement violates Section One, 15 U.S.C. § 1.

The Television Defendants have actively facilitated and encouraged the division of the market for the major league baseball telecasts they produce and distribute by, among other things, entering contracts explicitly incorporating the territorial restraints, knowing that their competitors had done the same; by paying more for the artificial exclusivity the horizontal agreement creates; by insisting on contractual provisions prohibiting relaxation of the territorial allocations; by implementing the blackouts necessary to enforce the territorial restraint; and by collaborating with one another to ensure that prices remain elevated and output thereby restricted.

Second, the agreement among the League Defendants artificially creates regional monopolies over telecasts and distribution over the Internet. As Professor Noll has shown, Major League Baseball telecasts constitute a relevant product market, and the agreement has divided

the United States into submarkets into which only one to six teams can distribute telecasts. Likewise, by agreeing to an artificial "in-market" and "out-of-market" divide, the teams and league have ceded a monopoly to the League to control "out-of-market" telecasts. But for the horizontal agreement, the 30 Teams would compete in the distribution of telecasts.

The League Defendants did not come by this monopoly power innocently. While local baseball teams might generally be expected to have some market power, given the many advantages of being present in the market, that market power is dramatically magnified by the horizontal market allocation. The express purpose of the agreement is to create monopoly power: to insulate teams from competition and increase their ability to market their product without any fear of facing competition from other baseball teams or their RSNs. This anticompetitive conduct willfully creates monopoly power and therefore violates Section Two, 15 U.S.C. § 2.

As the Court has already held, the Plaintiffs have standing to challenge these agreements. *See Laumann v. Nat'l Hockey League*, 105 F. Supp. 3d 384 (S.D.N.Y. 2015); *Laumann v. Nat'l Hockey League*, 907 F. Supp. 2d 465, 482 (S.D.N.Y. 2012). They are ongoing participants in the market for major-league baseball telecasts. They have previously purchased Defendants' out-of-market bundles subject to the challenged restraints, and either continue to purchase major-league baseball telecasts or would do so in the future if the restraints were lifted. They have faced higher prices and decreased choices as a result of the restraints.

As a remedy for these violations, Plaintiffs request that the Court declare the market allocation unlawful; enjoin the League Defendants from restraining any Team from distributing throughout the United States by any distribution method, including via the Internet; enjoin the Television Defendants from enforcing and implementing the challenged market allocations; and impose other remedial terms as necessary to ensure the cessation of the unlawful conduct.

Defendants' Contentions

Major League Baseball's ("MLB's" or the "League's") telecast licensing system increases the quantity and quality of baseball available to consumers, and therefore promotes competition, rather than restraining competition in or monopolizing any relevant market.

MLB's licensing system (1) allocates exclusive telecast rights to each club within a defined geographic territory and (2) centralizes national telecast rights in the League.  The home team territorial rules that are the underpinning of this licensing and broadcast system have, among other things, dramatically increased the number of local telecasts, fostered greater local fan loyalty, and boosted stadium attendance.  The League's national telecast rights agreements have permitted the League to innovate new products, including MLB Extra Innings and MLB.TV, generate substantial shared revenue for every club, and promote the game of baseball in general, rather than entrenching the popularity of certain clubs.  Since the adoption of the telecast licensing system, the number of live video exhibitions of MLB games has grown, even more so for the least popular teams.  Today, nearly every MLB game is available for video exhibition to nearly every fan in the United States.  The rise in the quantity of broadcasts available to consumers has coincided with a rise in telecast quality, including team-dedicated pre- and post-game shows and industry-leading Internet streaming.  The product on the field has also never been better or more competitive: In the ten most recent seasons, 28 out of the 30 MLB clubs have earned a spot in the playoffs.  In short, MLB's telecast licensing system has been beneficial to baseball fans and enhanced baseball's ability to compete with the myriad forms of sports and non-sports entertainment that consumers choose to watch on television.

Against this backdrop of expanding output and increased product quality, Plaintiffs will be unable to demonstrate that MLB's home territory rules harm competition.  As an initial

matter, Plaintiffs' case rests on an incorrectly defined relevant market and an incorrect assessment of MLB's market power: the relevant market includes not only professional baseball telecasts but also (at a minimum) telecasts of other professional sports and non-sports programming.  Plaintiffs cannot establish that MLB possesses market or monopoly power in that properly defined market.  Moreover, the reductions in choice or output that Plaintiffs allege— including that individual teams cannot offer their games out-of-market alongside the League offering those games out-of-market—are not cognizable anticompetitive effects or antitrust injuries.  This claim ignores that virtually every game played in MLB's regular season *is* available to consumers, and in any event, that beginning next season MLB will make single-team, out-of-market streams available for purchase (alongside the out-of-market package) on MLB.TV.  Finally, Plaintiffs have no evidence that without the current system, consumers in the "but for world" would be able to view the same number of games at a comparable price.

Plaintiffs' allegations against the Television Defendants also fail.  As the League rules are entirely lawful, Television Defendants are not liable for distributing games pursuant to them.  Further, an injunction against Television Defendants is not necessary to enjoin League rules, and therefore the injunctive claims against the Television Defendants do not present a triable case or controversy.  Substantively, there is no direct or plausible circumstantial evidence of any horizontal conspiracy among the RSNs, and there are no plus factors that allow for the inference of a horizontal conspiracy as opposed to legitimate, parallel conduct.  It is in each RSN's unilateral interest to purchase the only rights they are able to license—i.e., the right to distribute a particular club's games in the club's HTT.  There is also no evidence that the Television Defendants are liable for participating in any alleged horizontal conspiracy among the League Defendants.

Finally, the evidence will confirm that Plaintiffs' claims fall squarely within the antitrust

exemption applicable to the business of baseball and fail for that independent reason.

7. **Issues of Law**

There exists a dispute over the scope of the legal issues to be decided.

Plaintiffs' Statement of the Ultimate Issues of Law to Be Decided

*15 U.S.C. § 1*

1. Whether it is more likely than not that some or all Defendants engaged in "(1) concerted action between at least two legally distinct economic entities; (2) that constitute[s] an unreasonable restraint of trade either per se or under the rule of reason." *Laumann v. Nat'l Hockey League*, 907 F. Supp. 2d 465, 478 (S.D.N.Y. 2012).

   a. Whether some or all Defendants entered an express agreement not to compete in terms of price or output. *Nat'l Coll. Athl. Ass'n v. Bd. of Regents*, 468 U.S. 85, 109 (U.S. 1984) ("*NCAA*").

   b. If so, whether Defendants have met their "heavy burden of establishing an affirmative defense which competitively justifies th[e] apparent deviation from the operations of a free market." *NCAA*, 468 U.S. at 113.

   c. Or, whether Plaintiffs have shown, either directly or through a showing of market power in a relevant market, that it is more likely than not that Defendants' conduct has caused an actual adverse effect on the market. *Laumann*, 907 F. Supp. 2d at 479.

   d. If so, whether the Defendants have offered evidence that their conduct has legitimate pro-competitive effects. *Id*.

   e. If Defendants have met their burden, whether Plaintiffs have shown that it is more likely than not that any legitimate procompetitive effects could have been achieved through less restrictive means. *Id*.

*15 U.S.C. § 2*

1. Whether any or all of the League Defendants[2] unlawfully monopolized, or combined or conspired, to monopolize, trade or commerce.

---

[2] The League Defendants are the Office of the Commissioner of Baseball, Major League Baseball Enterprises Inc., MLB Advanced Media L.P., Athletics Investment Group, LLC, The Baseball Club of Seattle, L.P., Chicago National League Ball Club, LLC, Chicago White Sox, Ltd., Colorado Rockies Baseball Club, Ltd., New York Yankees Partnership, The Phillies, L.P., Pittsburgh Baseball, Inc., and San Francisco Baseball Associates, L.P.

    a.  <u>Monopolization</u>

        i.  Whether it is more likely than not that one or more of the League Defendants possessed monopoly power in the relevant market. *Laumann v. Nat'l Hockey League*, 907 F. Supp. 2d 465, 479 (S.D.N.Y. 2012)

        ii.  If so, whether it is more likely than not:

            1.  "(1) that [one or more of the League Defendants have] engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Id*. at 480; or

            2.  that one or more of the League Defendants have "use[d] its market power, whether obtained lawfully or not, to prevent or impede competition in the relevant market." *Id*. at 492.

    b.  <u>Conspiracy to Monopolize</u>

        i.  Whether it is more likely than not that some or all of the League Defendants engaged in concerted action with the specific intent to achieve an unlawful monopoly; and

        ii.  committed an overt act in furtherance of the conspiracy.

*Injury & Standing*

1. Whether at least one Plaintiff has both constitutional and antitrust standing to pursue injunctive relief on behalf of themselves and/or the certified class.

2. Whether the Plaintiffs have established a cognizable antitrust injury resulting from the challenged practices.

<u>Defendants' Statement of the Issues of Law to Be Decided</u>

1. Whether two or more Defendants entered into a contract, combination, or conspiracy that unreasonably suppresses or destroys competition in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, or whether their actions merely regulate or promote competition and thus are permitted under the law. *Texaco Inc*. v. *Dagher*, 547 U.S. 1, 5 (2006).

    a.  Whether Plaintiffs have satisfied their initial burden of proving that the challenged restraints more likely than not have an actual, substantial adverse effect on competition as a whole in the relevant market as to:

     i.    an alleged horizontal agreement among the League Defendants to establish territorial rules;

     ii.    the Television Defendants' alleged participation in the League Defendants' alleged conspiracy, based on the Television Defendants' presumptively legal vertical distribution agreements, which incorporate territorial rules created and dictated by the League Defendants;

  b.  If so, whether Defendants have met their burden of production to offer evidence of procompetitive effects of the challenged restraint;

  c.  Whether Plaintiffs have met their burden of proving that those procompetitive effects could have been achieved through less restrictive alternatives;

  d.  If so, whether Plaintiffs have met their burden of proving that the procompetitive effects of the challenged restraints are outweighed by adverse effects on competition as a whole in the relevant market.

*MLB Properties, Inc.* v. *Salvino*, 542 F.3d 290, 317 (2d Cir. 2008); *United States* v. *Visa*, Inc., 344 F.3d 229, 238 (2d Cir. 2003).

2.  Under Section 2 of the Sherman Act, whether any or all of the League Defendants unlawfully monopolized, or combined to monopolize, trade or commerce in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; *New York ex rel. Schneiderman* v. *Actavis PLC*, 787 F.3d 638, 651 (2d Cir. 2015);

  a.  <u>Monopolization</u>.

     i.    Whether Plaintiffs have met their initial burden of demonstrating that the League Defendants possessed monopoly power in the relevant market; *Tops Mkts., Inc.* v. *Quality Mkts., Inc.*, 142 F.3d 90, 98 (2d Cir. 1998);

     ii.    If so, whether Plaintiffs have established that the League Defendants:

        1.    willfully acquired or maintained that monopoly power, as distinguished from the growth or development of power as a consequence of a superior product, business acumen, or historic accident; and

        2.    did so by predatory or anticompetitive conduct.

*Actavis*, 787 F.3d at 651.

  b.  <u>Conspiracy to Monopolize</u>.  Whether Plaintiffs have proven that the League Defendants:

> i.   engaged in concerted action deliberately taken with the specific intent to achieve an unlawful monopoly; and
>
> ii.  committed an overt act in furtherance of the conspiracy;
>
> *Discover Fin. Servs.* v. *Visa U.S.A. Inc.*, 598 F. Supp. 2d 394, 405 (S.D.N.Y. 2008) (quoting *Elecs. Commc'ns Corp.* v. *Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 246 (2d Cir. 1997)).

   c.   If Plaintiffs prove that the League Defendants have monopoly power, and their conduct is anticompetitive or exclusionary, whether the League Defendants proffered procompetitive justifications for their conduct; *Actavis*, 787 F.3d at 651;

   d.   If so, whether Plaintiffs rebutted those justifications and established that anticompetitive harm outweighs the procompetitive benefits. *Actavis*, 787 F.3d at 651.

3.   Whether the Plaintiffs have established a cognizable antitrust injury resulting from the challenged practices. *Paycom Billing Servs., Inc.* v. *Mastercard Int'l, Inc.*, 467 F.3d 283, 290 (2d Cir. 2006).

4.   Whether each Plaintiff has both constitutional and antitrust standing to pursue injunctive relief on behalf of themselves and/or the certified class. *Balaklaw* v. *Lovell*, 14 F.3d 793, 797-98 & n.9 (2d Cir. 1994).

5.   As to the Television Defendants, whether Plaintiffs have established an actual injury that can be redressed by a favorable judicial decision, which is necessary to satisfy the case or controversy requirement of Article III. *Reaves* v. *U.S. Dep't of Justice*, 355 F. Supp. 2d 510, 515 (D.D.C. 2005) (three-judge court) (per curiam).

6.   Whether Plaintiffs' claims are barred by baseball's exemption from the antitrust laws. *See City of San Jose* v. *MLB*, 776 F.3d 686, 690–92 (9th Cir.), *cert. denied*, 136 S. Ct. 36 (2015).

8.   **Separate Trial of Issues**

   No party believes that a separate trial of any issues is necessary at this time.

9.   **Lists of Prospective Witnesses**

   Plaintiffs' Anticipated Witnesses

| Name | Position | Means of Presentation |
|------|----------|-----------------------|
| Laurence Baer | Partial Owner, President, and Chief Executive Officer, San Francisco Giants | Deposition |
| Vincent Birbiglia | Plaintiff | Live |

| Name | Position | Means of Presentation |
|---|---|---|
| Robert Bowman | President, Business & Media, Officer of the Commissioner of Baseball; President and Chief Executive Officer, MLB Advanced Media, L.P. | Deposition |
| Timothy Brosnan | Executive Vice President, Business (former), Office of the Commissioner of Baseball | Deposition |
| Patrick Crumb | President, DIRECTV Sports Networks, LLC | Deposition |
| Tracy Dolgin | President and Chief Executive Officer, Yankees Entertainment & Sports Network, LLC | Deposition |
| Robert DuPuy | President and Chief Operating Officer (former), Office of the Commissioner of Baseball | Deposition |
| Reagan Feeney | Vice President for Programming Acquisitions (former), DIRECTV, LLC | Deposition |
| John Henry | Principal Owner, Boston Red Sox; Executive Council Member (former), MLB; Director (former), MLB Advanced Media, L.P. | Deposition |
| Susanne Hilgefort | Senior Director, Broadcasting Business Affairs, Office of the Commissioner of Baseball | Deposition |
| Marc Lerner | Plaintiff | Live |
| Randy Levine | President, New York Yankees | Deposition |
| Robert Manfred | Commissioner, Office of the Commissioner of Baseball | Live |
| Daniel McFadden | Emeritus Professor of Economics, University of California, Berkeley | Deposition |
| Robert Nutting | Principal Owner and Chairman of the Board, Pittsburgh Pirates | Deposition |
| Allan Huber "Bud" Selig | Commissioner Emeritus, Office of the Commissioner of Baseball | Live |
| Christopher Tully | Executive Vice President, Media, Office of the Commissioner of Baseball | Deposition |
| Philip Weinberg | Executive Vice President and General Counsel, Comcast Spectacor | Deposition |
| Comcast Document Custodian (if necessary) | | Live/Declaration |

| Name | Position | Means of Presentation |
|---|---|---|
| DIRECTV Document Custodian (if necessary) | | Live/Declaration |
| MLB Document Custodian (if necessary) | | Live/Declaration |
| NHL Document Custodian (if necessary) | | Live/Declaration |
| Rule 1006 Summary Witnesses (if necessary) | | Live/Declaration |

<u>Defendants' Anticipated Witnesses</u>

The following witnesses may offer testimony in Defendants' case-in-chief.  Defendants reserve the right to not call at trial any of the witnesses identified below.  Defendants also reserve the right to call at trial any witness disclosed on Plaintiffs' witness list.  Defendants additionally reserve the right to call to testify in rebuttal at trial witnesses not identified below.

| Name | Title | Affiliation | Testimony Type |
|---|---|---|---|
| Laurence Baer | President and CEO | San Francisco Giants | Live |
| Vincent Birbiglia | | Class representative | Deposition* |
| Robert Bowman | President, Business & Media<br>President and CEO | MLB<br>MLB Advanced Media | Live |
| Patrick Crumb | President | DIRECTV Sports Networks | Live |
| Dan Derian | Vice President, Research and Strategic Planning | MLB | Live |
| Tracy Dolgin | President and CEO | Yankees Entertainment and Sports Network | Live |
| Marc Lerner | | Class representative | Deposition* |
| Jon Litner | Group President | NBC Sports Group | Live |
| Robert Manfred | Commissioner of Baseball | MLB | Live |
| Robert Nutting | Principal Owner and Chairman of the Board | Pittsburgh Pirates | Live |
| Jacqueline Parkes | Chief Marketing Officer | MLB | Live |
| Derek Rasmussen | | Class representative | Deposition* |
| Gregory Rigdon | Executive Vice President, Content Acquisition | Comcast Cable | Live |

| Name | Title | Affiliation | Testimony Type |
|------|-------|-------------|----------------|
| Garrett Traub | | Class representative | Deposition* |
| Christopher Tully | Executive Vice President of Media | MLB | Live |
| Daniel York | Chief Content Officer | DIRECTV | Live |

\* Deposition testimony will be played only if the class representative does not appear at trial in Plaintiffs' case.


10. **Expert Witnesses**

Plaintiffs' Expert Witnesses

| Name | Summary of Proposed Testimony |
|------|-------------------------------|
| **Prof. Roger Noll** | As reflected in the declarations and reports Professor Noll has submitted in this matter, Professor Noll will testify about his analysis of the competitive effects of Defendants' television broadcasting restraints, including the competitive harm caused by the policies, the relevant market, market power, Defendants' asserted procompetitive justifications, and the existence of less restrictive alternatives. He may testify in rebuttal in response to Defendants' criticisms of his analysis. |
| **Prof. Einer Elhauge** | As reflected in the report he has submitted in this matter, Professor Elhauge will testify in rebuttal about the economic soundness of Professors Murphy and Elzinga's methods and conclusions, including their opinions regarding efficiencies, market definition, market power, and consumer effects. |

Defendants' Expert Witnesses

The following expert witnesses may offer live testimony.

| Name | Summary of Proposed Testimony |
|------|-------------------------------|
| **Dr. Kevin Murphy** | Professor Murphy will offer testimony related to the opinions set forth in his August 24, 2015 report, including without limitation the procompetitive justifications for MLB's territorial rules, the relevant market, and MLB's lack of market power.  Professor Murphy will also offer opinions that rebut Professor Noll's and Professor Elhauge's opinions. |

| Dr. Kenneth Elzinga | Professor Elzinga will testify to the opinions, and the basis and reasons for those opinions, set forth in his August 24, 2015 report and his October 19, 2015 deposition testimony, including without limitation the lack of participation by the Television Defendants in the alleged conspiracies.  Professor Elzinga also will offer opinions that rebut Professor Noll's proffered opinions. |
|---|---|

Further, Defendants object under Rule 403 and for the reasons stated in their letter to the Court dated November 11, 2015 and at the Hearing held on November 24, 2015, to the testimony of Professor Elhauge as unnecessarily duplicative.

11.    **Exhibits**

Exhibits and objections are listed at **Attachment B** (Plaintiffs' Proposed Trial Exhibits) and **Attachment C** (Defendants' Proposed Trial Exhibits).  Designated deposition testimony excerpts and objections thereto are listed at **Attachment D** (Plaintiffs' Deposition Designations) and **Attachment E** (Defendants' Deposition Designations).

Both parties reserve their rights to raise further objections to exhibits at any time as permitted by the Court.  This includes raising objections based on the context in which or purposes for which particular exhibits are offered.  Defendants reserve their rights to object based on the party or parties against whom Plaintiffs offer exhibits.

The parties continue to work on objections to exhibits and expect to resolve many issues prior to trial.

12.    **Subsequent Amendment of Witness or Exhibit Lists**

Absent the subsequent consent of all the parties hereto, or the issuance of a subsequent Order by this Court so permitting, no witnesses or exhibits shall be presented at the trial of this case other than those listed in paragraphs 9, 10 and 11 hereof.

13.     **Estimate of Trial Time**

The parties will present a trial plan to the Court listing each witness and the anticipated time for direct, cross, and re-direct examinations, in advance of the January 5, 2016 status conference.  At present, Plaintiffs anticipate that they will require 5 trial days for the presentation of their case, including rebuttal.  At present, Defendants anticipate that they will require 5 trial days for the presentation of their case.

14.     **Previous Substantive Motions**

The following substantive motions have previously been filed:

1.  On July 27, 2012, Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).  On December 5, 2012, the Court granted in part and denied in part Defendants' Motion.  *See* ECF No. 83.

2.  On August 19, 2013, Comcast Defendants and DIRECTV Defendants each moved to compel arbitration against certain Plaintiffs.  On November 25, 2013, the Court granted Comcast Defendants' motion as to certain Plaintiffs in this matter (Traub and Rasmussen) and denied it as to other Plaintiffs in this matter (Birbiglia and Lerner).  The Court denied DIRECTV's motion in full.  *See* ECF No. 167.

3.  On April 8, 2014, Defendants moved for summary judgment under Federal Rule of Civil Procedure 56. On August 8, 2014, the Court denied Defendants' motions in full. *See* ECF No. 316.

4.  On September 19, 2014, Plaintiffs moved to certify a class under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3).  On May 14, 2015, the Court granted in part and denied in part Plaintiffs' Motion.  The Court granted Plaintiffs' request pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.  The Court

denied Plaintiffs' request for certification of a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. *See* ECF No. 430.

5. On November 12, 2014, Defendants moved to exclude the opinions of Plaintiffs' expert Roger Noll. On May 14, 2015, the Court granted in part and denied in part Defendants' *Daubert* Motion. The Court excluded Dr. Noll's opinions on forecasting demand in the but-for world, and excluded the demand side of his damages model. The Court otherwise denied the motion. *See* ECF Nos. 431 & 433.

15. **Requested Evidentiary Rulings**

Plaintiffs may file the following motions *in limine* on December 22, 2015:

1. <u>Motion to preclude argument or testimony that the challenged restraints are justified by increased incentives for investment.</u> As they did on summary judgment, Defendants appear to be planning to offer evidence that the market allocation increases investment in telecasting by teams or RSNs. Such a defense is barred as a matter of law. As the Court previously explained, "the incentive for added investment is inflated profit stemming from limited competition. '[T]he Rule of Reason does not support a defense based on the assumption that competition itself is unreasonable.'" *Laumann v. Nat'l Hockey League*, 56 F. Supp. 3d 280, 299 (S.D.N.Y. 2014) (quoting *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 695-96 (1978)). Accordingly, testimony or argument that the restraints have somehow increased investment is irrelevant and should be precluded.

2. <u>Motion to preclude speculative opinion testimony from lay witnesses.</u> Based on Defendants' declarations and deposition testimony, and the complete absence of documentary evidence showing any analysis of the need for the territories or the effect of their removal, it appears likely that Defendants intend to proffer speculative and self-serving testimony through their own executives. Such testimony would be impermissible lay opinion under Federal Rule of Evidence 701. *See Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171, 181-82 (2d Cir. 2004).

3. <u>Motion to preclude argument or evidence regarding the baseball exemption.</u> In its August 8, 2014 order denying Defendants' motions for summary judgment, this Court rejected the claim that the baseball exemption immunizes territorial broadcasting restrictions from antitrust scrutiny. *Laumann*, 56 F. Supp. 3d at 295-97. The Court's ruling was not merely that material questions of fact precluded a grant of summary judgment on this issue, but that the exemption did not apply to broadcasting

restrictions at all. Defendants have indicated that they intend to reargue this issue at trial, but doing so would be a waste of trial time.

Defendants do not intend to file any motions *in limine*.

16.    **Jury Verdict**

Not applicable.

17.    **Voir Dire Questions, Requests to Charge, and Trial Memorandum of Law in a Jury Trial**

Not applicable.

18.    **Trial Memorandum of Law and Proposed Findings of Fact and Conclusions of Law in a Non-Jury Trial**

The parties are concurrently filing trial memoranda, proposed findings of fact, and

proposed conclusions of law. To the extent possible, all documents are being filed publicly; to

the extent necessary, documents are being filed under seal, pursuant to the procedures specified

in the Paragraph 13 of the Stipulated Protective Order, ECF No. 113. Proposed redacted versions

of all sealed documents will be filed within fourteen days.


**SO ORDERED:**

**Dated:**          **New York, New York**


_____
       **SHIRA A. SCHEINDLIN**
       **United States District Judge**

CONSENTED TO THIS DAY,
DECEMBER 18, 2015:

_____

Edward Diver
Howard Langer
Peter Leckman
**LANGER, GROGAN & DIVER, P.C.**
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
Telephone: (215) 320-5660
Facsimile: (215) 320-5703

Jeffrey B. Dubner
**COHEN MILSTEIN SELLERS &
TOLL, PLLC**
1100 New York Ave. NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Robert J. LaRocca
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
Facsimile: (215) 238-1968

Joshua D. Snyder
**BONI & ZACK, LLC**
15 St. Asaphs Road
Bala Cynwyd, PA 19004
Telephone: (610) 822-0200
Facsimile: (610) 822-0206

Marc I. Gross
Adam G. Kurtz
**POMERANTZ, LLP**
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212)-661-1100
Facsimile: (212) 661-8665

*Attorneys for Plaintiffs*

CONSENTED TO THIS DAY,
DECEMBER 18, 2015:


_____

Beth A. Wilkinson
Alexandra M. Walsh
**PAUL, WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**
2001 K Street, N.W.
Washington, DC 20006
Telephone:  (202) 223-7300
Facsimile:  (202) 223-7420
bwilkinson@paulweiss.com
awalsh@paulweiss.com

Daniel J. Toal
**PAUL, WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
dtoal@paulweiss.com

*Attorneys for Defendants Office of the*
*Commissioner of Baseball, Major League*
*Baseball Enterprises Inc., MLB Advanced*
*Media L.P., MLB Advanced Media, Inc.,*
*Athletics Investment Group, LLC, the*
*Baseball Club of Seattle, L.P., Chicago*
*Cubs Baseball Club, LLC, Chicago White*
*Sox, Ltd., Colorado Rockies Baseball Club,*
*Ltd., The Phillies, L.P., Pittsburgh*
*Baseball, Inc., and San Francisco Baseball*
*Associates, L.P.*

CONSENTED TO THIS DAY,
DECEMBER 18, 2015:


_____
Arthur J. Burke
David B. Toscano
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, New York  10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5800
arthur.burke@davispolk.com
david.toscano@davispolk.com

*Attorneys for Defendants Comcast*
*Corporation, Comcast SportsNet*
*Philadelphia, L.P., Comcast SportsNet*
*California, LLC, and Comcast SportsNet*
*Chicago, LLC*

CONSENTED TO THIS DAY,
DECEMBER 18, 2015:


Joseph Serino, Jr., P.C.
John C. Vazquez
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York  10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
joseph.serino@kirkland.com
john.vazquez@kirkland.com

Melissa D. Ingalls
Tammy A. Tsoumas
**KIRKLAND & ELLIS LLP**
333 South Hope Street
Los Angeles, California  90071
Telephone: (213) 680-8400
Facsimile:  (213) 680-8500
melissa.ingalls@kirkland.com
tammy.tsoumas@kirkland.com

James H. Mutchnik, P.C.
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois  60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
james.mutchnik@kirkland.com

*Attorneys for Defendants DIRECTV, LLC,*
*DIRECTV Sports Networks, LLC,*
*DIRECTV Sports Net Pittsburgh, LLC*
*a/k/a Root Sports Pittsburgh, DIRECTV*
*Sports Net Rocky Mountain, LLC a/k/a*
*Root Sports Rocky Mountain and*
*DIRECTV Sports Net Northwest, LLC*
*a/k/a Root Sports Northwest*

CONSENTED TO THIS DAY,
DECEMBER 18, 2015:


_____
Jonathan D. Schiller
Alan B. Vickery
Christopher E. Duffy
**BOIES, SCHILLER & FLEXNER LLP**
575 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-2300
Facsimile:  (212) 446-2350
CDuffy@bsfllp.com

*Attorneys for Defendant New York*
*Yankees Partnership*

CONSENTED TO THIS DAY,
DECEMBER 18, 2015:


John Schmidtlein
William Vigen
Joelle Perry
**WILLIAMS & CONNOLLY LLP**
725 Twelfth St., N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
jschmidtlein@wc.com
wvigen@wc.com
jperry@wc.com

*Attorneys for Defendant Yankees*
*Entertainment and Sports Network, LLC*