**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— )
FERNANDA GARBER, MARC LERNER, )
DEREK RASMUSSEN, ROBERT SILVER, )
GARRETT TRAUB, and PETER HERMAN, )
representing themselves and all others similarly )
situated, )                                     12-cv-3704 (SAS)
 )
                              Plaintiffs, )     ECF Case
 )
               v. )
 )
OFFICE OF THE COMMISSIONER OF )
BASEBALL et al., )
 )
                             Defendants. )
———————————————————————— )

## TELEVISION DEFENDANTS' SUPPLEMENTAL
## TRIAL MEMORANDUM OF LAW

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

*Attorneys for Comcast Defendants*

KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

*Attorneys for DIRECTV Defendants*

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

*Attorneys for Yankees Entertainment and*
*Sports Network, LLC*

## **TABLE OF CONTENTS**

P<small>AGE</small>

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.      There Is No Case or Controversy with Respect to the Television Defendants ................... 2

II.     The Television Defendants' Conduct Fully Complies with the Antitrust Laws ................. 2

        A.     There Is No Horizontal Conspiracy Among RSNs ................................................. 2

        B.     The Television Defendants Did Not Conspire with the MLB Defendants ............. 5

CONCLUSION ................................................................................................................... 7

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

<u>CASES</u>

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................5

*Benson v. RMJ Sec. Corp.*,
   683 F. Supp. 359 (S.D.N.Y. 1988) ........................................................2

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2010) ..................................................................4

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*,
   2014 WL 2813312 (E.D. Pa. June 23, 2014)........................................4

*Laumann v. NHL*,
   __ F. Supp. 3d __, 2015 WL 3542322 (S.D.N.Y. May 29, 2015)...........6

*Laumann v. NHL*,
   56 F. Supp. 3d 280 (S.D.N.Y. 2014) .....................................................3

*Laumann v. NHL*,
   907 F. Supp. 2d 465 (S.D.N.Y. 2012) ...................................................2

*Package Shop, Inc. v. Anheuser-Busch, Inc.*,
   675 F. Supp. 894 (D.N.J. 1987)........................................................4, 5

*PepsiCo, Inc. v. Coca-Cola Co.*,
   315 F.3d 101 (2d. Cir 2002) ..................................................................5

*In re Publ'n Paper Antitrust Litig.*,
   690 F.3d 51 (2d Cir. 2012) ....................................................................3

*Reaves v. U.S. Dep't of Justice*,
   355 F. Supp. 2d 510 (D.D.C. 2005).......................................................2

*Spencer v. Kemna*,
   523 U.S. 1 (1998)...................................................................................2

*United States v. Apple, Inc.*,
   791 F.3d 290 (2d Cir. 2015) ..................................................................3

## PRELIMINARY STATEMENT

As demonstrated in the joint trial memorandum, the League's territorial rules are procompetitive and should not be enjoined.  No injunction should issue against the Television Defendants for two additional and independent reasons.[1]

*First,* the Television Defendants are neither necessary nor proper parties to the claims for injunctive relief.  Plaintiffs' claims against the Television Defendants are a vestige of Plaintiffs' need to establish direct purchaser standing to pursue damages under *Illinois Brick*.  But Plaintiffs now pursue only injunctive relief, and an injunction against the MLB Defendants eliminating their territorial rules would fully afford Plaintiffs the "relief" they demand.  Tellingly, Plaintiffs do not seek to enjoin more than twenty RSNs and hundreds of MVPDs that, like the Television Defendants, also distribute live MLB games.  That omission shows that the Television Defendants are unnecessary to the injunctive relief that Plaintiffs seek.  Accordingly, the Court lacks subject matter jurisdiction over the injunctive claims against the Television Defendants.

*Second*, the evidence will show that the Television Defendants' conduct fully complies with the antitrust laws.  Their presumptively legal vertical agreements—*i.e.*, the RSNs' rights agreements with MLB teams and the MVPDs' Extra Innings agreements with the League—are not a basis for antitrust liability.  The Television Defendants independently determine whether to enter into these agreements and, when they do, the telecast rights they purchase are subject to *non-negotiable* territorial limits.  In other words, the Television Defendants must license live MLB game rights in the only form those rights are offered, subject to pre-existing League rules.  There is nothing unlawful about that.  Neither that licensing activity nor any of their other conduct constitutes illegal collusion in restraint of trade.

---

[1] This memorandum adopts the terms defined in the joint trial memorandum.

## ARGUMENT

### I.   There Is No Case or Controversy with Respect to the Television Defendants

Plaintiffs' requested relief targets *MLB's* territorial rules.[2]  The Television Defendants—and many other RSNs and MVPDs that are not parties to this case—simply comply with these rules and have *no legal right* to telecast MLB games in a manner that violates them.  Plaintiffs would therefore receive complete relief from an injunction eliminating the MLB Defendants' territorial rules.  A further injunction against the Television Defendants is neither necessary nor sufficient to afford Plaintiffs the relief they seek.

Where, as here, a court can grant no injunctive relief against particular defendants "that would redress plaintiffs' alleged injury . . . no cognizable case or controversy exists with respect to those defendants." *Reaves v. U.S. Dep't of Justice*, 355 F. Supp. 2d 510, 515 (D.D.C. 2005) (three-judge court) (*per curiam*); *see also Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (redressability requirement "subsists through all stages of federal judicial proceedings").  Thus, the Court should not try the injunctive claims against the Television Defendants.[3]

### II.   The Television Defendants' Conduct Fully Complies with the Antitrust Laws

#### A.   There Is No Horizontal Conspiracy Among RSNs[4]

Each of the thirty MLB teams has a separate vertical agreement under which it licenses an RSN to telecast its live games only within its HTT.  Those vertical agreements are staggered:

---

[2] The "precis[e]" relief Plaintiffs seek is "individual teams offer[ing] their games outside of their home markets."  12/29/14 Pl. Class Cert. Reply at 12 n.15 (Dkt. #367); *see also* 3/17/15 Hrg. Tr. at 22:6-12.

[3] The Court may also exercise its broad discretion to decline jurisdiction over the claims against the Television Defendants.  *See, e.g., Benson v. RMJ Sec. Corp.*, 683 F. Supp. 359, 378 (S.D.N.Y. 1988) (Rule 21 grants "wide discretion" to drop parties if "a particular defendant lacks authority to provide the requested relief" or is "not necessary to afford all the requested relief").

[4] The Court ruled that Plaintiffs have not alleged a horizontal conspiracy between the MVPD Defendants.  *See Laumann v. NHL*, 907 F. Supp. 2d 465, 487-88 (S.D.N.Y. 2012).

each is negotiated at a different time and they have varying temporal terms (for example, 8, 15 or 25 years).  No team grants an RSN the right to exclude other teams' games from being distributed into the team's HTT.  In fact, other teams' games are telecast into each HTT through the League package and, in HTTs shared by two or more teams, by other RSNs.[5]

There is nothing improper about a supplier (a team) licensing its intellectual property (live game telecast rights) to a distributor (RSN) subject to the supplier's unilaterally imposed conditions (territorial rules).  Nonetheless, Plaintiffs claim a series of such *vertical* agreements is evidence of a *horizontal* conspiracy among RSNs to divide markets.  To prove their "hub-and-spoke" theory, Plaintiffs "must also prove the existence of a 'rim' to the wheel in the form of an agreement among the horizontal competitors."  *United States v. Apple, Inc.*, 791 F.3d 290, 314 n.15 (2d Cir. 2015).  There is no direct evidence of a rim, so Plaintiffs resort to a theory of consciously parallel conduct by RSNs.  But it is well established that "[c]onscious parallelism alone . . . does not establish an antitrust violation," and Plaintiffs must therefore prove "plus factors" that rule out independent conduct.  *See In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 62 (2d Cir. 2012).  The evidence will show there are no "plus factors," and that each RSN unilaterally purchased telecast rights subject to non-negotiable territorial limits.[6]  Simply put, the RSNs licensed rights subject to League rules *because they could not buy them any other way*.

---

[5] Although RSNs have no right to exclude telecasts of other teams' games, RSNs are not indifferent to changes in the League's rules that would materially affect the value of the telecast rights that they have purchased.

[6] On summary judgment, the Court identified a triable issue as to only two alleged "plus factors":  (1) whether buying territorially limited telecast rights is, as alleged, not in each RSN's unilateral interest; and (2) whether the Television Defendants have a "strong motive to collude" because, as alleged, collusion increases their revenues more than their expenses.  *Laumann v. NHL*, 56 F. Supp. 3d 280, 305-07 (S.D.N.Y. 2014).  These issues need not be tried because, as shown in Point I above, the Television Defendants are superfluous to Plaintiffs' requested relief.  If the claims are tried, then the evidence will disprove these alleged "plus factors."

There is no evidence that the League's territorial rules somehow permit the RSNs to earn higher margins on the fees that they charge to MVPDs.  Nor is there any evidence that RSNs retain any "overcharge" to MVPDs rather than passing it along to the teams through competition over telecast rights.  And even if there were an overcharge to MVPDs in which RSNs share, RSNs still would have no motive to conspire, as any benefit that RSNs obtain from the League rules flows *from those rules*, and would not be increased by any horizontal coordination.  *See*, *e.g.*, *Package Shop, Inc. v. Anheuser-Busch, Inc.*, 675 F. Supp. 894, 919 (D.N.J. 1987) (to prove motive, the plaintiff must show "that a horizontal conspiracy would have conferred certain benefits upon the . . . defendants separate and apart from any benefits they derived from merely complying with the vertical direction of" their upstream supplier).[7]

Significantly, Plaintiffs never explain how RSNs would act differently absent the alleged horizontal conspiracy.  Suggesting that a given RSN should refuse to license telecast rights from a team unless the League changes its rules is unworkable and plainly preposterous.  Rights agreements are formed through bilateral negotiations between an RSN and a team, and no one team has the power to change the League rules.  If any RSN refused to be bound by the League rules, then the team offering the rights likely would simply license those rights—which would remain subject to League rules—to another RSN, or vertically integrate into the RSN business.  Suggesting that an RSN should license telecast rights subject to the League rules, but then distribute games in violation of those rules, also makes no sense.  In that scenario, the teams

---

[7] *See also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 328 (3d Cir. 2010) (a plaintiff must prove that horizontal agreement among the defendants "was necessary to induce" them to enter into vertical agreements); *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 2014 WL 2813312 (E.D. Pa. June 23, 2014) ("[T]here simply is no evidence of significant motive for the [alleged horizontal conspirators] to collude amongst themselves.  Indeed, Plaintiffs have difficulty positing exactly what the [alleged horizontal conspirators] stood to gain from an overall conspiracy that they could not achieve through the one-on-one [vertical agreements]").

would easily obtain injunctive relief for breach of contract and copyright infringement. Professor Noll concedes that in the but-for world, RSNs may continue to purchase geographically limited in-market telecast rights. *See*, *e.g.*, 2/23/2015 Noll Corr. Reply Decl. at 18 (Dkt. #412). That concession is fatal to Plaintiffs' conspiracy theory. By positing non-conspiratorial conduct that cannot be distinguished from allegedly conspiratorial conduct, Professor Noll highlights why that conduct cannot be a "plus factor" for conspiracy.

Thus, the evidence will show that each RSN's agreement to telecast live games within each team's HTT is an independent response to League rules imposing those territorial limits on the teams. Such a response is not a conspiracy under the Sherman Act. *See*, *e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.4 (2007) (identifying "independent responses to common stimuli" as a non-conspiratorial explanation for parallel conduct); *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 110 (2d. Cir 2002) (per curiam) (Coca-Cola's assurance to distributors that it would uniformly enforce rules limiting distributors of Coca-Cola products from also distributing Pepsi products was insufficient evidence of horizontal conspiracy among distributors).[8]

## B.    The Television Defendants Did Not Conspire with the MLB Defendants

Plaintiffs also assert that the Television Defendants "conspired" with the MLB Defendants by entering into vertical agreements that are subject to MLB's territorial rules—namely, rights agreements between RSNs and teams, and the Extra Innings agreements between MLB and MVPDs.

As shown in the joint trial brief, Plaintiffs are wrong that competition is harmed by MLB's territorial rules. But if Plaintiffs were correct that HTTs allowed the MLB Defendants to

---

[8] *See also*, *e.g.*, *Package Shop*, 675 F. Supp. at 904 ("[P]laintiffs must present evidence which . . . 'tends to exclude the possibility' that [alleged horizontal conspirator defendants] were merely responding to the vertical direction of the [upstream supplier].").

raise prices to RSNs and MVPDs, then the Television Defendants would have no economic incentive to participate in a conspiracy that *increased their expenses and reduced their profits.* In the past, Plaintiffs have responded to this fact by suggesting that the territorial limits increase the prices of the outputs sold by RSNs and MVPDs by an unspecified amount that more than compensates for their increased input costs. *See* 6/12/14 S.J. Opp. at 66-67 (Dkt. #301). But that is pure speculation. Plaintiffs' experts have never attempted to measure the alleged effect of the territorial rules on RSNs' or MVPDs' input costs or on RSNs' output prices, or on their profits. And the Court properly excluded Professor Noll's attempt to predict MVPDs' output prices as unreliable. *See Laumann v. NHL*, __ F. Supp. 3d __, 2015 WL 3542322, at *1, *14 (S.D.N.Y. May 29, 2015). Absent such evidence, there is no basis to find that the Television Defendants would benefit from a conspiracy that allegedly increases their input costs.

## CONCLUSION

For the foregoing reasons, the Court should deny injunctive relief against the Television

Defendants.

Dated:  December 18, 2015                    Respectfully submitted,

Arthur J. Burke
David B. Toscano
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, New York  10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5800
arthur.burke@davispolk.com
david.toscano@davispolk.com

*Attorneys for Defendants Comcast Corporation,*
*Comcast SportsNet Philadelphia, L.P., Comcast*
*SportsNet California, LLC, and Comcast*
*SportsNet Chicago, LLC*

7

Joseph Serino, Jr., P.C.
John C. Vazquez
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York  10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
joseph.serino@kirkland.com
john.vazquez@kirkland.com

Melissa D. Ingalls
Tammy A. Tsoumas
**KIRKLAND & ELLIS LLP**
333 South Hope Street
Los Angeles, California  90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
melissa.ingalls@kirkland.com
tammy.tsoumas@kirkland.com

James H. Mutchnik, P.C.
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois  60654
Telephone:  (312) 862-2000
Facsimile:   (312) 862-2200
james.mutchnik@kirkland.com

*Attorneys for Defendants DIRECTV, LLC,*
*DIRECTV Sports Networks, LLC, DIRECTV*
*Sports Net Pittsburgh, LLC a/k/a Root Sports*
*Pittsburgh, DIRECTV Sports Net Rocky*
*Mountain, LLC a/k/a Root Sports Rocky*
*Mountain and DIRECTV Sports Net Northwest,*
*LLC a/k/a Root Sports Northwest*

8

_____
John Schmidtlein
William Vigen
Joelle Perry
**WILLIAMS & CONNOLLY LLP**
725 Twelfth St., N.W.
Washington, D.C.  20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
jschmidtlein@wc.com
wvigen@wc.com
jperry@wc.com

*Attorneys for Yankees Entertainment and Sports Network, LLC*

9