UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
FERNANDA GARBER, MARC LERNER,  :
DEREK RASMUSSEN, ROBERT SILVER,  :
GARRETT TRAUB, and VINCENT  :
BIRBIGLIA, representing themselves and all  :
others similarly situated,  :
 :
                                   Plaintiffs,  :
 :
                -against-  :
 :
OFFICE OF THE COMMISSIONER OF  :
BASEBALL, et al.,  :
 :
                                Defendants.  :
------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/27/2017

12-CV-03704 (VEC)

<u>OPINION & ORDER</u>

**VALERIE CAPRONI, District Judge:**

       This sanctions proceeding stems from the filing of an objection (the "Hull Objection") to the proposed class action settlement in this case.[1] Asserting that the Hull Objection was frivolous, Plaintiffs filed motions for sanctions pursuant to Federal Rule of Civil Procedure 11 against the objector, Sean Hull, and his counsel. Although the Rule 11 motions ultimately were withdrawn by stipulation, the Court held a hearing to consider whether to impose *sua sponte* Rule 11 sanctions upon Christopher Bandas of Bandas Law Firm, an attorney representing Hull. For the reasons discussed below, although the Court has grave concerns about Bandas' conduct in this matter, it will not *sua sponte* impose sanctions on Bandas.

---

[1] The Honorable Shira A. Scheindlin, to whom this case was initially assigned, approved the class settlement and awarded attorneys' fees and costs in this case. Upon Judge Scheindlin's departure from the bench, this case, with its outstanding Rule 11 sanctions motion, was reassigned to the Undersigned.

## BACKGROUND

On the last day that he was permitted to do so, Hull filed a class-settlement objection that was drafted by Bandas. The Hull Objection was frivolous for a variety of reasons. It asserted that the proposed settlement was not fair, adequate, or reasonable because it did not provide for monetary damages, ignoring Judge Scheindlin's decision to certify the class only for injunctive relief and Plaintiffs' counsel's unsuccessful interim appeal of that decision. Objection of Sean Hull (hereafter, "Hull Obj."), at 4, Dkt. 538; Opinion and Order, Dkt. 430; Mandate, Dkt. 440; *see also* April 25, 2016, Transcript ("Fairness Hr'g Tr."), at 8:3–12, 20:12–18, Dkt. 572. Bandas acknowledged that he had "no idea" whether there was any likelihood that the decision not to certify a damages class would have been reversed had Plaintiffs continued to pursue the case rather than settling. July 14, 2016, Transcript (hereafter, "Tr."), at 43:7–45:4, Dkt. 596. The Hull Objection also asserted that the proposed attorneys' fees award was "excessive;" Hull's proposed fee award, however, would have resulted in a "very de minimis amount" of cash to be distributed to the class. *See* Hull Obj. at 69; Tr. at 54:6.[2] It further asserted that Hull was "a class member who has timely filed a claim," but, in fact, Hull had not filed a claim, as there was no procedure for filing a claim in this case. Hull Obj. at 2; *see also* Memorandum in Support of Plaintiffs' Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure (hereafter, "Rule 11 Br."), at 2, Dkt. 558.

It is undisputed that the Hull Objection was drafted by Bandas but was filed by local counsel, David Stein of Samuel and Stein, after Stein's associate conducted a "basic review."

---

[2] The proposed settlement awarded $16.5 million in attorneys' fees and costs for a case that had been litigated for approximately four years. Hull proposed a reduced award of $10.6 million in attorneys' fees and costs. Hull Obj. at 9. Because there were approximately five million individual members in the class, Tr. at 54:4, Hull's proposal would have yielded approximately $1.18 per class member. Of course, the costs of distribution would have reduced that figure further.

Tr. at 4:3–10, 5:3–7, 8:1–5, 16:8–9; April 21, 2016, Letter (hereafter, "April 21 Letter"), Dkt. 547. After Plaintiffs threatened Rule 11 sanctions for the Hull Objection, Stein requested leave to withdraw his firm's representation of Hull because his firm did not have "sufficient confidence" in the Hull Objection and was not "sufficiently well-informed about the case." April 21 Letter. Judge Scheindlin granted Stein's request to withdraw. April 21, 2016, Court Endorsement, Dkt. 549. Although Stein asked Bandas to withdraw the Hull Objection, Bandas informed Stein that Hull refused to withdraw the objection. April 21 Letter; Tr. at 5:20–6:1. Stein had no communications with Hull; rather, Stein communicated only with Bandas. April 21 Letter.[3]

Several days later, Plaintiffs filed a Rule 11 Motion for Sanctions against Hull and Stein, claiming that the Hull Objection was frivolous and that its "only purpose is to interfere with the implementation of the settlement in order to extort a payment to drop the objection." Rule 11 Br. at 1. Plaintiffs also informed the Court that they intended to request that Hull be required to post a $150,000 bond if he appealed the order approving the class settlement. April 18, 2016, Letter, Dkt. 542. Judge Scheindlin held a fairness hearing, at which she approved the proposed class settlement and awarded attorneys' fees and costs. Fairness Hr'g Tr. at 45:4–54:17; *see also* Order Approving Class Settlement and Awarding Attorneys Fees and Costs (hereafter, "Settlement Order"), Dkt. 561. Among other things, Judge Scheindlin noted that although several class members objected to the settlement because it did not provide monetary compensation, "[a]s this class was certified for injunctive relief only, parties were not in a position to negotiate for damages." Fairness Hr'g Tr. at 49:12–16. Though he had not yet been

---

[3] Stein's associate informed the Court that "the understanding" between Bandas and Stein's law firm was that "if the [Hull] objection needed to be defended in any way that [Bandas] would step in and do it that he wasn't asking us to do that." Tr. at 11:22–24.

3

retained by any interested party, Forrest Turkish appeared telephonically but did not participate at the hearing. *See* Fairness Hr'g Tr. at 5:17–6:4.

After the settlement was approved and while discovery and briefing relating to the Rule 11 motion was proceeding, the case was reassigned to the Undersigned. Because Stein no longer represented him, Hull himself submitted a letter "to advise the Court of [his] intent to respond substantively to class counsels' motion for sanctions." April 25, 2016, Letter (hereafter, "Hull Letter"), at 1, Dkt. 570. Although Hull's letter was labeled as *pro se*, it stated that it was "prepared with the assistance of Christopher A. Bandas, of Bandas Law Firm, P.C.," and it was transmitted by Bandas Law Firm. Hull Letter at 1; Reply Memorandum of Law in Support of Plaintiffs' Motions for Rule 11 Sanctions Against Serial Objectors Christopher Bandas, Sean Hull, and David Stein, Ex. 2, Dkt. 575-2. Bandas subsequently retained Turkish to defend the Rule 11 sanctions motion against Hull and to file a Notice of Appeal of the Order approving the settlement. Tr. at 25:19–26:8; Notice of Appeal, Dkt. 574.[4]

Bandas drafted substantial portions of Hull's brief opposing sanctions, which Turkish reviewed and revised before filing. Tr. at 26:1–2, 28:16–29:5 (Turkish: "Most of [the opposition brief] was not drafted by me."); *see also* Turkish Engag. Email at 1 (noting that as a term of Turkish's engagement, Bandas "will be preparing the substantive filings including the Motions."). Turkish never spoke with Hull; all of Turkish's communications about the case were with Bandas. Tr. at 28:3–6.

---

[4] Turkish agreed to represent Hull only if "[i]n the event a sanction is threatened or awarded against me, you agree to defend, indemnify and hold me harmless for/from any such sanctions." Memorandum of Law in Support of Plaintiffs' Motion for Rule 11 Sanctions Against Forrest Turkish (hereafter, "Turkish Rule 11 Br."), Ex. 1 ("Turkish Engag. Email"), at 1, Dkt. 605. Turkish listed as additional terms of the engagement that Bandas would "prepare[] the substantive filings including Motions" and that Turkish "can file [Bandas'] notice of appeal but then [Bandas] will need to substitute as [Turkish is] not admitted in the 2nd Circuit." Turkish Engag. Email at 1. Bandas accepted Turkish's terms of engagement. Turkish Engag. Email at 1.

Plaintiffs then filed a Rule 11 Motion for Sanctions against Bandas, to which Bandas refused to respond. Bandas stated that he was "fully aware" of the Rule 11 motion against him, but that he "ignored" it. Tr. at 20:24–22:4. He reasoned that because he had not filed a notice of appearance, he was not before the Court and, therefore, was not sanctionable. Tr. at 20:23–21:12.[5] Bandas acknowledged, however, that he represented Hull, drafted the Hull Objection as Hull's attorney, and also drafted Hull's opposition brief to the Rule 11 sanctions motion against Hull. Tr. at 18:16–20, 26:1–2, 28:16–29:5.

During discovery on Plaintiffs' Rule 11 motions, Plaintiffs served Hull with a subpoena directing him to produce documents and appear for a deposition relating to, among other things, the Hull Objection and Hull's communications and agreements with Bandas. Subpoena, Dkt. 576–1. Turkish opposed Plaintiffs' request for documents and Hull's deposition, and the Court scheduled a conference call to resolve the objection. June 3, 2016, Discovery Letter (hereafter, "June 3 Letter"), Dkt. 576; June 6, 2016, Court Endorsement, Dkt. 579. Turkish joined the call late because he erroneously thought that the conference was the following day, and he was entirely unprepared to respond to the arguments that Plaintiffs had presented in a letter filed the day before the call. June 7, 2016, Tr. at 4:1–7, 9:14–10:20, Dkt. 606.[6] This Court ordered Hull to appear for a deposition, which occurred shortly thereafter. June 3 Letter; Order, Dkt. 580; Memorandum of Law on Behalf of Christopher Bandas, Esq. Submitted for the Limited Purpose of Responding to the Question Posed by the Court at the July 14, 2016, Hearing (hereafter, "Bandas Mem."), at 3, Dkt. 59. Bandas, who was "assisted by" Turkish, "missed the deadline"

---

[5] Bandas is not admitted in the Southern District of New York. He is admitted to the State Bar of Texas and is admitted in other federal courts, including the Second Circuit Court of Appeals. *See* Tr. at 13:18–24.

[6] Hull had been served with the subpoena at least 13 days before the telephonic Court conference. *See* June 6, 2016, Letter (hereafter, "June 6 Letter"), at 2, Dkt. 578.

5

to assert privilege objections to the subpoena's document requests. Bandas Mem. at 3. Plaintiffs then filed three motions: a letter motion to compel Hull to produce documents responsive to the subpoena, Dkt. 581; a motion for Hull to post an appellate bond, Dkt. 582; and a motion for sanctions against Turkish, Dkt. 583.

In July 2016—three months after the initial Rule 11 sanctions motions were filed, and while the Rule 11 motions, the motion to compel, and the motion for an appeals bond were pending before this Court, and while the appeal of the Settlement Order was pending in the Second Circuit—Bandas, Turkish, Hull, and Plaintiffs' Class Counsel filed a stipulation that settled the Hull Objection in exchange for the withdrawal of the sanctions motions against Hull and his counsel. Stipulation to Withdraw the Objection of Sean Hull, To Withdraw Notice of Appeal & To Withdraw Plaintiffs' Motions for Sanctions Against Christopher Bandas, Sean Hull, David Stein, and Forrest Turkish (hereafter, "Stipulation"), Dkt. 587.[7] The Court ordered Plaintiffs' Class Counsel and Bandas, Stein, and Turkish to appear for a hearing to discuss why the Court should not *sua sponte* issue an Order to Show Cause why sanctions should not be imposed upon the attorneys who represented Hull. July 8, 2016, Court Endorsement, Dkt. 589. Following the hearing, Bandas submitted a brief regarding whether this Court has authority to impose sanctions against him. Bandas Mem.

## DISCUSSION

Rule 11 of the Federal Rules of Civil Procedure governs the imposition of sanctions upon an attorney. An attorney who presents a filing to the court certifies that "to the best of the

---

[7] The stipulation stated that no payment was made by Plaintiffs or Plaintiffs' Class Counsel to Hull or his counsel. Stipulation ¶ 8.

person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the filing is not presented for an improper purpose, the legal contentions are nonfrivolous and supported by existing law, and the factual contentions have evidentiary support. Fed. R. Civ. P. 11(b). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction." Fed. R. Civ. P. 11(c)(1). To impose sanctions, *sua sponte*, the court may order an attorney to show cause why certain conduct has not violated Rule 11(b). Fed. R. Civ. P. 11(c)(3).

Although the standard for imposition of sanctions initiated by an opposing counsel is a finding that the attorney's conduct was "objectively unreasonable," *sua sponte* sanctions initiated by the court "long after [the accused attorney or party] had an opportunity to correct or withdraw the challenged submission" may be imposed only upon a finding of subjective bad faith. *In re Pennie & Edmonds LLP*, 323 F.3d 86, 87, 91 (2d Cir. 2003); *Muhammad v. Walmart Stores East, L.P.*, 732 F.3d 104, 108 (2d Cir. 2013). This is because the court's power to issue *sua sponte* sanctions is "akin to the court's inherent power of contempt." *Muhammad*, 732 F.3d at 108 (discussing *Pennie*).[8] Courts in the Second Circuit have concluded that to find subjective bad faith, an attorney must "have *actual knowledge* that a pleading or argument that he or she is advancing is frivolous." *Braun ex rel. Advanced Battery Techss., Inc., v. Fu*, No. 11-cv-4383(CM)(DF), 2015 WL 4389893, at *15 (S.D.N.Y. July 10, 2015) (emphasis in original); *see*

---

[8] *Pennie* declined to hold that a subjective bad-faith standard applies to *all* court-initiated sanctions proceedings. *See Pennie*, 323 F.3d at 91 ("It is arguable . . . that a 'bad faith' standard should apply to all court-initiated Rule 11 sanctions because no 'safe harbor' protection is available and because the Advisory Committee contemplated such sanctions for conduct akin to contempt. However, we need not make so broad a ruling in the pending case."). After *Pennie*, the Second Circuit has ruled only once that the subjective bad faith standard did not apply to court-initiated sanctions proceedings: in *ATSI Communications*, the Second Circuit concluded that *Pennie*'s subjective bad faith standard did not apply in the context of litigation governed by the Private Securities Litigation Reform Act of 1995 ("PSLRA") because the PSLRA itself required the court to make Rule 11 findings at the conclusion of the proceedings. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 146–47 (2d Cir. 2009).

7

*also Rivas v. Bowling Green Assoc.*, No. 13-cv-7812 (PKC), 2014 WL 3694983, at *2 (S.D.N.Y. July 24, 2014) ("Proof of actual knowledge, and not merely what a reasonable attorney should have known, is required."). Negligence, even gross negligence, does not suffice. *See Centauri Shipping Ltd. v. W. Bulk Carriers KS*, 528 F. Supp. 2d 197, 201 (S.D.N.Y. 2007). Actual knowledge may be proven through direct or circumstantial evidence, and "conscious avoidance may be the equivalent of knowledge." *Rivas*, 2014 WL 3694983, at *2; *Cardona v. Mohabir*, No. 14 Civ. 1596 (PKC), 2014 WL 1804793, at *3 (S.D.N.Y. May 6, 2014); *see also Braun*, 2015 WL 4389893, at *15 (citing *Cardona* and *Rivas*).

Throughout this proceeding, Bandas' behavior has been, at best, unprofessional, and at worst, an unseemly effort to extract fees from class counsel in exchange for the withdrawal of a meritless objection to the proposed class settlement.[9] The Hull Objection, which Bandas admitted that he drafted, had no merit: it objected to the settlement because it provided no damages when the Court had declined to certify a damages class; it objected to the attorneys' fees award for being "excessive" only because the attorneys failed to secure damages, again ignoring that the Court had declined to certify a damages class; and it proposed a reduced fee award that would have resulted in such a low payout to each of the class members that it would

---

[9] Bandas appears to fall within a class of attorneys called "professional objectors." Professional objectors are attorneys who "'file stock objections to class action settlements'—objections that are '[m]ost often ... nonmeritorious'—and then are 'rewarded with a fee by class counsel to settle their objections.'" *In re Elec. Books Antitrust Litig.*, 639 F. App'x 724, 728 (2d Cir. 2016) (summary order) (quoting WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 13:21 (5th ed. 2012)). Professional objectors primarily seek to obstruct or delay settlement proceedings so as to extract attorneys' fees in exchange for the withdrawal of the objection. 7B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1797.4 (3d ed. 2005).

Such behavior has led numerous courts to conclude that "professional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients." *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010); *see also O'Keefe v. Mercedes-Benz USA, LLC,* 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003) ("Federal courts are increasingly weary of professional objectors: some of the objections were obviously canned objections filed by professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests." (citation omitted)). In addition to undermining the administration of class action settlements, these baseless objections waste judicial time and energy that should be spent on more productive matters.

have made little economic sense to distribute it. Bandas was aware that the Court had certified the class for injunctive-relief only, and he admitted that he prepared the objection with "no idea" of the likelihood that the Court's refusal to certify a damages class would have been reversed on appeal. *See* Tr. at 44:18–21. Bandas asserted that the fees award was excessive for an injunction-only class, but he failed to provide any examples of analogous cases in which a court that refused to certify a damages class then reduced the plaintiffs' counsel's agreed-upon fee on the grounds that the plaintiffs achieved only injunctive relief. Tr. at 48:12–22.

Bandas' failure to provide any legitimate support for the Hull Objection would be enough to cause this Court concern. But Bandas' behavior throughout this proceeding has been unfitting for any member of the legal profession. Even though Bandas was substantially involved in all stages of the Hull Objection—he drafted the Hull Objection and substantial portions of Hull's opposition brief, and he "assist[ed]" in the preparation of Hull's "*pro se*" letter regarding sanctions—Bandas refused to enter a notice of appearance in this case, and he refused to sign any of the filings that he himself drafted. Instead, Bandas orchestrated other attorneys, Stein and Turkish, to "appear" on the various filings that Bandas drafted or prepared behind the scenes. Bandas' machinations were designed to avoid his professional responsibilities to the Court and were explicit with respect to Turkish: Turkish required as a term of his engagement that Bandas would "prepar[e] the substantive filings including Motions" and required Bandas to agree to indemnify him if he were sanctioned for his role in this case. Turkish Engag. Email at 1. The sanctions-indemnity provision in the engagement agreement between Turkish and Bandas appears to the Court to be an improper attempt by Turkish to avoid any financial repercussions

for sanctionable behavior and a way for Bandas to avoid any collateral consequences to himself if his conduct resulted in sanctions being imposed.[10]

Bandas argues that he is not sanctionable by this Court because he never filed a notice of appearance; he asserts that his calculated decision not to file a notice of appearance was "not to avoid sanctions," but rather was because he did not have time to "travel around the country and make appearances in every objection matter that I am involved in." Tr. at 19:19–20:3.[11] Bandas' preparation of a meritless objection to the proposed settlement, his refusal to appear in this case despite his substantial involvement in preparing the Hull Objection that exposed two of his "local counsels" to potential sanctions, and his failure to affix his name to *any* of the litigation papers that he himself drafted and prepared, belie his specious assertion that his conduct was entirely innocent.

Numerous courts throughout the country have publicly excoriated Bandas for the frivolous objections that he has penned and injected into class action settlements. A district court in California, for example, wrote, "Bandas routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain." Amended Order Granting Indirect Purchaser Plaintiffs' Motion to Compel Discovery from Objector Sean Hull (hereafter, "*CRT* Order") at 4, *In re Cathode Ray*

---

[10] This is not the first time Turkish has been chastised by a judge of the Southern District of New York. Before Turkish ever entered this case, The Honorable Colleen McMahon reprimanded Turkish for filing a "patently frivolous" objection to a class action settlement. *City of Providence v. Aeropostale, Inc.*, 11 Civ. 7132 (CM)(GWG), 2014 WL 1883494, at *3 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (summary order). Although Judge McMahon declined to impose sanctions on him, Judge McMahon admonished, "Now that this court has become acquainted with Turkish, his reputation will precede him should he turn up in future cases." Order Closing Case, *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (S.D.N.Y. June 10, 2014), Dkt. 74. This Court also declines to impose sanctions on Turkish, but joins Judge McMahon in finding that Turkish should think twice before he participates in any further frivolous class settlement objections in the Southern District of New York.

[11] Of course, if Bandas spent less time preparing and filing frivolous objections to proposed class settlements, he might have more time to appear in the cases in which there are legitimate grounds to object.

*Tube (CRT) Antitrust Litigation*, No. CV-07-5944 (N.D. Cal. April 16, 2012), Dkt. 1155.[12]

Similarly, a court in Illinois found:

> Bandas is a professional objector who is improperly attempting to "hijack" the settlement of this case from deserving class members and dedicated, hard working counsel, solely to coerce ill-gotten, inappropriate and unspecified "legal fees." Bandas has filed virtually identical, frivolous objections in South Carolina, Iowa, Missouri and Florida in settlements of similar [] class actions.

Order Denying Objections to the Settlement and Fees and the Motion to Intervene and for Pro Hac Vice Admission, at 2, *Brown v. Wal-Mart Stores, Inc.*, No. 01 L 85 (Ill. Cir. Ct. Oct. 29, 2009).

This Court joins the other courts throughout the country in finding that Bandas has orchestrated the filing of a frivolous objection in an attempt to throw a monkey wrench into the settlement process and to extort a pay-off. His plan was thwarted when the Court permitted discovery to proceed on the sanctions motions, which ultimately, apparently, created more risk for Bandas than he was prepared to endure. Hull testified that in Bandas' numerous representations of him in objections to class action settlements, Hull has *never* received funds from the settlement of any of his objections, whereas Bandas has. *See* Deposition of Sean Hull at 44:1–45:8.[13] That testimony, if true, is gravely concerning. It indicates that Bandas' settlement of objections has been without *any* benefit to his client, Hull, or to the class, supporting the conclusion that many, if not most, of the objections being raised by Bandas are

---

[12]    *In re CRT Litigation* contains a remarkable number of similarities to this one: the objecting class member was Hull, and the objection was not filed by Bandas but was sent from Corpus Christi, Texas, where Bandas maintains his law office (which is not where Hull resides). *CRT* Order at 3–4.

[13]    At the July 14 hearing, Bandas purported to have no recollection whether Hull had received any funds from Bandas' settlement of Hull's objections in other class action cases. Tr. at 23:24–24:22. The Court finds Bandas' purported lack of recollection not credible.

not being pursued in good faith.  Ultimately, Bandas wasted a substantial amount of judicial time and effort, without any benefit to Hull or to the class.

Although Bandas' behavior in this proceeding provides strong indicia of his subjective bad faith, the Court is not convinced that it has jurisdiction to sanction him, given that he has not appeared in this case, and he is not a member of the bar of the Southern District of New York. *See In re Hydroxycut Mktg. & Sales Practices Litig.*, Nos. 09md2087 BTM (KSC), 09cv1088 BTM (KSC), 2014 WL 815394, at *3 (S.D. Cal. Mar. 3, 2014) (collecting cases).  Therefore, the Court declines to impose Rule 11 sanctions on Bandas.

## CONCLUSION

For the foregoing reasons, the Court declines to impose Rule 11 sanctions on Bandas. Nevertheless, because the Court is gravely concerned that Bandas uses attorneys as "local counsel" without full disclosure of his track record and to shield himself from potential disciplinary action associated with frivolous objections, Bandas is ordered to provide a copy of this opinion to any local counsel he seeks to engage for any case pending in the Southern District of New York.  The Clerk of Court is respectfully directed to terminate any outstanding motions and close this case.

**SO ORDERED.**

Date:  February 27, 2017
       New York, NY

_____
**VALERIE CAPRONI**
**United States District Judge**